IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
:
TECHNOLOGY LICENSING CORPORATION a :
Florida corporation, :
: C.A. No. 06-515-JJF
Plaintiff, :
: **REDACTED VERSION**
-against- :
:
RATIONAL COOKING SYSTEMS, INC., a :
Delaware corporation, :
:
Defendant. :
:
------------------------------------------------------------- x

**PLAINTIFF TECHNOLOGY LICENSING CORPORATION'S
REPLY BRIEF IN SUPPORT OF ITS
<u>MOTION FOR AN EXPEDITED SCHEDULE</u>**

OF COUNSEL:  
Rory J. Radding  
Colette A. Reiner  
MORRISON & FOERSTER LLP  
1290 Avenue of the Americas  
New York, NY 10104-0050  
(212) 468-8000  

Mario G. Ceste  
THE LAW OFFICES OF MARIO G. CESTE, LLC  
P.O. Box 82  
Wallingford, CT 06492  
(203) 678-6418  

MORRIS, NICHOLS, ARSHT & TUNNELL LLP  
Jack B. Blumenfeld (#1014)  
jblumenfeld@mnat.com  
Karen Jacobs Louden (#2881)  
klouden@mnat.com  
1201 N. Market Street  
P.O. Box 1347  
Wilmington, DE 19801  
(302) 658-9200  
*Attorneys for plaintiff*  
*Technology Licensing Corporation*

Original Filing Date: September 29, 2006  
Redacted Filing Date: October 2, 2006

i.

# TABLE OF CONTENTS

**<u>Page</u>**

I. PRELIMINARY STATEMENT ..................................................................................1

II. TLC, AND THE KOETHER GROUP, HAVE A LONG HISTORY OF
INNOVATION AND COMMERCIALIZATION.........................................................1

III. ABSENT AN EXPEDITED SCHEDULE, TLC WILL BE PREJUDICED ...................2

IV. THE "COMPLEX" DISCOVERY OUTLINED BY RATIONAL IS ILLUSORY ..........3

V. PROPOSED SCHEDULING ORDER..........................................................................5

VI. CONCLUSION ............................................................................................................6

ii.

# TABLE OF AUTHORITIES

This brief contains no citations.

I.      **PRELIMINARY STATEMENT**

Despite twenty-three pages of speculation as to the scope of the fishing expedition it seeks in order to manufacture potential discovery complexities in this case, Rational Cooking Systems, Inc.'s ("Rational's") brief in opposition to Technology Licensing Corporation's ("TLC's") motion to expedite confirms the most important fact for this motion: Rational knew of the '948 Patent, and apparently had investigated the facts, *long prior* to entering the market in 2004 with the only accused product in this case, the SelfCooking Center ("SCC"). Thus, an expedited schedule is appropriate so that TLC is not further prejudiced by Rational's decision to enter the U.S. market prior to expiration of the '948 Patent.

II.     **TLC, AND THE KOETHER GROUP, HAVE A LONG HISTORY OF INNOVATION AND COMMERCIALIZATION**

As explained in TLC's motion, TLC and Food Automation Service Techniques, Inc. ("FAST") are family run companies. (D.I. 9 at 4). They are each part of the Koether group of companies, and they work together closely. TLC is a holding company that holds all of the Koether group's intellectual property, including the '948 Patent. FAST is an operating arm of the Koether group, and has contracted with TLC to perform research and development and commercialize the intellectual property owned by TLC. The Chairman of TLC, Bernard Koether, is one of the named inventors of the '948 Patent, and has been an innovator in the field of controllers for cooking devices since at least 1969. Indeed, Bernard Koether is the named inventor of at least twenty issued United States patents.

Bernard Koether was also the President and CEO of FAST from June 1969 to May of 2006, until his son, George Koether, assumed the role of President and

CEO of FAST in May of 2006. To date, Bernard Koether remains the Chairman of FAST, and FAST and TLC maintain a symbiotic relationship. For much of the life of the '948 Patent, FAST was the sole manufacturer practicing the '948 Patent, selling controls to authorized oven manufacturers.

Given this background, Rational may have been confused about the ownership of the '948 Patent. However, Rational's characterization of TLC as a "patent troll" is disingenuous. (D.I. 10 at 9). The term "patent troll" has a well-known negative connotation of a person or company that purchases patents to extort license fees. As is explained above, this term is inapt for TLC. The Koether group is proud of its long history of both innovation and commercialization.

Contrary to Rational's suggestion, the close relationship between TLC and FAST will serve to speed up discovery because the cooperation between the two companies will be great. Similarly, the close relationship and cooperation in the defense of the current action between Rational AG and Rational should serve to speed up the discovery process vis-à-vis facilitating any discovery from Rational's German parent company, Rational AG.

### III. ABSENT AN EXPEDITED SCHEDULE, TLC WILL BE PREJUDICED

In its opposition, Rational admits that it was well aware of the '948 Patent long before its entry into the U.S. market in 2004 with the SCC. Rational's concession that it entered the market before the expiration of the '948 Patent, with full knowledge of its existence, supports TLC's argument that Rational should not reap the benefit of the business decision to enter the market early despite the risk of a patent infringement suit.

