**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TECHNOLOGY LICENSING CORPORATION, a Florida corporation, | : : : | |
| Plaintiff, | : : | C.A. No. 06-515-JJF |
| v. | : : : | |
| RATIONAL COOKING SYSTEMS, INC., a Delaware corporation, | : : : | |
| Defendant. | : : : | |

**DEFENDANT RATIONAL COOKING SYSTEMS, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Of Counsel:
Edgar H. Haug
Porter F. Fleming
Jonathan R. Wise
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Gregory E. Stuhlman (# 4765)
Stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney
P.O. Box 551
Wilmington, DE 19899
Tel: (302) 651-7509

*Attorneys for Defendant
Rational Cooking Systems, Inc.*

Dated: February 21, 2007

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iv

I.   STATEMENT OF THE NATURE AND STAGE OF THE
     PROCEEDINGS .................................................................................................... 1

     A.   Introduction ................................................................................................ 1

     B.   Proceedings to Date .................................................................................... 1

II.  SUMMARY OF THE ARGUMENT ...................................................................... 2

III. CONCISE STATEMENT OF THE FACTS ........................................................... 5

     A.   Facts Regarding Bernard G. Koether ........................................................ 5

     B.   Facts Regarding Mario G. Ceste ................................................................ 6

     C.   Facts Regarding Rory J. Radding ............................................................... 9

IV.  ARGUMENT ....................................................................................................... 11

     A.   Bernard Koether Is a Key Fact Witness and a Competitor ...................... 11

     B.   Mario Ceste Should Not Have Access to Confidential and
          Highly Confidential Information Under the Protective
          Order ......................................................................................................... 12

          1.   Mario Ceste Is a Competitor in the Food Industry ....................... 13

          2.   Mr. Ceste's Access to Confidential and Highly
               Confidential Information Creates a High Risk of
               Inadvertent Disclosure .................................................................. 14

               a.   Mr. Ceste Is Involved in Competitive
                    Decision Making With Pending Food
                    Industry Related Patent Applications ................................. 14

               b.   Mr. Ceste's Statement That He Does Not
                    Participate in Competitive Decision Making
                    Is Suspect .......................................................................... 15

          3.   TLC and FAST Have Repeatedly Identified Mr.
               Ceste as a Person with Knowledge Regarding the
               '948 Patent ..................................................................................... 16

C.  Mr. Radding and Mr. Ceste Will Likely Be Necessary Witnesses at Trial and Cannot Hide Behind the Title of "Trial Counsel" as a Basis for Refusing to Provide Deposition and Possible Trial Testimony ..................................................18

　　1.  Messrs. Ceste and Radding Are Necessary Witnesses to be Deposed ......................................................18

　　　　a.  Mr. Ceste Will Likely Be a Necessary Witness..................................................................................19

　　　　b.  Mr. Radding Will Likely Be a Necessary Witness..................................................................................19

　　2.  TLC Will Not Suffer Substantial Hardship If Mr. Ceste and Mr. Radding Are Required to Testify at Trial ..................................................................................20

D.  RCSI's Subpoenas to Third Parties Are Not Premature Nor Overbroad ..................................................................................21

　　1.  The Subpoenas Are Necessary to Assure Complete and Full Productions ......................................................22

E.  RCSI's Proposed Protective Order ........................................................23

V.  CONCLUSION..................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
    2004 U.S. Dist. LEXIS 12782 (D. Del. 2004) ......................................................... 14

*Funai Elec. Co. v. Orion Elec. Co.*,
    2002 U.S. Dist. LEXIS 20509 (S.D.N.Y. 2002) ...................................................... 21

*Motorola, Inc. v. Interdigital Tech. Corp.*,
    1994 U.S. Dist. LEXIS 20714 (D. Del. 1994) ......................................................... 14

*R.R. Donnelley & Sons Co. v. Quark, Inc.*,
    2007 U.S. Dist. LEXIS 424 (D. Del. 2007) ...................................................... 11, 15

*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*,
    682 F. Supp. 20 (D. Del. 1988) ............................................................................. 11

*U.S. Steel Corp. v. United States*,
    730 F.2d 1465 (Fed. Cir. 1984) ............................................................................. 14

## Rules

ABA Model Rule of Professional Conduct 3.7(a) ............................................................ 18

District of Delaware Local Rule 26.2 .............................................................................. 2

Delaware Rule of Professional Conduct 3.7(a) ............................................................... 18

Rule 615, Fed. R. Evid ................................................................................................... 17

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

### A.    Introduction

Defendant Rational Cooking Systems, Inc. ("RCSI") respectfully submits this memorandum in opposition to Plaintiff Technology Licensing Corporation's ("TLC") Motion for Entry of a Protective Order. D.I. 41. TLC's motion is premature, confuses the record and should be denied. RCSI has proposed its own Protective Order (which is attached to this Memorandum as Exhibit 1) that addresses the concerns set forth below regarding Mario Ceste, Rory Radding and Bernard Koether.

### B.    Proceedings to Date

On August 18, 2006, TLC and FAST filed a complaint against RCSI asserting infringement of U.S. Patent No. 4,920,948 ("the '948 patent"), which generally relates to a parameter control system. D.I. 1. Less than two weeks later, on August 31st, TLC filed an amended complaint removing FAST as a party without explanation. D.I. 8.

On September 9, 2006, TLC moved for expedited discovery. D.I. 9. RCSI opposed the motion. D.I. 10. In its opposition brief, RCSI explained that its defenses and counterclaims would involve discovery from the inventors and fact witnesses, including co-inventor, sole employee of TLC and Chairman of FAST, Bernard Koether, and attorneys Mario Ceste and Rory Radding. D.I. 10, at pp. 7-11. The Court denied TLC's motion for expedited discovery. D.I. 32.

On December 20, 2006, TLC's Delaware counsel moved for Mario Ceste's admission *pro hac vice*. D.I. 23. On the same day, counsel for RCSI sent an email to the

1

Court stating RCSI's intention to oppose the motion. (Fleming Decl. ¶ 3, Exhibit A).[1]

Two days before RCSI's opposition would have been due, the Court "so ordered" Mr.

Ceste's application. (Fleming Decl. ¶ 4, Exhibit B).

The Court entered a Scheduling Order on December 29, 2006. D.I. 30. Fact

discovery is to be completed by November 16, 2007. *Id.* A pretrial conference is set for

June 5, 2008. D.I. 35. Fact discovery is under way. The parties have served written

discovery and exchanged responses. D.I. 20, 22, 33 and 34. Both parties have also

served subpoenas on third parties. D.I. 25, 26, 31 and 38.

## II.     SUMMARY OF THE ARGUMENT

RCSI has not "refused" to produce confidential information as alleged by TLC.

RCSI has responded to TLC's interrogatories and document requests, made certain

proper objections and agreed to produce relevant, non-privileged documents. Certain of

the objections raised involve (i) whether certain individuals should have access to RCSI

confidential information, (ii) who will be on the protective order and (iii) in what

capacity they can act as trial counsel. Despite these objections, RCSI clearly

acknowledged its obligations under Delaware Local Rule 26.2 and further stated

throughout its responses:

> Subject to and without waiving any objections, Rational
> will produce at a mutually agreeable time and location
> responsive, relevant, non-privileged documents, to the
> extent any exist.

D.I. 42, Exhibit E.

------------------

[1]  The Exhibits referenced in this Memorandum are attached to the Declaration of Porter
F. Fleming, Esq. filed herewith and are identified as ("Fleming Decl. ¶ _____, Exhibit
_____").

Despite TLC's rhetoric to the opposite, RCSI has not withheld any confidential information from its discovery responses. The issues concerning whether both Mario Ceste and Rory Radding can be trial counsel and be under the protective order — thus permitting them to see Confidential and Highly Confidential RCSI materials — is a separate issue, now raised by TLC's motion. The parties had previously agreed that no confidential documents will be shown to Mario Ceste or Bernard Koether until the issues are resolved. (Fleming Decl. ¶¶ 5-7, Exhibits C-E). Accordingly, and in compliance with Local Rule 26.2 and as stated in RCSI's responses, responsive, non-privileged documents will be and are being produced. There simply has been no refusal.

The issue before the Court simply is to whom Confidential and Highly Confidential RCSI materials may be shown. For the reasons below, RCSI respectfully suggests that reasonable restrictions should be included in any protective order entered.

