IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TECHNOLOGY LICENSING CORPORATION, a Florida corporation, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 06-515 (JJF) |
| v. | ) ) | |
| RATIONAL COOKING SYSTEMS, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR ENTRY OF A PROTECTIVE ORDER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
klouden@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiff*

OF COUNSEL:
Rory J. Radding
James E. Hough
Colette A. Reiner
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY  10104-0050
(212) 468-8000

Mario G. Ceste
The Law Offices Of Mario G. Ceste, LLC
P.O. Box 82
Wallingford, CT  06492
(203) 678-6418

February 28, 2007

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                    ii

INTRODUCTION                                                                           1

SUMMARY OF UNDISPUTED FACTS                                                            2

ARGUMENT                                                                               4

I.    RATIONAL HAS PRESENTED NO EVIDENCE THAT RORY
      RADDING IS A NECESSARY WITNESS.                                                  4

II.   RATIONAL HAS PRESENTED NO BASIS TO WITHHOLD
      CONFIDENTIAL INFORMATION FROM CESTE.                                             6

      A.    The FAST Website Announcement                                             7

      B.    The McDonald's Patent Applications                                        8

      C.    The 2005 Patent Application, "Diagnostic Data
            Interchange"                                                              9

      D.    Other Patents Currently Being Prosecuted By Ceste At The
            PTO                                                                       10

III.  RATIONAL HAS NOT ESTABLISHED THAT CESTE IS A
      NECESSARY WITNESS                                                               11

      A.    Fed. R. Evid. 615 Does Not Require Barring Ceste From
            All Confidential Information.                                             12

      B.    TLC Will Agree To Offer Ceste For A Deposition Even
            Though Rational Has Not Met Its Burden To Show He Is A
            Necessary Witness                                                         12

IV.   IN RESPONSE TO RATIONAL'S POSITION IN ITS
      OPPOSITION, TLC PROPOSES A SINGLE-TIERED
      PROTECTIVE ORDER                                                                12

V.    RATIONAL'S DISCOVERY TACTICS ARE UNDULY
      BURDENSOME                                                                      14

CONCLUSION                                                                            15

ii.

## TABLE OF CITATIONS

Page(s)

### CASES

*Allergan Inc. v. Pharmacia Corp.*,
   C.A. No. 01-141-SLR, 2002 U.S. Dist. LEXIS 19811 (D. Del. May 17, 2003)     6

*Avery Dennison Corp. v. Minnesota Mining & Mfg.*,
   2001 U.S. Dist. LEXIS 22315 (D. Del. Oct. 26, 2001)     12

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
   219 U.S.P.Q. (BNA) 37 (D. Del. May 17, 1982)     12

*Freeman v. Chi. Musical Instrument Co.*,
   689 F.2d 715 (7th Cir. 1982)     5

*Johnson Dev. Group, Inc. v. Carpenters Local Union No. 1578*,
   130 F.R.D 348 (D.N.J. 1990)     5

*Motorola, Inc. v. Interdigital Tech. Corp.*,
   1994 U.S. Dist. LEXIS 20714 (D. Del. Dec. 19, 1994)     12

*Smith v. United States*,
   193 F.R.D. 201 (D. Del. 2000)     6

### STATUTES AND OTHER AUTHORITIES

Fed. R. Evid. 615     13

## INTRODUCTION

Defendant Rational Cooking Systems, Inc. ("Rational") confuses in its Opposition two distinct questions raised by Technology Licensing Corporation's ("TLC") Motion for Entry of a Protective Order (the "Motion"): (1) under what circumstances opposing trial counsel can be required to submit to deposition or trial testimony as a necessary witness; and (2) under what circumstances opposing counsel can be considered a competitor whom a party can prohibit from seeing confidential information. Rational then includes reams of irrelevant documents with its Opposition in an attempt to make these simple issues appear complex.

TLC's Motion seeks entry of a protective order that expressly permits all counsel of record to have access to confidential materials, and puts reasonable limits on the subpoenas Rational has served on TLC's counsel. Rational's Opposition fails to show that such an order should not be entered, for the following reasons:

- o Radding's actions as outside counsel for TLC and FAST do not provide any basis to subject him to a deposition or call him as a trial witness.

- o Ceste has no current involvement with competitive decision making in the food technology industry, and should be allowed to review confidential information. Although Rational has not met the required standard to compel Ceste's deposition, as a compromise, TLC has agreed to make Ceste available for deposition to testify regarding matters about which he has personal knowledge due to his previous employment at FAST.

- o The subpoenas to TLC's counsel are unduly burdensome and should be limited to documents created or received at least prior to April 2006.

.

<u>SUMMARY OF UNDISPUTED FACTS</u>

The relevant facts are straightforward, and have not been contradicted by

Rational's Opposition.

<u>Rory Radding:</u>

- o Radding represented TLC and FAST in previous litigation and licensing negotiations involving the patent-in-suit, U.S. Patent No. 4,920,948 (the "'948 Patent") and attended an Opposition proceeding in Germany involving the European counterpart application.[1]

- o Radding's prior law firm, Pennie and Edmonds, ceased the practice of law on December 31, 2003, and FAST's work transferred with Radding to Jones Day.[2]

- o Radding's legal relationship with FAST and TLC ended in October 2004, when FAST transferred all work from Jones Day to Edwards & Angell.[3]

- o Radding joined Morrison & Foerster LLP on November 1, 2004 as a partner. In April 2006, FAST and TLC retained Morrison & Foerster LLP for the purpose of representing them in this action.[4]

Rational has claimed that Radding is likely to be a necessary trial witness

based on these facts, and seeks his deposition.