Rational attempts to discount the prejudice that will befall TLC by arguing that any prejudice stemming from a non-expedited schedule is TLC's own fault for

delaying in bringing this action. Rational has two bases for this argument: **REDACTED** and (2) the fact that the new product, the SCC, was introduced in May of 2004. Rational's argument is baseless. **REDACTED** Second, Rational's argument appears to be that it introduced the SCC when there were approximately three and a half years of life remaining on the '948 Patent, and therefore had TLC sued immediately it would have had the possibility of obtaining an injunction before the '948 Patent's expiration in October 2007. Whether or not the SCC was introduced in May 2004, TLC did not learn of the infringing nature of the SCC until the early summer of 2006. Once TLC did so, it proceeded quickly, mindful to ensure a thorough pre-filing investigation.

As explained in TLC's opening motion, Rational's willful infringement of the '948 Patent threatens the livelihood of TLC, and more broadly FAST and the Koether group. In view of Rational's admitted prior knowledge of the '948 Patent, prejudice to Rational is minimal, and is outweighed by the prejudice to TLC if it is not allowed to proceed to trial quickly.

IV. THE "COMPLEX" DISCOVERY OUTLINED BY RATIONAL IS ILLUSORY

Rational's opposition brief outlines a panoply of issues that it states will require lengthier discovery than the schedule requested by TLC. What is clear, however, is that Rational has already conducted much internal discovery on its own and that given its knowledge of the patent since the mid-1990s, presumably has conducted a thorough

investigation of the '948 Patent and Rational's prior dealings with FAST. Rational has already identified 20 purported prior art references and a list of potential witnesses. What more time could it need? Given these facts, the amount of discovery required on validity and infringement is lessened, not exacerbated as is suggested by Rational. Notwithstanding Rational's protestations to the contrary, this is a simple and normal patent case. It still only involves one product and one patent. Even the discovery Rational proposes is standard.[1] Furthermore, most of the "facts relating to this motion" as outlined on pages 7-9 of Rational's opposition brief are not relevant to this case,

**REDACTED**

Rational further states that there are several issues that will require investigation which would not be feasible with a shortened schedule. One example of such an issue is

**REDACTED**

---

[1] Rational states that it will need "Discovery of the parties, knowledgeable individuals, known third parties and yet unknown third parties . . . ." D.I. 10 at 10. Rational describes TLC's initial discovery as "the type that can be found in virtually every patent case." Moreover, TLC's discovery is, for the most part, limited to the SCC introduced in May 2004 and should not require discovery "spanning the last twenty (20) years." D.I. 10 at 12.

5.

**REDACTED**  These possible issues exemplify the exaggeration by Rational of the discovery necessary. Moreover, they underscore Rational's need to grasp at straws to create issues where none exist solely to produce a fog of possible complexity.

**REDACTED**

As with most of the issues raised by Rational, any discovery will be minimal, at best. **REDACTED**

It appears that Rational is attempting to manufacture legal claims where none exist to create the appearance that this case will require voluminous discovery and is very complex.

**REDACTED**

## V. PROPOSED SCHEDULING ORDER

Rational characterizes the schedule proposed by TLC as "seek[ing] to undertake and complete discovery of an entire patent case, including validity, infringement and unenforceability issues, by November 3, 2006." (D.I. 10 at 16). In fact, the November 3, 2006 deadline is for the end of *initial discovery*. It is TLC's understanding that this Court's practice is to set such a deadline to ensure that the first set of written discovery has been served and responded to at an early date (e.g., before any depositions commence). TLC did not intend that all discovery be completed by that deadline given that amendment of the pleadings is set for ten days after this initial discovery cut-off.

Moreover, contrary to Rational's arguments (D.I. 10 at 9-10, 16-22), TLC chose to ask for an expedited case rather than a preliminary injunction, in part, so that there would be sufficient time for the parties to take discovery rather than on the extremely short schedule required for preliminary injunctions.[2]

---

[2] In addition, the cases cited by TLC in its motion were solely for purposes of setting forth the applicable standards — nothing more and nothing less. As explained in TLC's motion, TLC meets those standards in all respects.

## VI. CONCLUSION

Rational's opposition is conclusory and rife with speculation. For the reasons stated in TLC's motion and herein, TLC's motion should be granted and an expedited schedule should be ordered.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*
_____
Jack B. Blumenfeld (#1014)
jblumenfeld@mnat.com
Karen Jacobs Louden (#2881)
klouden@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for plaintiff*
*Technology Licensing Corporation*

OF COUNSEL:
Rory J. Radding
Colette A. Reiner
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050
(212) 468-8000

Mario G. Ceste
THE LAW OFFICES OF MARIO G. CESTE, LLC
P.O. Box 82
Wallingford, CT 06492
(203) 678-6418

Dated: September 29, 2006

## CERTIFICATE OF SERVICE

I, Karen Jacobs Louden, hereby certify that on October 2, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell, III
> Richards, Layton & Finger

I also certify that copies were caused to be served on October 2, 2006 upon the following in the manner indicated:

### BY HAND

> Frederick L. Cottrell, III
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE  19899

> */s/ Karen Jacobs Louden (#2881)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> klouden@mnat.com