TLC's motion is also premature. As of the TLC motion filing date (February 6th) and the date of this response (February 21st), TLC, Rory Radding, Morrison & Foerster, FAST, Bernard Koether, and George Koether have not yet produced a single piece of paper in this case. Further, there has been limited production in the last few days from Mr. Ceste, but no privilege logs from Mario Ceste or any other third party have been provided. Accordingly, RCSI has not had an opportunity to review any of the requested information, logs of documents withheld on the basis of privilege, or had a full and fair opportunity to depose Messrs. Ceste or Radding on their involvement and competitive affiliations. Despite this lack of discovery, it still appears that both these individuals have important, relevant, necessary and discoverable information. Messrs. Ceste and Radding should not be able to hide behind the shield of "trial counsel" to prevent appropriate and

3

relevant discovery particularly when such discovery is necessary to determine if these individuals should have access to confidential information. Further, RCSI's ability to prepare and present its case at trial will be seriously prejudiced if these individuals can avoid their discovery obligations.

Also premature are the issues concerning Bernard Koether and third-party subpoenas. There has not been a proper meet and confer on these issues. Had there been such a discussion, certain of these issues may have been resolved. For example, even though TLC had previously agreed that Bernard Koether would not have access to confidential information under the protective order as he (i) is a named co-inventor of the patent-in-suit and (ii) the owner/sole employee of TLC and (iii) founder and current Chairman of Food Automation-Service Techniques ("FAST"), TLC's position regarding Mr. Koether changed shortly before filing their motion. D.I. 42, Exhibit F, letter dated February 2, 2007 from J. Hough to P. Fleming. Likewise, TLC's objections concerning a time specification for certain subpoenas could have been resolved.

After TLC's motion was filed, RCSI's counsel reached out to Mr. Radding to discuss these issues. During a February 19th conference call, RCSI offered to permit Bernard Koether to be on the two-tiered protective order and have access to only Confidential information (but not Highly Confidential), as long as RCSI and its German parent, Rational AG, could each have a similar designee. TLC's counsel would not accept the offer. Instead, TLC insisted that a FAST person then would also be required on the protective order. With respect to the Rory Radding issue, RCSI's counsel agreed that it would not move to disqualify Mr. Radding as counsel and not oppose him continuing to act as trial counsel for TLC, if TLC and Mr. Radding would agree not to

4

use Mr. Radding's status as trial counsel to object and prevent his anticipated fact deposition and possible testimony at trial. TLC's counsel refused these offers. Likewise, the parties have a very different view with respect to Mr. Ceste. No agreement was reached.

As for the Radding, Morrison & Foerster and Ceste subpoenas, RCSI also offered to limit the scope and time to documents created before the filing of the lawsuit — August 2006. TLC's counsel seeks an earlier cut-off date of April 2006. Instead of agreeing to narrow any of these issues, TLC's counsel insisted that RCSI must brief all the issues, and that in its reply, TLC would respond to RCSI's offers.

## III.    CONCISE STATEMENT OF THE FACTS

### A.    Facts Regarding Bernard G. Koether

Bernard Koether owns and is the apparent sole employee of plaintiff TLC. He is also the founder and current Chairman of FAST. Mr. Koether is named as a co-inventor of the U.S. Patent No. 4,920,948 (the "'948 patent"), at issue here. He is also the inventor or co-inventor of at least 20 issued patents in the control or oven fields. He appears to be intimately involved and knowledgeable in all aspects of TLC, FAST and the patent in suit. He will be a key and necessary witness on many topics pertaining to this litigation.

Bernard Koether is clearly a competitor who should not have access to RCSI's confidential documents. The parties had agreed that Mr. Koether would not have access to confidential information under the protective order. TLC's new position is that Mr. Koether should have access to confidential information in the form of undefined "summaries" either written by or to be communicated by TLC's counsel. D.I. 41, pp. 13-14.

### B.    Facts Regarding Mario G. Ceste

The facts presently known to RCSI indicate that Mario Ceste is a competitor in the food industry and will definitely be a necessary fact witness in this case. TLC has not and cannot deny that Mr. Ceste has relevant factual information that is discoverable by deposition in this case. He will also most likely be a trial witness. Under these circumstances, Mr. Ceste should not have access to confidential information in this case.

In May 1998, Mario Ceste and Bernard Koether traveled to Germany to meet with RCSI's German parent, Rational AG. At those meetings, Messrs. Ceste and Koether discussed the '948 patent, ovens, controls, and possible business opportunities with Rational AG. Mr. Ceste was also involved in licensing and negotiations on behalf of FAST and Bernard Koether. No agreements were reached between Rational AG and FAST. Likewise, Mr. Radding's offer to license the '948 patent was not accepted. D.I. 10, pp. 7-11; D.I. 11, Exhibits 4 and 5.

In 2001, Mr. Ceste became admitted to the Connecticut Bar. It appears that Mr. Ceste has continued to be active in the food industry after becoming a lawyer. On April 22, 2002, Mr. Ceste filed a patent application as a co-inventor, entitled "AUTOMATED FOOD FRYING DEVICE AND METHOD." The application issued as U.S. Patent No. 6,869,633 on May 22, 2005. (Fleming Decl. ¶ 8, Exhibit F). Interestingly, U.S. Patent No. 6,869,633 has not been assigned to TLC or FAST but another company in the food industry – Restaurant Technology, Inc. of Oakbrook, IL. *Id.* It is yet undetermined whether this company is affiliated with Bernard Koether, the Koether Group or FAST.

Mr. Ceste is also listed as a co-inventor on at least nine (9) other food industry related published patent applications since 2002—the most recent being U.S. Patent App. No. 20050251450, a continuation filed on June 20, 2005, entitled "DIAGNOSTIC DATA

INTERCHANGE." Mr. Ceste is again listed as a co-inventor with Bernard Koether. (Fleming Decl. ¶ 9, Exhibit G). Other food industry related patent applications in which Mr. Ceste has been identified as a co-inventor, post-bar admission, include:

Patent App. No. 20050193898 entitled, "AUTOMATED FOOD PROCESSING SYSTEM AND METHOD" (Fleming Decl. ¶ 10, Exhibit H);

Patent App. No. 20050061160 entitled, "AUTOMATED FOOD FRYING DEVICE AND METHOD" (Fleming Decl. ¶ 11, Exhibit I);

Patent App. No. 20040020555 entitled, "AUTOMATED FOOD PROCESSING SYSTEM AND METHOD" (Fleming Decl. ¶ 12, Exhibit J);

Patent App. No. 20040011006 entitled, "FOOD DISPENSING DEVICE AND METHOD" (Fleming Decl. ¶ 13, Exhibit K);

Patent App. No. 20030207009 entitled, "AUTOMATED FOOD FRYING DEVICE AND METHOD" (Fleming Decl. ¶ 14, Exhibit L)'

Patent App. No. 20030205034 entitled, "AUTOMATED DEVICE FOR PACKAGING FOOD" (Fleming Decl. ¶ 15, Exhibit M);

Patent App. No. 20030205028 entitled, "AUTOMATED FOOD PROCESSING SYSTEM AND METHOD" (Fleming Decl. ¶ 16, Exhibit N); and

Patent App. No. 20030205027 entitled, "AUTOMATED METHOD FOR PACKAGING FOOD" (Fleming Decl. ¶ 17, Exhibit O).

Because these applications are still pending, Mr. Ceste could still potentially use Confidential and/or Highly Confidential information that he learns from RCSI regarding its products and technologies, including the accused SCC® product, to his business advantage. Moreover, since patent applications generally take eighteen months to publish, it is unknown if Mr. Ceste has additional pending food industry related patent applications pending before the U.S. Patent and Trademark Office.

Moreover, in a prior patent litigation involving the '948 patent, where Mr. Radding was acting as counsel to TLC and FAST, Mr. Ceste was identified as a knowledgeable person with regard to "the first disclosure of the purported invention of

7

the '948 patent to others by the inventor or inventors." FAST's response to Interrogatory

No. 3, stated:

> The invention(s) described and claimed in the '948 patent
> was disclosed by Mario Pasquini and/or Bernard G.
> Koether to others within FAST, including but not limited
> to, Mario G. Ceste, at least as early as about March 16,
> 1987.

(Fleming Decl. ¶ 18, Exhibit P). It should also be noted that the Verification associated

with this entire set of FAST interrogatory responses, albeit unsigned, was prepared for

Mr. Ceste's signature. *Id.* at p. 12. Mr. Ceste was to attest to all of the interrogatory

responses on behalf of FAST.

In a later case, Mr. Ceste was again identified as a knowledgeable individual.