<u>Mario Ceste:</u>

- o Ceste was an employee of FAST from 1979 until 1988, and again from 1996 until 2004, where he held a variety of technical and managerial roles.[5]   Ceste is a named inventor on several patents and patent

---

[1]    *See* Declaration of Rory J. Radding in Support of TLC's Motion for Entry of Protective Order, D.I. 42, dated February 6, 2007 ("Radding Decl.") ¶¶4, 5, 6.

[2]    *See* Radding Decl. ¶¶2, 8.

[3]    *See* Radding Decl. ¶9.

[4]    *See* Radding Decl. ¶10.

[5]    *See* Declaration of Mario G. Ceste in Support of TLC's Motion for Entry of Protective Order, D.I. 43, dated February 5, 2007 ("Ceste Decl.") ¶¶2, 3, 7; *see also* Supplemental Declaration of Mario G. Ceste in Support of TLC's Motion for Entry of Protective Order, dated February 28, 2007 ("Suppl. Ceste Decl.") ¶3.

applications for work he did during his tenure as a FAST employee.[6] Rational submitted some of these patents and patent applications in its Opposition to the present motion.

o   In 1999, while employed by FAST, Ceste became a member of the Patent Bar. Later, while he was still employed by FAST, Ceste went to law school, and became a member of the Connecticut bar in 2001.[7]

o   Ceste resigned in 2004 from his position at FAST. At that time he was working for SCK, Inc., an independent company that began as a business unit of FAST.[8]

o   From November 2004 until April 2005, Ceste had no professional relationship with FAST, or any related company, in any legal, business, or technical capacity.[9]

o   In April 2005, FAST retained Ceste to assist outside trial counsel in litigation against Turbochef Technologies. Inc. regarding the '948 Patent, and after that case, to assist in the preparation for and litigation regarding the '948 Patent. [10]

o   Since 2001, Ceste has represented a variety of clients on a variety of issues, including patent prosecution, trademark, licensing, and litigation. None of Ceste's other clients are in the food service industry.[11]

Based on these facts, Rational objects to Ceste's receipt of Rational's confidential information and also contends that Ceste is a necessary trial witness. Ceste, in fact, is not involved in any competitive decision making and should be permitted to review confidential information.

---

[6]       *See* Suppl. Ceste Decl. ¶5.

[7]       *See* Ceste Decl. ¶4.

[8]       *See* Suppl. Ceste Decl. ¶3.

[9]       *See* Suppl. Ceste Decl. ¶4.

[10]      *See* Ceste Decl. ¶¶7-10.

[11]      *See* Suppl. Ceste Decl. ¶13.

4.

TLC also disagrees that Ceste is a necessary trial witness, but, as noted above, will make Ceste available for a deposition notwithstanding that, as counsel of record, Ceste should not be required to be deposed.[12]

## ARGUMENT

I.    RATIONAL HAS PRESENTED NO EVIDENCE THAT RORY RADDING IS A NECESSARY WITNESS.

In an about face,[13] Rational now concedes that there is no basis to withhold confidential information from Radding.[14]   Rational asserts, however, that Radding will be a necessary fact witness, even though it offers no evidence that Radding is the sole witness to any relevant event.   In fact, Radding's relationship with FAST and TLC is commonplace among litigation counsel:   he drafted letters, attended settlement meetings, participated in prior litigations and investigated his clients' claims prior to filing the complaint herein.   If this conduct suffices to require Radding to submit to a deposition, all trial counsel who represent clients over a prolonged period of time, and/or successive litigations against different infringers of the same patent, would be subjected to having their depositions taken.

---

[12]    During the meet and confer process preceding TLC's filing of this motion, TLC offered to make Ceste available for a deposition on the limited scope of the nature of his current relationship with FAST and TLC, in essence on the issue of confidentiality.   Rational refused this offer. (*See* Radding Decl. ¶17.)   As TLC believes the issue of confidentiality is resolved by this Motion, TLC now offers Ceste's deposition testimony about matters of which he has personal knowledge as a result of his prior employment at FAST.

[13]    *See* Rational's Responses to TLC's First Set of Interrogatories, p. 13 at Radding Decl. ¶17, Exh. D.

[14]    *See* D.I. 46, at 23; *Id.* Exhibit 1 (Rational's Proposed Protective Order), ¶¶ 13(a) and 16(a).

5.

Rational provides no legal support for its assertion that it should be permitted to depose Radding – and there is none.  As noted in TLC's Opening Brief, depositions of trial counsel are disfavored.  *See, e.g.*, *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982) (The availability to depose counsel "should be viewed with extreme caution for [it] can be misused as techniques of harassment."); *Johnson Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D 348, 353 (D.N.J. 1990) ("[T]he prospect of oppression is ever present in the examination of adverse counsel.").[15]

Rational does not dispute that, under controlling law, "depositions of [opposing] trial counsel are limited to those circumstances where 'the party seeking to take the deposition has shown that (1) *no other means exist to obtain the information than to depose opposing counsel*; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.'"  *Allergan Inc. v. Pharmacia Corp.*, C.A. No. 01-141-SLR, 2002 U.S. Dist. LEXIS 19811, *3 (D. Del. May 17, 2003) (emphasis added) (quoting *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (denying motion to depose opposing counsel because the *Shelton* test was not met); *see also Smith v. United States*, 193 F.R.D. 201, 215 (D. Del. 2000) (same).