This time in response to Interrogatory No. 1, counsel provided the following:

| Mario Ceste | The invention and reduction to practice of the invention covered by the '948 patent, sale and marketing of ovens covered by the '948 patent |
|---|---|

(Fleming Decl. ¶ 19, Exhibit Q).

According to Mr. Ceste's biography on the FAST website, Mr. Ceste served as

President and COO. (Fleming Decl. ¶ 20, Exhibit R). This publicly available

information appears to be at odds with the Ceste declaration submitted in conjunction

with TLC's motion. D.I. 43. The copyright date on the FAST webpage is 2005. TLC

claims Mr. Ceste left FAST in 2004. Mr. Ceste never mentions his employment as

President and COO as stated on the FAST webpage. Mr. Ceste is also a registered patent

attorney. It is presently unknown if Mr. Ceste prosecutes patents for other companies in

the food, oven or control industries at this time.

C.    **Facts Regarding Rory J. Radding**

It is believed that Mr. Radding has discoverable, non-privileged, factual information regarding the issues, claims, counterclaims and defenses in this case. He will be a necessary fact deponent and may be a witness at trial. RCSI has not moved to disqualify Mr. Radding, but has sought his agreement that he will not use the fact that he is acting as trial counsel as a basis to object and prevent anticipated fact discovery and possible trial testimony. He has refused to agree to these terms. It appears that Mr. Radding will at a later date attempt to prevent such discovery based on his role as trial counsel. Repeatedly in correspondence and again in TLC's memorandum, arguments are made that Messrs. Radding and Ceste will not be a "necessary witness" because the information can be obtained from alternate sources. D.I. 41 at pp 10-13.

Mr. Radding was involved in European Opposition Proceedings involving the foreign equivalent of the '948 patent. The oral argument was conducted on November 7, 1997 in Munich, Germany. As reflected by the MINUTES, "Mr. Redding [sic]" was present on behalf of the patentee FAST. (Fleming Decl. ¶ 21, Exhibit S). At the same argument, the alleged invention was described as follows:

> according to the invention, in order to keep a uniform and optimal quality for the products despite these disturbances, a specific cooking time is attributed to each product, each cooking time is divided in several time intervals, in each of said intervals, one or more parameters are controlled with reference to their corresponding cooking curves, and the duration of any of said time intervals is varied in response to the measured temperature value.

(Fleming Decl. ¶ 22, Exhibit T, p. 4). This description and related factual information concerning the "invention" will be the subject of testimony from Mr. Radding. Such testimony will relate to at least invalidity and claim construction. Based on the above representations and related claim amendments, the European patent claims were allowed

9

in a narrowed form. A subsequent press release was issued by FAST, with specific quotes from Messrs. Ceste and Koether. (Fleming Decl. ¶ 23, Exhibit U).

Mr. Radding was also involved and participated in key correspondence — as author and addressee — with counsel for Rational AG in 1998. D.I. 10 at pp. 7-9; D.I. 11, Exhibits 4 and 5. These communications support RCSI's defenses and counterclaims — including the invalidity of the '948 patent and laches. Mr. Radding also has discoverable, factual information regarding his involvement in a previous litigation where the same '948 patent was asserted against United Electric Controls, Co. by TLC and FAST. As part of that settlement, UEC and its attorneys were required to turn over all documents, including UEC's counsel's attorney client and work product files, to Mr. Radding. (Fleming Decl. ¶ 24, Exhibit V). It is believed that these documents will contain important prior art and possible other relevant materials that precipitated the prompt settlement of the UEC patent lawsuit.

Despite a subpoena to Mr. Radding and his firm, the documents delivered to Mr. Radding from UEC's counsel have not yet been located or produced. The latest explanation is that the files did not leave the Jones Day law firm when Mr. Radding left and moved to his present position at Morrison & Foerster. Irrespective of where the files may now reside, the materials should be produced either by Mr. Radding, Mr. Koether, TLC or FAST. These documents, when produced, may also support RCSI's counterclaims and defenses, and may also lead to other reasons why Mr. Radding is a necessary witness.

## IV.    ARGUMENT

### A.    Bernard Koether Is a Key Fact Witness and a Competitor

Bernard Koether is a key fact witness and his access to confidential information creates a dangerous disclosure risk for RCSI. Nevertheless, TLC wants Bernard Koether to have access to RCSI's confidential information in the form of "summaries" prepared by its counsel.

Bernard Koether appears to be the owner of FAST, TLC, Self Cooking Kitchen ("SCK"), and possibly other companies. Mr. Koether is the primary decision maker at TLC and probably is at his other companies. Directly advising a company such as TLC and/or FAST in a supervisory role is the type of competitive decision making that creates a disclosure risk weighing heavily against granting access. *See R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 U.S. Dist. LEXIS 424 (D. Del. 2007) (Farnan, J.).

Indeed, "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (denying the CEO access to confidential information and stating that the Court "question[s] [the CEO's] human ability during future years of research to separate the applications he has extrapolated from [the opposing company's] documents from those he develops from his own ideas."). The novel features in RCSI's and Rational AG's products could lead Mr. Koether to file new patent applications or amend pending patent applications.

Despite this serious concern regarding Mr. Koether and his competitive positions, RCSI is willing to agree that he can see only Confidential information (but not Highly Confidential) under the protective order with certain limitations. First, Mr. Koether must

sign an undertaking clearly stating that he will only use any Confidential information disclosed to him in this case for the limited and sole purpose of participating in case strategy and settlement. RCSI opposes TLC's request that Mr. Koether have access to lawyer prepared "summaries." These summaries are as yet undefined, questionable in nature, may be written or oral, and are not subject to the Court's control. Due to the importance of RCSI's confidential information, and appreciating that Mr. Koether would normally not have access to such information under a protective order, the Court should not permit "summaries" of confidential documents be disclosed in written or verbal forms to Mr. Koether. Allowing Mr. Koether access to undefined summaries of confidential information prepared by attorneys who have access to <u>both</u> Confidential and Highly Confidential information could potentially result in conscious or subconscious disclosure of RCSI's protected information.

**B.    Mario Ceste Should Not Have Access to Confidential and Highly Confidential Information Under the Protective Order**

While RCSI is willing to allow Mr. Koether to have access to certain RCSI information under reasonable conditions, it is respectfully suggested that Mr. Ceste should not have such access. TLC's draft protective order permits "any outside attorney of record" — including Mario Ceste — to have access to all Confidential and Highly Confidential information. D.I. 40, Exhibit A, ¶¶ 13(a) and 14(a). It is obvious, not withstanding that TLC has retained Morrison & Foerster as trial counsel, TLC has titled Mr. Ceste as "an outside attorney of record" too in order to permit his access to the most sensitive RCSI information. TLC's procedural maneuvers should be rejected by the Court.

Mario Ceste should not have access to any of RCSI's Confidential and Highly Confidential information because (i) Mr. Ceste is still a competitor in the food industry with pending patent applications; (ii) granting Mr. Ceste access to RCSI's Confidential and Highly Confidential information creates a high risk of inadvertent disclosure; (iii) in past cases, TLC and FAST have identified Mr. Ceste as a person with specific knowledge relating to the '948 patent; (iv) it would be inappropriate and prejudicial to allow Mr. Ceste to see Confidential and Highly Confidential documents that may pertain directly to his anticipated fact testimony; and (v) Mr. Ceste cannot be insulated by stating that he understands his duty under the rules of professional ethics.

### 1.    Mario Ceste Is a Competitor in the Food Industry

Mr. Ceste's involvement in food industry related inventions did not end when he became a lawyer. Even after his admission to the Connecticut Bar in 2001, Mr. Ceste was named as a co-inventor of a food industry related patent application that issued as U.S. Patent No. 6,869,633. (Fleming Decl. ¶ 8, Exhibit F). Additionally, Mr. Ceste has also been named as a co-inventor in at least nine (9) other food industry related published patent applications since 2002. (Fleming Decl. ¶¶ 9-17, Exhibits G-O). The most recent filed in June 2005, entitled "DIAGNOSTIC DATA INTERCHANGE," identifies Mr. Ceste as a co-inventor with Bernard Koether. (Fleming Decl. ¶ 9, Exhibit G). This and other applications are still underlined and may be amended, changed or may be the filing basis for additional continuation-in-part applications by Mr. Ceste.