Rational has not even tried to demonstrate that it cannot obtain "relevant" and "nonprivileged" information that is "crucial" to the preparation of its case by means other than taking Radding's deposition.  Instead, Rational's thin list of vague grounds for taking Radding's deposition includes his correspondence with opposing counsel, and his

---

[15]    *See also* Opening Brief, D.I. 41,  at 10 n.6.

6.

involvement in prior litigation and foreign opposition proceedings.[16]  This list does not include any information that cannot be obtained from other sources, such as depositions of other people, documents requested and soon to be produced, and Rational's own records.[17]

Rational has offered to forgo a motion to disqualify Radding if he waives his right to object to his deposition and trial testimony on the basis of his status of trial counsel (D.I. 46, at 4-5), but this offer provides no compromise at all.  It simply reflects Rational's failure to acknowledge its burden to show that Radding is a necessary witness *before* Radding may be forced to testify, whether at deposition or trial.  There is no evidence that Radding is a necessary witness, and Rational has no basis to move for his disqualification; thus offering to forgo such a motion is not a compromise.

Should Rational develop a record sufficient to show that Radding is a necessary witness, Rational may seek Radding's deposition.  Until such time, however, Radding should be treated no differently than any other trial counsel.

II.    RATIONAL HAS PRESENTED NO BASIS TO WITHHOLD CONFIDENTIAL INFORMATION FROM CESTE.

Rational contends that Ceste is a "competitor in the food industry," and, on this basis, objects to allowing him access to confidential information.  Rational's objection to Ceste is apparently based on hundreds of pages of irrelevant documents

---

[16]    *See* D.I. 46, at 9-10.

[17]    Among the information as to which Rational claims it must depose Radding is information on meetings and correspondence with Rational AG and its counsel. (*See* D.I. 46, at 19-20.)  It is difficult to imagine why Radding must be deposed to gather information that is in the possession of both Rational and TLC.

submitted with its Opposition, none of which provides a basis to conclude that Ceste is involved in competitive decision making. Rational's concerns about these irrelevant documents would have been easily explained had Rational taken a limited deposition of Ceste on the confidentiality issue only (as TLC offered over a month ago), instead of burdening the Court. These documents are addressed below.

A.    The FAST Website Announcement

Rational includes a printout of a FAST website, which appears to be a historical version of FAST's website posted prior to December 2004, while Ceste was still an employee of FAST. Rational's counsel could not have uncovered the page it submitted to the Court from the present FAST website because there is no active link to this page from the current FAST website. Rather, the attached page was likely obtained from an Internet search using a search engine, which searches saved websites, frozen in time. The current FAST website does not list Ceste as part of FAST's current executive team.[18]

As stated in his declaration, Ceste is no longer a FAST employee, nor an employee of any related company, and he has not been since November 2004.[19] Rational's Opposition states "Mr. Ceste never mentions his employment as President and COO as stated on the FAST webpage." (D.I. 46 at 8.) This is wrong. Ceste stated in his declaration, "From approximately 2002 until November 2004, I ran a separate business unit of FAST, SCK, Inc., a networking communications company that was also founded

---

[18]    Supplemental Declaration of Rory J. Radding in Support of TLC's Motion for Entry of Protective Order, dated February 28, 2007 ("Suppl. Radding Decl.") ¶5, Exh. B.

[19]    *See* Suppl. Ceste Decl. ¶4.

by Bernard Koether."[20]  That statement is entirely consistent with the historical webpage attached to Rational's Opposition.

### B.    The McDonald's Patent Applications

Ceste is one of numerous named inventors on a patent, attached to the Declaration of Porter F. Fleming, Esq. in Support of Defendant Rational Cooking Systems, Inc.'s Answering Brief in Opposition to TLC's Motion for Entry of a Protective Order, dated February 21, 2007 (the "Fleming Declaration"), as Exhibit F, relating to the work FAST did for McDonald's Corporation ("McDonald's"), along with approximately ten other vendors.  The patent is assigned to Restaurant Technology, Inc. of Oakbrook, Illinois, which is the patent holding company of McDonald's.  The eight patent applications attached to the Fleming Declaration as Exhibits H through O are all related applications to this issued patent. [21]

While Ceste was a FAST employee, FAST contracted with McDonald's to supply control and application software expertise for a frying system that McDonald's was developing.  Under the contract, McDonald's would retain any intellectual property stemming from products FAST developed for McDonald's during the contract term.  This patent and the related applications developed from this work. [22]

Ceste has had no involvement with the prosecution of these applications.[23]  Moreover, the inventions claimed in every one of these patents are related to fryer

---

[20]    *See* Ceste Decl. ¶6.

[21]    *See* Suppl. Ceste Decl. ¶7.

[22]    *See* Suppl. Ceste Decl. ¶¶6-7.

[23]    *See* Suppl. Ceste Decl. ¶8.

technology (*e.g.*, frying french fries), which was developed by McDonald's and for which FAST supplied control and application software expertise.[24]  The technology at issue in the present suit relates to ovens not fryers.  Thus, these patent applications do not establish that Ceste is a competitor of Rational.

> ### C.   The 2005 Patent Application, "Diagnostic Data Interchange"

This application is a recent continuation application of a patent filed in May 1996 while Ceste was a FAST employee.[25]  Ceste has had no involvement with the parent application since he left the employ of FAST in 2004.  Nor does he have any involvement with the filing or prosecution of the continuation application.[26] Furthermore, this application pertains to networking technology and is not relevant to ovens.  The pending application is directed to a data communication network and centralized software applications for managing and operating a restaurant.  The application is <u>not</u> directed toward appliances (such as ovens) or appliance controllers as it relates to operating an appliance or the control of the appliance during the preparation of food.[27]  The technology at issue in this case – a controller for an oven – is not implicated by the pending application.