There is no indication from the existing record or from Mr. Ceste's recent declaration that Mr. Ceste (i) has stopped attempting to file patent applications, (ii) no longer works for other companies in the control or oven fields, (iii) represents other companies in these fields, or (iv) has some financial interest in TLC or FAST, this

13

litigation, the patent in suit or other TLC/FAST patents. Should Mr. Ceste continue to apply for patents in the future, it will be difficult for him to distinguish his own ideas from those which he would obtain from Confidential and Highly Confidential information produced in this case. Accordingly, this Court should preclude Mr. Ceste from having access to RCSI's Confidential and Highly Confidential information.

> **2.    Mr. Ceste's Access to Confidential and Highly Confidential Information Creates a High Risk of Inadvertent Disclosure**

>> **a.    Mr. Ceste Is Involved in Competitive Decision Making With Pending Food Industry Related Patent Applications**

Access to any confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *U.S Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984). The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure. *Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 U.S. Dist. LEXIS 20714 (D. Del. 1994). Mr. Ceste has a background in electric engineering and over 20 years of experience in the food industry. He is also trained and registered to prosecute patent applications before the U.S. Patent and Trademark Office. He was admitted to the Patent Bar in 1999.

Mr. Ceste is actively involved in obtaining patents for himself and has prosecuted at least one patent application for another. "Prosecuting patent applications involves decisions of scope and emphasis that implicate competitive decision making, as claims may be drafted to read on new products and new directions where [a party] project[s] sales to be most critical." *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 12782, at *8 (D. Del. 2004) (internal quotations omitted). As a

co-inventor with applications presently before the United States Patent and Trademark Office, Mr. Ceste has the ability to understand and propose changes to these pending patent applications that necessarily puts him in an advisory role for competitive decision making. This risk of disclosing, intentionally or not, RCSI's Confidential or Highly Confidential information is too great and should not be tolerated by this Court.

> **b.    Mr. Ceste's Statement That He Does Not Participate in Competitive Decision Making Is Suspect**

Generally, "unrebutted statements made by counsel asserting that he does not participate in competitive decision making, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decision making." *R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 U.S. Dist. LEXIS 424, at *5 (D. Del. 2007) (Farnan, J.). However here, FAST's own website calls into question statements made by Mr. Ceste in his declaration. The FAST website identifies Mr. Ceste as President and COO and has been "credited with the ongoing development" of the SCK® product line. According to Mr. Ceste's declaration, however, he "did not participate in management decisions at FAST" during that time period:

> 6.    From approximately 2002 until November 2004, I ran a separate business unit of FAST, SCK, Inc., a networking communications company that was also founded by Bernard Koether. During this time, I did not participate in management decisions relating to FAST.

It is unclear how one can run a business for an admitted unit of FAST, serve as President and COO, and not make any "management decisions relating to FAST." SCK is a business unit of FAST.

It is also worth pointing out that according to the websites for FAST and SCK, both companies identify the same business address (905 Honeyspot Road, Stratford, CT

06615) and the same fax number (203-377-8187). (Fleming Decl. ¶¶ 25-26, Exhibits W-X.) These facts highlight the overlapping relationships and proximity between FAST, Bernard Koether, the Koether Group, SCK and Mario Ceste. The record continues to indicate that Mr. Ceste is involved in competitive decision making. Accordingly, it would be inappropriate for Mr. Ceste to have access to RCSI's Confidential and Highly Confidential information under the protective order. TLC's attempt to slide Mr. Ceste in and under the protective order as "any outside attorney of record" should be rejected.[2]

When the FAST and Bernard Koether documents are produced, privilege logs received and reviewed, and depositions taken, additional evidence may be elicited of Mr. Ceste's role in competitive decision making at FAST and/or TLC. Similarly, RCSI can be further harmed if Mr. Ceste also participates in competitive decision making for other companies, especially those owned by the "Koether Group." Mr. Ceste has a conflict participating in this case. RCSI's need to protect its Confidential and Highly Confidential information clearly outweighs any as yet undisclosed reason why Mr. Ceste has to act as TLC's co-counsel in this case. TLC is already represented by two other law firms: Morris, Nichols, Arsht & Tunnell LLP and Morrison & Foerster, LLP.

### 3.    TLC and FAST Have Repeatedly Identified Mr. Ceste as a Person with Knowledge Regarding the '948 Patent

The few documents that RCSI has been able to obtain indicate that Mr. Ceste has specialized knowledge that will need to be the subject of discovery by RCSI. In *Food Automation-Service Techniques, Inc. v. United Electric Controls Co.*, in which FAST

---

[2] To the extent Mr. Ceste really is being retained to function as a "technical expert," review documents and provide scientific/engineering advice to TLC's other counsel, TLC should hire an appropriate and non-objectionable outside expert.

sued UEC for infringement of the '948 patent, FAST and its counsel, Rory Radding, identified Mr. Ceste in its Rule 26(a)(1) initial disclosures as knowledgeable about controllers:

> 2.    Mario G. Ceste, Director of Business Development, FAST. Mr. Ceste is likely to have knowledge on at least the following subjects: marketing and sales of FAST oven controllers; research and development of FAST oven controllers; competitive analysis of oven controlling devices made and sold by others.

(Fleming Decl. ¶ 27, Exhibit Y, p.2)

Likewise, in response to an interrogatory in the UEC case directed to "first disclosures of the purported invention," Rory Radding stated that "[t]he invention(s) described and claimed in the '948 patent was disclosed by Mario Pasquini and/or Bernard G. Koether to others within FAST, including but not limited to, Mario G. Ceste, at least as early as about March 16, 1987. (Fleming Decl. ¶ 18, Exhibit P).

In another case, *Technology Licensing Corp. v. Turbochef Tech. Inc.*, FAST's lawyers again identified Mario Ceste as having knowledge of the facts relating to

> The invention and reduction to practice of the invention covered by the '948 patent, sale and marketing of ovens covered by the '948 patent.

(Fleming Decl. ¶ 19, Exhibit Q).

Mr. Ceste has also had personal dealings, meetings and correspondence with RCSI's German parent, Rational AG. D.I. 10 at pp. 7-8. For Mr. Ceste to now review as a fact witness Confidential and Highly Confidential documents that describe the same meetings that he attended and will be deposed on, could well influence his own fact deposition or trial testimony. Much in the way Rule 615, Fed. R. Evid., prevents a fact witness at trial from hearing the testimony of other fact witnesses prior to testifying, the

same should apply here for discovery. It would be inappropriate and prejudicial for Mr. Ceste as an individual under the protective order to see, be briefed and have access to Confidential and/or Highly Confidential information which will certainly bear on his own expected testimony.

Mr. Ceste's testimony will certainly relate to many issues regarding the '948 patent, FAST, TLC, and RCSI's counterclaims and defenses, including invalidity, inequitable conduct and laches. Accordingly, Mr. Ceste should not have access to any of RCSI's Confidential or Highly Confidential information in this case.

C.    **Mr. Radding and Mr. Ceste Will Likely Be Necessary Witnesses at Trial and Cannot Hide Behind the Title of "Trial Counsel" as a Basis for Refusing to Provide Deposition and Possible Trial Testimony**

1.    **Messrs. Ceste and Radding Are Necessary Witnesses to be Deposed**

ABA Model Rule of Professional Conduct 3.7(a) prevents Messrs. Ceste and Radding from serving as both an advocate and a witness at trial.[3] RCSI appreciates that this ethical rule alone may not prevent them from being counsel of record for pretrial matters. They should not, however, be able to use the fact that they are "trial counsel" to avoid being deposed. ABA Model Rule of Professional Conduct 3.7(a), entitled "Lawyer as Witness," states:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or

---

[3] Delaware Rule of Professional Conduct 3.7(a) is identical to ABA Model Rule of Professional Conduct 3.7(a).

>           (3) disqualification of the lawyer would work
>           substantial hardship on the client.

Messrs. Radding and Ceste do not fall within any of these exceptions.

### a.    Mr. Ceste Will Likely Be a Necessary Witness

Mario Ceste is expected to be a necessary witness at trial. As discussed in detail in Sections III. B and IV. B. 3, Mr. Ceste has unique and individual information that is necessary for RCSI to prove its claims and defenses. It is also anticipated that there will be additional grounds why Mr. Ceste is a necessary witness when documents from TLC, FAST, Bernard Koether, George Koether, Rory Radding and Morrison & Foerster are produced and privilege logs are provided.