---

[24]     *See* Suppl. Ceste Decl. ¶¶6, 9.

[25]     *See* Suppl. Ceste Decl. ¶10.

[26]     *See* Suppl. Ceste Decl. ¶11.

[27]     *See* Suppl. Ceste Decl. ¶¶12.

D.    Other Patents Currently Being Prosecuted By Ceste
      At The PTO

Ceste is a practicing attorney and a member of the patent bar. He has other clients in addition to FAST and TLC. None of Ceste's other clients are in the food industry, or involved in oven technology. For example, Ceste has recently filed a patent application for a component for a motorcycle, a home-theater system, and the payload system for a commercial rocket.[28]

None of those applications, nor any of the others Rational cites, establish that Ceste is a competitor who properly could be prohibited from viewing Rational's confidential information. Moreover, Rational's Opposition demonstrates its real purpose in opposing Ceste's ability to have access to confidential information. Rational states that it would agree to permit Bernard Koether, an admitted competitor, to review confidential information,[29] if he agrees to sign an undertaking stating that he will abide by the terms of the protective order and will refrain from using the information for anything but the present action. But Rational will not agree to allow Ceste, an outside attorney, to have access to confidential and highly confidential documents. Thus, Rational's position is that Bernard Koether, the founder of FAST and TLC, and a leader in the area of oven controls for over 40 years, is less of a competitor than Ceste. Rational plainly is not concerned about a competitive threat; instead, it is attempting to deprive TLC of its choice of counsel. Ceste has a unique mix of knowledge of the food industry,

---

[28]    *See* Suppl. Ceste Decl. ¶13.

[29]    Rational does not propose that Bernard Koether will be allowed to review highly confidential information.

technical sophistication, and knowledge of patent law that will be highly beneficial to TLC in this action.

Rational has not established any basis for denying Ceste access to any confidential information. Furthermore, if the Court were to find that Ceste should agree to a patent prosecution bar in the subject area of the oven technology in suit during this litigation and for one year following its conclusion, as this Court ordered in *Motorola, Inc. v. Interdigital Tech. Corp.*, 1994 U.S. Dist. LEXIS 20714 (D.Del. Dec. 19, 1994), Ceste will agree to these terms.

III.    RATIONAL HAS NOT ESTABLISHED THAT CESTE IS
        A NECESSARY WITNESS

Rational's point in arguing that Ceste is a necessary witness is not clear. The case law establishes that whether a party is a necessary witness is not a factor to be considered in whether that party can review confidential information. *Avery Dennison Corp. v. Minnesota Mining & Mfg.*, 2001 U.S. Dist. LEXIS 22315, *6 (D. Del. Oct. 26, 2001) (citing *Eaton Corp. v. Rockwell Int'l. Corp.*, (D.Del. Mar. 13, 1998) (Tr. 14, 15, 21) for its ruling "permitting access to highly sensitive information by multiple in-house counsel, including patent attorneys that were key witnesses"); *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 219 U.S.P.Q. (BNA) 37, *3, *8 (D. Del. May 17, 1982) ("In making this determination the Court is required to exercise its sound discretion to implement the philosophy of full disclosure of relevant information during discovery, while at the same time affording the parties reasonable protection against harmful side effects.") (entering a protective order in a patent infringement case allowing in-house experts and consultants to review confidential information). Rational alludes to Fed. R. Evid. 615 in support of its argument that Ceste's potential status as a witness should have

some bearing on his ability to review confidential information.  This rule, however, deals with sequestration so that a witness cannot hear the testimony of another witness, and has nothing to do with whether he should be barred from access to confidential information.

### A.    Fed. R. Evid. 615 Does Not Require Ceste To Be Barred From All Confidential Information.

Rational states that Ceste's memory could be influenced if he reviews Rational confidential information concerning meetings with Rational at which he was present, and about which he will be called to testify.  This is a ridiculous position. Witnesses are typically shown confidential information exactly for that purpose.  There is no reason Ceste should not have access to things he already knows about.

### B.    TLC Will Agree To Offer Ceste For A Deposition Even Though Rational Has Not Met Its Burden To Show He Is A Necessary Witness

Although Ceste is entitled to be protected from the burden of being deposed just as is any other counsel of record, TLC will compromise on this point and will offer Ceste's deposition relating to relevant matters about which he has personal knowledge based on his previous employment with FAST.

### IV.    IN RESPONSE TO RATIONAL'S POSITION IN ITS OPPOSITION, TLC PROPOSES A SINGLE-TIERED PROTECTIVE ORDER

On February 19, 2007, after TLC filed this motion and on the eve of the deadline for Rational's opposition, counsel for Rational offered to allow Bernard Koether to receive summaries of confidential information.[30]  This offer, however, was conditioned

---

[30]    Surprisingly, Rational complains that there has not been a "proper meet and confer" on the issue of providing Bernard Koether with summaries of confidential
(continued . . .)

on TLC agreeing to permit one representative of Rational and one representative of Rational AG to receive summaries of TLC's confidential information.  TLC stated it would consider this proposal.[31]  Rational now puts a new and different proposal in its Opposition, namely that Bernard Koether should be allowed access to <u>all</u> confidential information (but not highly confidential information), as long as one Rational representative is permitted the same access.

TLC cannot agree to either of Rational's proposals, because both presumably would permit a Rational representative to review TLC's confidential information in its original produced form.  This is not acceptable to TLC.