### b.    Mr. Radding Will Likely Be a Necessary Witness

Rory Radding is expected to be a necessary witness. Despite not yet receiving a single document from TLC or the associated subpoena directed to Mr. Radding's past and present involvement, we already contemplate that Mr. Radding has factual testimony to provide regarding (i) RCSI's defenses and counterclaims, (ii) invalidity positions, (iii) related correspondence to counsel, (iv) meetings with Rational AG in Germany, (v) licensing efforts, (vi) settlement of a previous lawsuit, (vii) prior art disclosed and identified, and (viii) the as of yet unseen UEC files. Additional subjects are anticipated when documents are produced and privileged logs provided.

It is clear that Mr. Radding required UEC and its counsel to send all documents including work product and attorney client files in the case directly to him. This information could be highly relevant to the invalidity of the '948 patent. Indeed, the UEC settlement agreement states that UEC's privileged documents and work product

must be transferred to Rory Radding. The settlement agreement specifically states as a provision:

> 2.     Upon entry of the Consent Judgment by the Court, UEC shall transfer to Pennie & Edmonds LLP (attn: Rory J. Radding, Esq.) all documents and physical materials including UEC attorney work product and attorney-client privileged documents relating to UEC's defenses.

(Fleming Decl. ¶ 24, Exhibit V).

As previously discussed, Mr. Radding was involved in correspondence with Rational AG and its counsel concerning infringement and invalidity positions, as well as licensing efforts. D.I. 10 at pp. 7-11; D.I. 11, Exhibits 4 and 5. It is presently unknown whether Mr. Radding has other documents relating to attempts to license the '948 patent, as he has yet to produce the requested and subpoenaed documents. The evidence in RCSI's possession to date already indicates that Mr. Radding will likely be a necessary witness. Mr. Radding should not be permitted to use his status as "trial counsel" as a basis to oppose or prevent a fact deposition or provide testimony at trial.

### 2.     TLC Will Not Suffer Substantial Hardship If Mr. Ceste and Mr. Radding Are Required to Testify at Trial

TLC would not suffer substantial hardship if either or both of Mr. Ceste and Mr. Radding are called as witnesses at trial. The trial is at least a year and a half away with the pretrial conference scheduled for June 5, 2008. In the last month it appears that in addition to Mr. Radding, at least three other partners in his firm, James Hough, William Kuhne and James Bergin, as well as two associates, Colette Reiner and Angela Rella have all been working on the case. Further, TLC has been on notice from RCSI that Mr. Radding and Mr. Ceste may be fact witnesses since RCSI filed its opposition brief on the expedited discovery issue back in September 2006. D.I. 10 at pp. 7-11.

20

**D.    RCSI's Subpoenas to Third Parties Are Not Premature Nor Overbroad**

TLC argues that RCSI's third-party discovery is premature, overbroad, and obstructs its access to proper representation.[4]   Although TLC has not satisfied its meet and confer obligations, RCSI will agree to limit the subpoenaed requests of Rory Radding and Morrison & Foerster to documents prior to the filing of this lawsuit — August 2006.

TLC has clearly attempted to separate itself from other third parties in its own discovery responses and objections.   Despite TLC's initial representations to the Court that TLC and FAST are "sister" companies, "family-owned companies that work together," both being "part of the Koether group of companies" and having a "symbiotic relationship" (D.I. 9 at p. 4 and D.I. 15 at pp. 1-2), now in its discovery responses to RCSI, TLC has changed its course and put forward the following objections to discovery:

> TLC's response to these interrogatories and/or requests is limited to the knowledge and information within TLC's possession, custody, or control and is intended to be the response of TLC only.

(Fleming Decl. ¶¶ 28-29, Exhibits Z-AA).

> FAST is not a party to this litigation…   [t]he production of any FAST documents … will be based on Rational's subpoena to FAST and not Rational's discovery requests to TLC.

*Id.*   As such, document requests to third parties such as FAST were necessary.

---

[4] Although TLC lacks standing to argue on behalf of at least Radding, Ceste, and Morrison & Foerster, and the subpoenas at issue were issued from the Southern District of New York, RCSI wants to resolve this issue now so the case can progress.   *See Funai Elec. Co. v. Orion Elec. Co.*, 2002 U.S. Dist. LEXIS 20509 (S.D.N.Y. 2002) (stating that the Court assumed for the purposes of the motion that the party had sufficient proprietary interest in the requested information to give it standing.).

1. **The Subpoenas Are Necessary to Assure Complete and Full Productions**

TLC's responses and objections make it clear that TLC would not be providing FAST documents. The '948 patent was originally filed on behalf of FAST. The co-inventors were FAST owner/employees during the relevant time periods leading up to the filing of the patent application. Even though the patent was later assigned to TLC — again, we do not have this agreement between FAST and TLC either — there is no reason to assume that FAST's notebooks, writings, specifications, etc. were transferred to TLC. They may still be in FAST's or Bernard Koether's possession.

By serving subpoenas on FAST, Bernard Koether and George Koether, all relevant documents should be produced. Since no documents have yet been produced, only time will tell.

As for the subpoenas directed to Rory Radding and Morrison & Foerster, they were the result of information obtained from a previous litigation involving the same '948 patent and TLC/FAST previous counsel, Rory Radding. As demonstrated above, UEC was required under the settlement to provide all of the files including the attorneys' work product to Rory Radding. (Fleming Decl. ¶ 24, Exhibit V). Those files are relevant, discoverable and have yet to be produced.

To the extent Messrs. Radding and Ceste and Morrison & Foerster complain that the subpoenas are too broad and not time specific, we have attempted to remedy this matter with Mr. Radding. TLC has requested an April 2006 date. RCSI has offered to limit the Radding, Ceste and Morrison & Foerster subpoenas to August 2006. This is the date the original complaint was filed. Under RCSI's proposal there would be no need for Mr. Radding, Mr. Ceste or the Morrison & Foerster firm to log attorney client or work

22

product communications withheld after the filing of the complaint — August 18, 2006.
TLC is considering this offer.

### E.    RCSI's Proposed Protective Order

RCSI's attached proposed protective order, we respectfully suggest, more fairly addresses the issues raised above. The document permits Rory Radding to be outside attorney of record with access to Confidential and Highly Confidential information. It also specifies that Mr. Radding cannot use the fact that he is trial counsel as a basis to object to providing deposition testimony or testimony at trial. (Exhibit 1, ¶¶ 30 and 31). Furthermore, RCSI's proposed protective order specifies the particular law firms that may have access to Confidential or Highly Confidential information and specifically states that Mr. Ceste will not have access to Confidential or Highly Confidential information. (*Id.* ¶¶ 15 and 18).

As for Bernard Koether, RCSI's proposed protective order permits Bernard Koether to see Confidential information on behalf of TLC. (*Id.* at ¶ 13(d)). Under the terms of the proposed RCSI protective order, Mr. Koether will not see Highly Confidential information. (*Id.* ¶19). Further, the RCSI proposed protective order provides that RCSI may also designate one person to have the same access as Bernard Koether. (*Id.* ¶13(e)). Each designated person will be required to sign an undertaking in the form of Exhibit B to the protective order. This undertaking states that the corporate representative will only use the Confidential information in this case for the limited and sole purpose of participating in case strategy and settlement.

### V.    CONCLUSION

RCSI respectfully requests that this Court deny TLC's Motion for Entry of a Protective Order in its entirety. Mario Ceste should not have access to RCSI's

23

Confidential or Highly Confidential information under the protective order. Bernard Koether may see only Confidential information, upon executing the proposed undertaking and shall not be shown or provided any summaries. Rory Radding may continue acting as trial counsel but will not use this as a basis to object to being a deponent or trial witness. It is respectfully requested that the Court should enter the proposed protective order submitted by RCSI for the reasons set forth above.