To resolve this issue, TLC proposes to prohibit any party representative or designee on either side from having access to confidential information.  The revised proposed protective order attached hereto as Exhibit 1 is a single-tiered protective order where everything designated "Confidential" is available only to counsel of record, approved experts, and other non-party litigation participants such as court reporters who have signed an undertaking.

---

(. . . continued)
    information.  In fact, a "meet and confer" call was scheduled for January 24, 2007, but counsel for Rational refused to participate in the conference call and refused to reschedule the call.  (*See* Radding Decl. ¶19, Exh. F.)  In any event, since TLC has withdrawn its request for a provision that would permit a party designee to review confidential information, this issue is moot.

[31]    *See* Suppl. Radding Decl. ¶3, Exh. A.

V.     RATIONAL'S DISCOVERY TACTICS WAS UNDULY
       BURDENSOME

Rational complains about a delay in document production from TLC, Mario Ceste, Rory Radding, Morrison & Foerster, FAST, George Koether, and Ben Koether.  The sheer number of duplicative subpoenas served by Rational, however, has created the delay about which it complains.   Rational has chosen to subpoena trial counsel, creating a large burden by requiring that counsel log all privileged documents in its possession, custody and control.  In any event, TLC's counsel has diligently reviewed thousands of documents in response to these subpoenas.   On February 8, 2007, documents were produced to Rational in response to the subpoena to Mario Ceste.   On February 27, 2007, non-privileged and responsive documents were produced to Rational in response to the subpoena to Morrison & Foerster LLP, and privilege logs for the subpoenas to Mario Ceste and Rory Radding were served on Rational's counsel.[32]

Moreover, Rational's six subpoenas were premature and unnecessary.  As stated in TLC's opening brief, TLC would have produced all of the documents in the custody and control of FAST, George Koether, and Bernard Koether in response to document requests to TLC.  Instead of attempting to meet and confer with TLC on this issue, Rational apparently decided to treat all of the third parties as separate and distinct from TLC and from each other.  By serving the subpoenas before TLC could respond to Rational's discovery demands, Rational will not get any more information than it would have received through negotiations with TLC's counsel, but the subpoenas have caused

---

[32]   These productions are in addition to the documents TLC produced on February 23, 2007 in response to the document requests to TLC and the documents FAST produced on February 23, 2007 in response to the subpoena to FAST.  To date, Rational has not produced any documents to TLC.

significantly more unnecessary burden and expense to TLC and its counsel.[33]  For this reason, TLC asks that the Court limit the subpoenas to counsel to documents created before the date Morrison & Foerster LLP, Radding, and Ceste were retained for this matter, at least as of April 2006.  The limit will not deprive Rational of any documents, but only will relieve counsel for TLC of the burden of logging hundreds or thousands of privileged documents relating, for example, to preparations in bringing this lawsuit, which would substantially increase the cost of discovery to TLC.

## CONCLUSION

Since the inception of this case, counsel for Rational has litigated so as to delay and increase cost to TLC.  Rational should not be permitted to delay any longer and should be required to produce confidential information.  TLC respectfully requests that the Court enter a protective order permitting Ceste to act as counsel of record, providing TLC's counsel of record access to all confidential information, and limiting the scope of the subpoenas on Rory Radding, Morrison & Foerster and Mario Ceste to documents generated before counsel was engaged by TLC for this litigation at least as of April of 2006.

---

[33]     Due to the subpoenas on counsel that Rational served in December 2006 and January 2007, Morrison & Foerster LLP was forced to bring in additional partners to independently represent the subpoenaed counsel individually – Mr. Ceste by William Kuhne and Mr. Radding and Morrison & Foerster LLP by James Bergin. Neither Mr. Kuhne nor Mr. Bergin has any other involvement in this case.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs Louden*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
klouden@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
  *Attorneys for Plaintiff*

OF COUNSEL:

Rory J. Radding
James E. Hough
Colette A. Reiner
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY  10104-0050
(212) 468-8000

Mario G. Ceste
The Law Offices Of Mario G. Ceste, LLC
P.O. Box 82
Wallingford, CT  06492
(203) 678-6418

February 28, 2007

753588.1

## CERTIFICATE OF SERVICE

I, Karen Jacobs Louden, hereby certify that February 28, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Frederick L. Cottrell, III
Richards, Layton & Finger

I also certify that copies were caused to be served on February 28, 2007 upon the following in the manner indicated:

### BY HAND

Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Edgar H. Haug
Porter F. Fleming
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151

*/s/  Karen Jacobs Louden*
Karen Jacobs Louden (#2881)

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TECHNOLOGY LICENSING CORPORATION, ) a Florida corporation, ) ) Plaintiff, ) ) v. ) ) RATIONAL COOKING SYSTEMS, INC., ) a Delaware corporation, ) ) Defendant. ) | C.A. No. 06-515(JJF) |

## [PROPOSED] PROTECTIVE ORDER REGARDING CONFIDENTIALITY OF DISCOVERY MATERIAL

Whereas discovery in the above-captioned action (the "Action") may involve the disclosure of certain documents, things and information in the possession, custody, or control of plaintiff Technology Licensing Corporation ("TLC") and defendant Rational Cooking Systems, Inc. ("Rational") that constitute or contain trade secrets or other confidential research, development, or commercial information with the meaning of Rule 26(c)(7) of the Federal Rules of Civil Procedure. Accordingly, it is hereby ORDERED:

## SCOPE

1.     This Order shall apply to all information and things exchanged by any party, regardless of the medium or manner generated, stored or maintained, including, but not limited to, all documents and things produced in the course of discovery, all answers to interrogatories, all answers to requests for admission, all responses to requests for production of documents and things, and all deposition testimony and deposition exhibits, and any other papers or electronically stored information produced, filed, generated or served by a party in this litigation ("Discovery Material").