Of Counsel:

Edgar H. Haug
Porter F. Fleming
Jonathan R. Wise
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Dated: February 21, 2007

Frederick L. Cottrell, III (# 2555)
Cottrell@rlf.com
Gregory E. Stuhlman (# 4765)
Stuhlman@rlf.com
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Tel: (302) 651-7509

*Attorneys for Rational Cooking Systems, Inc.*

24

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### HAND DELIVERY

Jack B. Blumenfeld
Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19801

I further certify that on February 21, 2007, the foregoing document was sent to the following non-registered participants in the manner indicated:

### FEDERAL EXPRESS

Rory J. Radding
Colette A. Reiner
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10101-0050

Gregory E. Stuhlman (#4765)
Stuhlman@rlf.com

EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TECHNOLOGY LICENSING CORPORATION, )
a Florida corporation,                                )
                                                      )
                          Plaintiff,                  )      C.A. No. 06-515(JJF)
                                                      )
RATIONAL COOKING SYSTEMS, INC.,                       )
a Delaware corporation,                               )
                          Defendant.                  )

## [RCSI'S PROPOSED] PROTECTIVE ORDER REGARDING
## CONFIDENTIALITY OF DISCOVERY MATERIAL

Whereas discovery in the above-captioned action ("this Action") may involve the disclosure of certain documents, things and information in the possession, custody, or control of plaintiff Technology Licensing Corporation ("TLC") and defendant Rational Cooking Systems, Inc. ("RCSI") that constitute or contain trade secrets or other confidential research, development, or commercial information within the meaning of Rule 26(c)(7) of the Federal Rules of Civil Procedure. Accordingly, it is hereby ORDERED:

## SCOPE

1.    This Order shall apply to all information and things exchanged by any party, regardless of the medium or manner generated, stored or maintained, including, but not limited to, all documents and things produced in the course of discovery, all answers to interrogatories, all answers to requests for admission, all responses to requests for production of documents and things, and all deposition testimony and deposition exhibits, and any other papers or electronically stored information produced, filed, generated or served by a party in this litigation ("Discovery Material").

1

## DESIGNATION

2. Any Producing Party may designate Discovery Material as "CONFIDENTIAL" or as "HIGHLY CONFIDENTIAL" in accordance with this Order. The burden of establishing that Discovery Material is CONFIDENTIAL or HIGHLY CONFIDENTIAL as defined herein shall be on the Producing Party. The designation of any Discovery Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL shall be deemed effective unless and until the Court orders otherwise or the Producing Party withdraws the designation.

3. Discovery Material falling into one or more of the following categories may be designated as CONFIDENTIAL: (i) sensitive technical information that is not publicly available and that is not expressly contained in public information; and (ii) sensitive business or financial information that is not publicly available and that is not expressly contained in public information.

4. Discovery Material falling into one or more of the following categories may be designated as HIGHLY CONFIDENTIAL if disclosure would create a substantial risk of serious injury: (i) proprietary research and development and/or extremely sensitive technical information that is not publicly available; (ii) highly sensitive business-related financial or commercial information that is not publicly available and that is not expressly contained in public information; (iii) trade secrets; and (iv) unpublished patent applications and patent prosecution documents that are not available upon request from the U.S. Patent and Trademark Office or any other patent office.

5. The Producing Party may designate documents or other Discovery Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL by placing either of the following legends or similar legends on the document or thing: CONFIDENTIAL – SUBJECT TO PROTECTIVE

ORDER or HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER. In the event that CONFIDENTIAL or HIGHLY CONFIDENTIAL material is produced for inspection at a party's facility, such CONFIDENTIAL or HIGHLY CONFIDENTIAL material may be produced for inspection before being marked confidential. Once specific CONFIDENTIAL or HIGHLY CONFIDENTIAL material has been designated for copying, any CONFIDENTIAL or HIGHLY CONFIDENTIAL material will then be marked confidential after copying but before delivery to the Receiving Party. There will be no waiver of confidentiality by the inspection of CONFIDENTIAL or HIGHLY CONFIDENTIAL material before it is copied and marked confidential pursuant to this Order.

6.      Any party or non-party may designate discovery requests or responses (and the information contained therein) as CONFIDENTIAL or as HIGHLY CONFIDENTIAL by placing either of the following legends or similar legends on the face of any such document:

> "Contains CONFIDENTIAL information. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose CONFIDENTIAL information is included"; or

> "Contains HIGHLY CONFIDENTIAL information. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose HIGHLY CONFIDENTIAL information is included."

In the case of discovery requests or responses, a statement may also be included within the document specifying the portion(s) thereof designated as CONFIDENTIAL or as HIGHLY CONFIDENTIAL.

7.      Any party or non-party may designate depositions and other testimony (including exhibits) as CONFIDENTIAL or as HIGHLY CONFIDENTIAL by stating on the record at the time the testimony is given that the entire testimony or portions thereof shall be designated as CONFIDENTIAL or as HIGHLY CONFIDENTIAL, or designate as such within five (5)

3

business days after receipt of the transcript. If no such designation is made on the record at the time of the testimony, the testimony will be treated as HIGHLY CONFIDENTIAL up until the five (5) day period for designation has expired. The following legends or similar legends shall be placed on the front of any deposition transcript (and, if videotaped, any copies of the videotape) containing CONFIDENTIAL or HIGHLY CONFIDENTIAL information:

> "Contains CONFIDENTIAL information. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose CONFIDENTIAL information is included"; or

> "Contains HIGHLY CONFIDENTIAL information. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose HIGHLY CONFIDENTIAL information is included."

8.    Subject to any overriding rules imposed by the Court in this Action, all CONFIDENTIAL or HIGHLY CONFIDENTIAL material, or any excerpt, reproduction or paraphrase thereof, filed with the Court shall be filed in a sealed envelope or other appropriate sealed container on which the following shall be endorsed: (i) the caption of this Action; (ii) the words "CONFIDENTIAL – Restricted Access According to Court Order" or "HIGHLY CONFIDENTIAL – Restricted Access According to Court Order" as an indication of the nature of the content; and (iii) a statement in substantially the following form:

> "This envelope, containing documents which are filed in this case by (name of party), is not to be opened or the contents thereof to be displayed or revealed except by Order of Court or consent of the parties."

The Clerk of Court is directed to maintain under seal all material filed in this Action which has been marked or designated, in whole or in part, as CONFIDENTIAL or as HIGHLY CONFIDENTIAL and filed in accordance with this Paragraph. The sealed material shall not be

4

opened or released from the custody of the Clerk of Court except by order of the Court and except that outside counsel of record for any party may have access thereto by request to the Clerk of Court at any time during Court hours.

9.    Designation in conformity to this Order for information produced in electronic form or in any form other than documentary, and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the media (*e.g.*, diskette, CD-ROM or DVD), container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  If only portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portions, specifying whether they qualify as "Confidential" or as "Highly Confidential – Attorneys' Eyes Only "

## USE

10.    Any and all material designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL under this Order shall not be used or disclosed by the parties or counsel for the parties or any persons identified in Paragraphs 13, 16, 20, and 21 below for any purposes whatsoever other than preparing for and conducting this Action (including appeals).

11.    Except as provided in Paragraphs 13, 16, 20, and 21 below, counsel for the parties shall keep all material designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL and received under this Order secure within their exclusive possession and shall take reasonable efforts to place such documents in a secure area.

12.    All copies, duplicates, extracts, summaries, or descriptions (hereinafter referred to collectively as "copies") of material designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL under this Order or any portion thereof, shall be immediately affixed with the

words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" if those words do not already appear.

## DISCLOSURE OF CONFIDENTIAL MATERIALS

13.    Unless otherwise directed by the Court or authorized in writing by the Producing Party, Discovery Material designated as CONFIDENTIAL may be disclosed by the Receiving Party only to the following persons:

    a.    any outside attorney of record in this Action (including attorneys employed by firms of record but not otherwise identified specifically on pleadings) from the following law firms: Morris, Nichols, Arsht & Tunnell LLP; Richards, Layton & Finger, P.A.; Morrison & Foerster LLP; and Frommer Lawrence & Haug LLP;

    b.    support personnel for attorneys listed in sub-paragraph (a) above, including law clerks, analysts, paralegals, secretaries, and clerical staff employed by any attorney identified in sub-paragraph (a) and assisting in connection with this Action;

    c.    any outside expert or consultant who is retained by any attorney described in sub-paragraph (a) to assist in the preparation of this Action for trial, with disclosure only to the extent necessary to perform such work and subject to the requirements of Paragraphs 20-21 below;

    d.    TLC has designated Bernard Koether who may review CONFIDENTIAL material upon signing and agreeing to the Undertaking attached as Exhibit B for the limited and sole purpose of participating in case strategy and settlement in only this Action;

e.    RCSI may designate one (1) individual who may review CONFIDENTIAL material upon signing and agreeing to the Undertaking attached as Exhibit B for the limited and sole purpose of participating in case strategy and settlement in only this Action;

f.    any interpreter, or court or other shorthand reporter, videographer or typist translating, recording or transcribing testimony;

g.    service contractors (such as document copy services), jury consultants and graphic artists solely in providing litigation support services to the outside counsel described in sub-paragraph (a) with disclosure only to the extent necessary to perform such work;

h.    any person who authored and/or was an identified original recipient of the particular CONFIDENTIAL material sought to be disclosed to that person, or any deponent when the examining attorney has a good faith basis to believe the deponent is aware of the particular CONFIDENTIAL material sought to be disclosed;

i.    personnel of the Court and all appropriate courts of appellate jurisdiction; and

j.    any other person agreed to by the Producing Party in writing.