## **DESIGNATION**

2.      Any Producing Party may designate Discovery Material as "CONFIDENTIAL" in accordance with this Order. The burden of establishing that Discovery Material is CONFIDENTIAL as defined herein shall be on the Producing Party.  The designation of any Discovery Material as CONFIDENTIAL shall be deemed effective unless and until the Court orders otherwise or the Producing Party withdraws the designation.

3.      Discovery Material falling into one or more of the following categories may be designated as CONFIDENTIAL: (i) sensitive technical information that is not publicly available and that is not expressly contained in public information; and (ii) sensitive business or financial information that is not publicly available and that is not expressly contained in public information.

4.      The Producing Party may designate documents or other Discovery Material as CONFIDENTIAL by placing either of the following legends or similar legends on the document or thing: CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER. In the event that CONFIDENTIAL material is produced for inspection at a party's facility, such CONFIDENTIAL material may be produced for inspection before being marked confidential. Once specific CONFIDENTIAL material has been designated for copying, any CONFIDENTIAL material will then be marked confidential after copying but before delivery to the Receiving Party. There will be no waiver of confidentiality by the inspection of CONFIDENTIAL material before it is copied and marked confidential pursuant to this Order.

5.      Any party or non-party may designate discovery requests or responses (and the information contained therein) as CONFIDENTIAL by placing the following legend or a similar legend on the face of any such document:

> "Contains CONFIDENTIAL information. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose CONFIDENTIAL information is included."

In the case of discovery requests or responses, a statement may also be included within the document specifying the portion(s) thereof designated as CONFIDENTIAL.

6.      Any party or non-party may designate depositions and other testimony (including exhibits) as CONFIDENTIAL by stating on the record at the time the testimony is given that the entire testimony or portions thereof shall be designated as CONFIDENTIAL, or designate as such within five (5) business days after receipt of the transcript. If no such designation is made on the record at the time of the testimony, the testimony will be treated as CONFIDENTIAL up until the five (5) day period for designation has expired. The following legend or a similar legend shall be placed on the front of any deposition transcript (and, if videotaped, any copies of the videotape) containing CONFIDENTIAL information:

> "Contains CONFIDENTIAL information. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose CONFIDENTIAL information is included."

7.      Subject to any overriding rules imposed by the Court in this Action, all CONFIDENTIAL material, or any excerpt, reproduction or paraphrase thereof, filed with the Court shall be filed in a sealed envelope or other appropriate sealed container on which the following shall be endorsed: (i) the caption of this Action; (ii) the words "CONFIDENTIAL – Restricted Access According to Court Order" as an indication of the nature of the content; and (iii) a statement in substantially the following form:

"This envelope, containing documents which are filed in this case by (name of party), is not to be opened or the contents thereof to be displayed or revealed except by Order of Court or consent of the parties."

The Clerk of Court is directed to maintain under seal all material filed in this Action which has been marked or designated, in whole or in part, as CONFIDENTIAL and filed in accordance with this Paragraph. The sealed material shall not be opened or released from the custody of the Clerk of Court except by order of the Court and except that outside counsel of record for any party may have access thereto by request to the Clerk of Court at any time during Court hours.

8.    Designation in conformity to this Order for information produced in electronic form or in any form other than documentary, and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the media (*e.g.*, diskette, CD-ROM or DVD), container or containers in which the information or item is stored the legend "CONFIDENTIAL." If only portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portions.

## **USE**

9.    Any and all material designated as CONFIDENTIAL under this Order shall not be used or disclosed by the parties or counsel for the parties or any persons identified in Paragraphs 11-14 below for any purposes whatsoever other than preparing for and conducting this Action (including appeals).

10.    Except as provided in Paragraphs 13-14 below, counsel for the parties shall keep all material designated as CONFIDENTIAL and received under this Order secure within their exclusive possession and shall take reasonable efforts to place such documents in a secure area.

11.    All copies, duplicates, extracts, summaries, or descriptions (hereinafter referred to collectively as "copies") of material designated as CONFIDENTIAL under this Order or any

portion thereof, shall be immediately affixed with the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" if those words do not already appear.

## DISCLOSURE OF CONFIDENTIAL MATERIALS

12.    Unless otherwise directed by the Court or authorized in writing by the Producing Party, Discovery Material designated as CONFIDENTIAL may be disclosed by the Receiving Party only to the following persons:

a.    any outside attorney of record in this Action (including attorneys employed by firms of record but not otherwise identified specifically on pleadings);

b.    support personnel for attorneys listed in sub-paragraph (a) above, including law clerks, analysts, paralegals, secretaries, and clerical staff employed by any attorney identified in sub-paragraph (a) and assisting in connection with this Action;

c.    any outside expert or consultant who is expressly retained by any attorney described in sub-paragraph (a) to assist in the preparation of this Action for trial, with disclosure only to the extent necessary to perform such work and subject to the requirements of Paragraphs 13-14 below;

d.    any interpreter, or court or other shorthand reporter, videographer or typist translating, recording or transcribing testimony;

e.    service contractors (such as document copy services), jury consultants and graphic artists;

f.    any person who authored and/or was an identified original recipient of the particular CONFIDENTIAL material sought to be disclosed to that person, or any deponent when the examining attorney has a good faith basis to believe the deponent is aware of the particular CONFIDENTIAL material sought to be disclosed;

g.      personnel of the Court and all appropriate courts of appellate jurisdiction;

and

h.      any other person agreed to by the Producing Party in writing.