14.    CONFIDENTIAL material shall not be disclosed to persons described in Paragraphs 13(g) or (j) unless and until such person has executed the affidavit in the form attached as Exhibit A.

15.    Mario G. Ceste will not have access to materials designated by RCSI as CONFIDENTIAL.

## DISCLOSURE OF HIGHLY CONFIDENTIAL MATERIALS

16. Unless otherwise directed by the Court or authorized in writing by the Producing Party, Discovery Material designated as HIGHLY CONFIDENTIAL may be disclosed by the Receiving Party only to the following persons:

a. any outside attorney of record in this Action (including attorneys employed by firms of record but not otherwise identified specifically on pleadings) from the following law firms: Morris, Nichols, Arsht & Tunnell LLP; Richards, Layton & Finger, P.A.; Morrison & Foerster LLP; and Frommer Lawrence & Haug LLP;

b. support personnel for attorneys listed in sub-paragraph (a) above, including law clerks, analysts, paralegals, secretaries, and clerical staff employed by any outside attorney identified in sub-paragraph (a) and assisting in connection with this Action;

c. any outside expert or consultant who is retained by any attorney described in sub-paragraph (a) to assist in the preparation of this Action for trial, with disclosure only to the extent necessary to perform such work and subject to the requirements of Paragraphs 20-21 below;

d. any interpreter, or court or other shorthand reporter, videographer or typist translating, recording or transcribing testimony;

e. service contractors (such as document copy services), jury consultants and graphic artists involved solely in providing litigation support services to the outside counsel described in sub-paragraph (a) with disclosure only to the extent necessary to perform such work;

f. any person who authored and/or was an identified original recipient of the particular HIGHLY CONFIDENTIAL material sought to be disclosed to that person, or any

8

deponent when the examining attorney has a good faith basis to believe the deponent is the author and/or was an identified original recipient of the particular HIGHLY CONFIDENTIAL material sought to be disclosed to that deponent;

       g.    personnel of the Court and all appropriate courts of appellate jurisdiction; and

       h.    any other person agreed to by the Producing Party in writing.

17.    HIGHLY CONFIDENTIAL material shall not be disclosed to persons described in Paragraphs 16 (e) or (h) unless and until such person has executed the affidavit in the form attached as Exhibit A.

18.    Mario G. Ceste will not have access to materials designated as HIGHLY CONFIDENTIAL.

19.    Bernard G. Koether will not have access to materials designated as HIGHLY CONFIDENTIAL.

## DISCLOSURE OF CONFIDENTIAL OR HIGHLY CONFIDENTIAL MATERIAL TO AN INDEPENDENT EXPERT

20.    Before any disclosure of material designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL under this Order is made to an expert pursuant to Paragraphs 13(c) and 16(c) by the Receiving Party, outside counsel for the Receiving Party shall: provide the expert with a copy of this Order; explain its terms; and obtain the expert's written agreement, in the form of Exhibit A hereto, to comply with and be bound by its terms.

21.    No CONFIDENTIAL or HIGHLY CONFIDENTIAL material shall be shown to an expert pursuant to Paragraphs 13(c) and 16(c) until five (5) business days after said expert is identified in writing, and a current biographical sketch and a written commitment in the form of Exhibit A is provided, to the Producing Party. The biographical sketch shall include a curriculum

9

vitae or equivalent resume setting forth such person's present residence and business address(es), current employer and job title, any company or companies by which that individual was employed during the past ten (10) years, and a list of all consulting agreements or arrangements that said individual may have entered into during the past ten (10) years that involved or related to ovens and oven controls. The list should disclose the name and address of each such entity for which consulting work is being, or has been, performed, and the general subject matter of that consulting work. If disclosure of either the identity of the entity for which the work is being performed or the subject matter of that work, or both, is deemed proprietary by the Receiving Party, then the fact that certain information is being withheld on the basis that it is proprietary shall be disclosed by the Receiving Party, and any such information that is not deemed proprietary shall be disclosed. In the event that said individual enters into any subsequent consulting agreements or arrangements, the Receiving Party shall promptly notify the Producing Party of such agreements or arrangements. A party's consent to permitting disclosure of its confidential information by a retained expert of the other party shall not be unreasonably withheld. If a party objects, within five (5) business days of receipt of written notice, biographical sketch and written commitment, to such expert having access to any CONFIDENTIAL or HIGHLY CONFIDENTIAL material, the expert shall be barred from such access for a twenty (20) calendar day period running from the date the expert was identified in writing to the Producing Party (together with the expert's biographical sketch and written commitment). If within that twenty (20) calendar day period (1) the parties are unable to resolve their differences and (2) the opposing party moves for a further protective order, then the CONFIDENTIAL or HIGHLY CONFIDENTIAL material shall not be provided to said expert until the Court rules on the motion for further protective order.

## INADVERTENT PRODUCTION/DESIGNATION

22.    The inadvertent production of documents subject to the attorney-client privilege or the attorney work-product doctrine will not waive the attorney-client privilege or the attorney work-product doctrine. In addition, the fact that a document was inadvertently produced shall not be used in any manner as evidence in support of any such alleged waiver.

a.    Immediately upon receiving notice from the Producing Party that documents or materials subject to the attorney-client privilege or work-product immunity have been inadvertently produced, the Receiving Party shall not review, copy, or otherwise disseminate the documents or materials, nor shall it disclose their substance. In addition, the Receiving Party shall return the documents or materials and all copies within five (5) days from receiving notice.

b.    If the Receiving Party believes it has a good-faith basis for challenging the privilege claim, outside counsel for the Receiving Party shall provide the outside counsel for the Producing Party with a written explanation of the good-faith basis for its belief that the inadvertently produced documents or information are not privileged within fourteen (14) days after receipt of the Producing Party's request for return.

c.    Outside counsel for the Producing Party shall respond in writing to Receiving Party's outside counsel's timely challenge to the privilege or immunity claim within seven (7) days from receipt of the challenge.

d.    In the event the parties cannot agree as to the privilege or immunity status of the inadvertently produced documents or materials, the Receiving Party has fourteen (14) days from receipt of the Producing Party's written response to the privilege challenge to file a motion seeking an order compelling production of the inadvertently produced documents or information.

The Receiving Party shall not use the substantive content of the inadvertently produced documents or information to challenge the privilege or immunity status of such material. In the event that a motion is made, the Producing Party shall have the burden of proving that the produced documents or information are privileged.

       e.    Within five (5) days of the Receiving Party's timely filing of a motion seeking an order compelling production of the inadvertently produced documents or information, the Producing Party shall file under seal with the Court a copy of the inadvertently produced documents or information for in camera inspection by the Court. A copy of the cover letter forwarding the inadvertently produced documents or information for in camera inspection by the Court shall be provided to the moving party.

    23.    Inadvertent disclosure of material without designating the same as CONFIDENTIAL or HIGHLY CONFIDENTIAL shall not be deemed a waiver of confidentiality with regard to similar or related information, nor shall it be deemed a waiver of confidentiality with regard to the information inadvertently disclosed if promptly called to the attention of counsel for the Receiving Party who shall make every effort to retrieve the inadvertently disclosed information and prevent disclosure by each unauthorized recipient. If information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL in accordance with this Order is inadvertently disclosed to a person not authorized by this Order, the party who becomes aware of the disclosure shall immediately inform the other party of all pertinent facts relating to such disclosure and shall make every effort to retrieve the inadvertently disclosed information and prevent disclosure by each unauthorized recipient. The Receiving Party shall take reasonable steps to, at the Producing Party's option, either ensure that all copies of any such Discovery Materials are returned promptly

to the Producing Party or ensure that all copies of any such Discovery Materials are marked with the proper designation and distributed only as permitted under this Order.

### PARTY SEEKING GREATER PROTECTION MUST OBTAIN FURTHER ORDER

24.    No information may be withheld from discovery on the ground that the material to be disclosed requires protection greater than that afforded by this Order unless the party claiming a need for greater protection moves for an order providing such special protection pursuant to Fed. R. Civ. P. 26(c).