## DISCLOSURE OF CONFIDENTIAL MATERIAL TO AN INDEPENDENT EXPERT

13.      Before any disclosure of material designated as CONFIDENTIAL under this Order is made to an expert pursuant to Paragraph 12 (c) by the Receiving Party, outside counsel for the Receiving Party shall:  provide the expert with a copy of this Order; explain its terms; and obtain the expert's written agreement, in the form of Exhibit A hereto, to comply with and be bound by its terms.

14.      No CONFIDENTIAL material shall be shown to an expert pursuant to Paragraph 12 (c) until five (5) business days after said expert is identified in writing, and a current biographical sketch and a written commitment in the form of Exhibit A is provided, to the Producing Party. The biographical sketch shall include a curriculum vitae or equivalent resume setting forth such person's present residence and business address(es), current employer and job title, any company or companies by which that individual was employed during the past ten (10) years, and a list of all consulting agreements or arrangements that said individual may have entered into during the past ten (10) years that involved or related to ovens and oven controls. The list should disclose the name and address of each such entity for which consulting work is being, or has been, performed, and the general subject matter of that consulting work. If disclosure of either the identity of the entity for which the work is being performed or the subject matter of that work, or both, is deemed proprietary by the Receiving Party, then the fact that certain information is being withheld on the basis that it is proprietary shall be disclosed by the Receiving Party, and any such information that is not deemed proprietary shall be disclosed. In the event that said individual enters into any subsequent consulting agreements or arrangements,

the Receiving Party shall promptly notify the Producing Party of such agreements or arrangements. A party's consent to permitting disclosure of its confidential information by a retained expert of the other party shall not be unreasonably withheld. If a party objects, within five (5) business days of receipt of written notice, biographical sketch and written commitment, to such expert having access to any CONFIDENTIAL material, the expert shall be barred from such access for a twenty (20) calendar day period running from the date the expert was identified in writing to the Producing Party (together with the expert's biographical sketch and written commitment). If within that twenty (20) calendar day period (1) the parties are unable to resolve their differences and (2) the opposing party moves for a further protective order, then the CONFIDENTIAL material shall not be provided to said expert until the Court rules on the motion for further protective order.

## INADVERTENT PRODUCTION/DESIGNATION

15.     The inadvertent production of documents subject to the attorney-client privilege or the attorney work-product doctrine will not waive the attorney-client privilege or the attorney work-product doctrine. In addition, the fact that a document was inadvertently produced shall not be used in any manner as evidence in support of any such alleged waiver.

a.     Immediately upon receiving notice from the Producing Party that documents or materials subject to the attorney-client privilege or work-product immunity have been inadvertently produced, the Receiving Party shall not review, copy, or otherwise disseminate the documents or materials, nor shall it disclose their substance.  In addition, the Receiving Party shall return the documents or materials and all copies within five (5) days from receiving notice.

7

b.      If the Receiving Party believes it has a good-faith basis for challenging the privilege claim, outside counsel for the Receiving Party shall provide the outside counsel for the Producing Party with a written explanation of the good-faith basis for its belief that the inadvertently produced documents or information are not privileged within fourteen (14) days after receipt of the Producing Party's request for return.

c.      Outside counsel for the Producing Party shall respond in writing to Receiving Party's outside counsel's timely challenge to the privilege or immunity claim within seven (7) days from receipt of the challenge.

d.      In the event the parties cannot agree as to the privilege or immunity status of the inadvertently produced documents or materials, the Receiving Party has fourteen (14) days from receipt of the Producing Party's written response to the privilege challenge to file a motion seeking an order compelling production of the inadvertently produced documents or information. The Receiving Party shall not use the substantive content of the inadvertently produced documents or information to challenge the privilege or immunity status of such material.  In the event that a motion is made, the Producing Party shall have the burden of proving that the produced documents or information are privileged.

e.      Within five (5) days of the Receiving Party's timely filing of a motion seeking an order compelling production of the inadvertently produced documents or information, the Producing Party shall file under seal with the Court a copy of the inadvertently produced documents or information for in camera inspection by the Court.  A copy of the cover letter forwarding the inadvertently produced documents or information for in camera inspection by the Court shall be provided to the moving party.

16.    Inadvertent disclosure of material without designating the same as CONFIDENTIAL shall not be deemed a waiver of confidentiality with regard to similar or related information, nor shall it be deemed a waiver of confidentiality with regard to the information inadvertently disclosed if promptly called to the attention of counsel for the Receiving Party who shall make every effort to retrieve the inadvertently disclosed information and prevent disclosure by each unauthorized recipient. If information designated as CONFIDENTIAL in accordance with this Order is inadvertently disclosed to a person not authorized by this Order, the party who becomes aware of the disclosure shall immediately inform the other party of all pertinent facts relating to such disclosure and shall make every effort to retrieve the inadvertently disclosed information and prevent disclosure by each unauthorized recipient. The Receiving Party shall take reasonable steps to, at the Producing Party's option, either ensure that all copies of any such Discovery Materials are returned promptly to the Producing Party or ensure that all copies of any such Discovery Materials are marked with the proper designation and distributed only as permitted under this Order.

## PARTY SEEKING GREATER PROTECTION MUST OBTAIN FURTHER ORDER

17.    No information may be withheld from discovery on the ground that the material to be disclosed requires protection greater than that afforded by this Order unless the party claiming a need for greater protection moves for an order providing such special protection pursuant to Fed. R. Civ. P. 26(c).