### CHALLENGING DESIGNATION OF CONFIDENTIALITY

25.    Any party through its counsel may assert that particular information designated by the other party as CONFIDENTIAL or HIGHLY CONFIDENTIAL is in fact publicly known or is otherwise not CONFIDENTIAL or HIGHLY CONFIDENTIAL and hence should not be subject to the designated protection hereunder. Such assertion, if made, will be discussed between counsel. If agreement cannot be reached, the designation of confidentiality in dispute may be challenged upon motion and the confidentiality of the information shall be maintained unless the Court orders otherwise. The burden of proving the confidentiality of designated information remains with the party asserting such confidentiality.

26.    The restrictions placed by this Order on a Receiving Party shall not apply to any information that, in its entirety:

a.    is at the time of disclosure hereunder, or thereafter becomes, a part of the public domain through no act or omission by the Receiving Party, its counsel or its employees;

b.    is subsequently independently developed by the Receiving Party;

c.    is lawfully in the possession of a person who is not subject to an obligation to maintain it in confidence; and/or

        d.     is hereafter lawfully disclosed to the Receiving Party by a third party which did not acquire the information under an obligation of confidentiality from or through the Producing Party.

## THIRD-PARTY DISCOVERY MATERIALS

27.    It is expressly contemplated and agreed that the terms of this Order are applicable to CONFIDENTIAL or HIGHLY CONFIDENTIAL material submitted by a *non*-party, and/or produced by a non-party in connection with this Action, and that the parties will treat all CONFIDENTIAL or HIGHLY CONFIDENTIAL material of a non-party in accordance with the terms of this Order.

## USE IN COURTROOM PROCEEDINGS

28.    Any information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL hereunder and produced to another party during discovery herein, if otherwise admissible, may be offered in evidence or otherwise used at the trial of this case, by either party, subject to such further order as the Court may enter to protect such information.

## RETURN / DESTRUCTION OF MATERIALS

29.    Within sixty (60) calendar days of the conclusion of the above-captioned case (including all appeals), all material treated as CONFIDENTIAL or HIGHLY CONFIDENTIAL under this Order and not received in evidence shall be returned to the Producing Party or destroyed with affidavit to such effect, except that each parties' outside counsel may maintain all papers filed with the Court, transcripts of testimony and their own memoranda containing confidential information for archival purposes. The party receiving any CONFIDENTIAL or HIGHLY CONFIDENTIAL material shall certify in writing that all such material, including CONFIDENTIAL or HIGHLY CONFIDENTIAL material disclosed hereunder, has been

returned or destroyed. The Clerk of the Court may return to counsel for the parties, or destroy, any sealed material at the end of the litigation, including any appeals.

## MISCELLANEOUS PROVISIONS

30.    Rory Radding does have factual information that will be discoverable during the case. He may act as trial counsel for plaintiff but will not use his status as trial counsel as a basis to object to or prevent a fact deposition.

31.    Rory Radding will not be permitted to use his status as trial counsel as a basis to object to providing testimony at trial.

32.    Nothing in this Order shall be deemed a waiver of any party's rights, if any, to oppose production of any information or documents, for example, because of lack of timeliness, relevance or materiality, because the party asserts an obligation not to disclose information received from third parties, and/or because privileged or work product information is sought.

33.    Prompt written notice shall be given to any party who produced CONFIDENTIAL or HIGHLY CONFIDENTIAL material hereunder, in the event that party's CONFIDENTIAL or HIGHLY CONFIDENTIAL material is sought by any person not a party to this litigation, by subpoena in another action, or by service with any legal process. Any person seeking such CONFIDENTIAL or HIGHLY CONFIDENTIAL material who takes action to enforce such subpoena or other legal process shall be apprised of this Order. Nothing herein shall be construed as requiring anyone covered by this Order to contest a subpoena or other process, to appeal any order requiring productions of CONFIDENTIAL or HIGHLY CONFIDENTIAL material covered by this Order, or to subject itself to penalties for noncompliance with any legal process or order.

34.    This Order may be changed only by the written agreement of the parties or further order of the Court, and is without prejudice to the rights of a party to seek relief from or variation of any of its provisions.

35.    Subject to Paragraphs 33 and 34 above, the remaining provisions of this Order, including the obligations to maintain confidentiality embodied herein, shall survive the termination of this Action and continue in full force and effect.

36.    Nothing in this Order shall bar or otherwise restrict counsel from rendering advice to his or her client with respect to the above-captioned case (including all appeals) and, in the course thereof, relying in a general way upon his or her examination of CONFIDENTIAL or HIGHLY CONFIDENTIAL material produced or exchanged in this Action; provided, however, that in rendering such advice and in otherwise communicating with his or her client, the attorney shall not disclose the contents of CONFIDENTIAL or HIGHLY CONFIDENTIAL material produced by any other party or non-party.

TECHNOLOGY LICENSING
CORPORATION,
By its attorneys,

RATIONAL COOKING SYSTEMS, INC.
By its attorneys,

_____

_____

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

RICHARDS LAYTON & FINGER, P.A.

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
klouden@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
  Attorneys for Technology Licensing
  Corporation

Frederick L. Cottrell III (#2555)
Cottrell@rlf.com
Gregory E. Stuhlman (#4765)
Stuhlman@rlf.com
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7509
  Attorneys for Rational Cooking Systems,
  Inc.

OF COUNSEL:

OF COUNSEL:

Rory J. Radding
James E. Hough
Colette A. Reiner
MORRISON& FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050
(212) 468-8000

Edgar H. Haug
Porter F. Fleming
Jonathan R. Wise
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York 10151
(212) 588-0800

UNITED STATES DISTRICT JUDGE

DATED:    March ____, 2007

_____

Hon. Joseph J. Farnan, Jr.

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ *[print or type full name]*, of

_____ _____*[print or type full address]*, declare

under penalty of perjury that I have read in its entirety and understand the Stipulated

Protective Order that was issued by the United States District Court for the District of

Delaware on _____ *[date]* in the case of *Technology Licensing Corporation, a*

*Florida corporation v. Rational Cooking Systems, Inc., a Delaware corporation*, C.A.

No. 06-515(JJF). I agree to comply with and to be bound by all the terms of this

Stipulated Protective Order and I understand and acknowledge that failure to so comply

could expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject to

this Stipulated Protective Order to any person or entity except in strict compliance with

the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for

the District of Delaware for the purpose of enforcing the terms of this Stipulated

Protective Order, even if such enforcement proceedings occur after termination of this

Action. I hereby appoint Jack B. Blumenfeld, Esq. of Morris, Nichols, Arsht & Tunnell

LLP, 1201 N. Market Street, P.O. Box 1347, Wilmington, DE 19801, telephone number

(302) 658-9200 or Frederick L. Cottrell, Esq. of Richards, Layton & Finger, P.A., One

Rodney Square, P.O. Box 551, Wilmington, DE 19899, telephone number (302) 651-

7509 as my Delaware agent for service of process in connection with this Action or any

proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
                        [printed name]

Signature: _____
                      [signature]

**EXHIBIT B**

**UNDERTAKING REGARDING CONFIDENTIAL INFORMATION**

I, _____ *[print or type full name]*, of

_____ _____*[print or type full address]*, declare

under penalty of perjury that I have read in its entirety and understand the Stipulated

Protective Order that was issued by the United States District Court for the District of

Delaware on _____ *[date]* in the case of *Technology Licensing Corporation, a*

*Florida corporation v. Rational Cooking Systems, Inc., a Delaware corporation,* C.A.

No. 06-515(JJF). I agree to comply with and to be bound by all the terms of this

Stipulated Protective Order and I understand and acknowledge that failure to so comply

could expose me to sanctions and punishment in the nature of contempt. I solemnly

promise that I will not disclose in any manner any information or item that is subject to

this Stipulated Protective Order to any person or entity except in strict compliance with

the provisions of this Order.

I further solemnly promise that the Confidential information I receive will be used

only for the sole and limited purpose of participating in case strategy and settlement in

only this Action.

I further agree to submit to the jurisdiction of the United States District Court for

the District of Delaware for the purpose of enforcing the terms of this Stipulated

Protective Order, even if such enforcement proceedings occur after termination of this

Action. I hereby appoint Jack B. Blumenfeld, Esq. of Morris, Nichols, Arsht & Tunnell

LLP, 1201 N. Market Street, P.O. Box 1347, Wilmington, DE 19801, telephone number

(302) 658-9200 or Frederick L. Cottrell, Esq. of Richards, Layton & Finger, P.A., One

Rodney Square, P.O. Box 551, Wilmington, DE 19899, telephone number (302) 651-7509 as my Delaware agent for service of process in connection with this Action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
[printed name]

Signature: _____
[signature]