## CHALLENGING DESIGNATION OF CONFIDENTIALITY

18.    Any party through its counsel may assert that particular information designated by the other party as CONFIDENTIAL is in fact publicly known or is otherwise not

CONFIDENTIAL and hence should not be subject to the designated protection hereunder. Such assertion, if made, will be discussed between counsel. If agreement cannot be reached, the designation of confidentiality in dispute may be challenged upon motion and the confidentiality of the information shall be maintained unless the Court orders otherwise. The burden of proving the confidentiality of designated information remains with the party asserting such confidentiality.

19.    The restrictions placed by this Order on a Receiving Party shall not apply to any information that, in its entirety:

a.    is at the time of disclosure hereunder, or thereafter becomes, a part of the public domain through no act or omission by the Receiving Party, its counsel or its employees;

b.    is subsequently independently developed by the Receiving Party;

c.    is lawfully in the possession of a person who is not subject to an obligation to maintain it in confidence; and/or

d.    is hereafter lawfully disclosed to the Receiving Party by a third party which did not acquire the information under an obligation of confidentiality from or through the Producing Party.

## THIRD-PARTY DISCOVERY MATERIALS

20.    It is expressly contemplated and agreed that the terms of this Order are applicable to CONFIDENTIAL material submitted by a *non*-party, and/or produced by a non-party in connection with this Action, and that the parties will treat all CONFIDENTIAL material of a non-party in accordance with the terms of this Order.

## USE IN COURTROOM PROCEEDINGS

21.    Any information designated as CONFIDENTIAL hereunder and produced to another party during discovery herein, if otherwise admissible, may be offered in evidence or otherwise used at the trial of this case, by either party, subject to such further order as the Court may enter to protect such information.

## RETURN / DESTRUCTION OF MATERIALS

22.    Within sixty (60) calendar days of the conclusion of the above-captioned case (including all appeals), all material treated as CONFIDENTIAL under this Order and not received in evidence shall be returned to the Producing Party or destroyed with affidavit to such effect, except that each parties' outside counsel may maintain all papers filed with the Court, transcripts of testimony and their own memoranda containing confidential information for archival purposes. The party receiving any CONFIDENTIAL material shall certify in writing that all such material, including CONFIDENTIAL material disclosed hereunder, has been returned or destroyed. The Clerk of the Court may return to counsel for the parties, or destroy, any sealed material at the end of the litigation, including any appeals.

## MISCELLANEOUS PROVISIONS

23.    Nothing in this Order shall be deemed a waiver of any party's rights, if any, to oppose production of any information or documents, for example, because of lack of timeliness, relevance or materiality, because the party asserts an obligation not to disclose information received from third parties, and/or because privileged or work product information is sought.

24.    Prompt written notice shall be given to any party who produced CONFIDENTIAL material hereunder, in the event that party's CONFIDENTIAL material is sought by any person not a party to this litigation, by subpoena in another action, or by service

with any legal process. Any person seeking such CONFIDENTIAL material who takes action to enforce such subpoena or other legal process shall be apprised of this Order. Nothing herein shall be construed as requiring anyone covered by this Order to contest a subpoena or other process, to appeal any order requiring productions of CONFIDENTIAL material covered by this Order, or to subject itself to penalties for noncompliance with any legal process or order.

25.     This Order may be changed only by the written agreement of the parties or further order of the Court, and is without prejudice to the rights of a party to seek relief from or variation of any of its provisions.

26.     Subject to Paragraphs 24 and 25 above, the remaining provisions of this Order, including the obligations to maintain confidentiality embodied herein, shall survive the termination of this Action and continue in full force and effect.

27.     Nothing in this Order shall bar or otherwise restrict counsel from rendering advice to his or her client with respect to the above-captioned case (including all appeals) and, in the course thereof, relying in a general way upon his or her examination of CONFIDENTIAL material produced or exchanged in this Action; provided, however, that in rendering such advice and in otherwise communicating with his or her client, the attorney shall not disclose the contents of CONFIDENTIAL material produced by any other party or non-party.


        SO ORDERED this _____ day of March, 2007.



                                        _____
                                        Hon. Joseph J. Farnan, Jr.

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ *[print or type full name]*, of _____

_____ *[print or type full address]*, declare under penalty of perjury that I have read in its entirety

and understand the Protective Order that was issued by the United States District Court for the

District of Delaware on _____ *[date]* in the case of *Technology Licensing Corporation, a*

*Florida corporation v. Rational Cooking Systems, Inc., a Delaware corporation,* C.A. No. 06-

515(JJF).  I agree to comply with and to be bound by all the terms of this Protective Order and I

understand and acknowledge that failure to so comply could expose me to sanctions and

punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner

any information or item that is subject to this Protective Order to any person or entity except in

strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

District of Delaware for the purpose of enforcing the terms of this Protective Order, even if such

enforcement proceedings occur after termination of this action.  I hereby appoint Jack B.

Blumenfeld, Esq. of Morris, Nichols, Arsht & Tunnell, 1201 N. Market Street, P.O. Box 1347,

Wilmington, DE 19801, telephone number (302) 658-9200 [or Frederick L. Cottrell III, Esq. of

Richards, Layton & Finger, One Rodney Square, Wilmington, DE 19899, (302) 651-7509] as

my Delaware agent for service of process in connection with this action or any proceedings

related to enforcement of this Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
[printed name]

Signature: _____
[signature]