UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TECHNOLOGY LICENSING CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06-515-JJF |
| v. | : | |
| | : | |
| RATIONAL COOKING SYSTEMS, INC., | : | |
| | : | |
| Defendant. | : | |

DECLARATION OF PORTER F. FLEMING, ESQ.
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
DISCOVERY AND FOR A PROTECTIVE ORDER

I, Porter F. Fleming, declare pursuant to 28 U.S.C. § 1746 that:

1.      I am a partner with the law firm of Frommer Lawrence & Haug LLP located at 745 Fifth Avenue, New York, New York 10151 and am counsel to Rational Cooking Systems, Inc. ("RCSI") in this action.

2.      I make the following declaration in support of RCSI's Brief in Opposition to Technology Licensing Corporation's ("TLC") Motion to Compel Discovery and for a Protective Order.

3.      Exhibit A is a true and correct copy of a March 7, 2007 e-mail from James E. Hough to Porter F. Fleming.

4.      Exhibit B is a true and correct copy of March 8, 2007 letter from Porter F. Fleming to James E. Hough.

5.      Exhibit C is a true and correct copy of a March 8, 2007 e-mail from Gregory E. Stuhlman to Jack B. Blumenfeld.

6.      Exhibit D is a true and correct copy of a March 8, 2007 letter from James E. Hough to Porter F. Fleming.

7.      Exhibit E is a true and correct copy of a March 12, 2007 e-mail from Porter F. Fleming to James E. Hough, Rory J. Radding and Jack B. Blumenfeld.

00445755 DOC

8.    Exhibit F is a true and correct copy of a March 12, 2007 e-mail from James E. Hough to Porter F. Fleming.

9.    Exhibit G is a true and correct copy of a March 13, 2007 letter from Porter F. Fleming to James E. Hough.

10.    Exhibit H is a true and correct copy of a March 13, 2007 letter from Frederick L. Cottrell, III to the Court.

11.    Exhibit I is a true and correct copy of a March 13, 2007 letter from Rory J. Radding to Edgar H. Haug.

12.    Exhibit J is a true and correct copy of a March 14, 2007 letter from Jack B. Blumenfeld to the Court.

13.    Exhibit K is a true and correct copy of an April 17, 2007 letter from Porter F. Fleming to Rory J. Radding.

14.    Exhibit L is a true and correct copy of an April 17, 2007 letter from Rory J. Radding to Porter F. Fleming.

15.    Exhibit M is a true and correct copy of a February 20, 2007 e-mail from Porter F. Fleming to Rory J. Radding.

16.    Exhibit N is a true and correct copy of an April 5, 2007 letter from Porter F. Fleming to James E. Hough.

17.    Exhibit O is a true and correct copy of TLC's Objections and Responses to Defendant's First Set of Interrogatories (Nos. 1-11).

18.    Exhibit P is a true and correct copy of an April 4, 2007 letter from Porter F. Fleming to James E. Hough.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 24, 2007

_____
Porter F. Fleming

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2007, I electronically filed the foregoing with the Clerk

of Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### HAND DELIVERY

Jack B. Blumenfeld
Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

I further certify that on April 25, 2007, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### FEDERAL EXPRESS

Rory J. Radding
Colette A. Reiner
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY  10101-0050

_____
Gregory E. Stuhlman (#4765)
Stuhlman@rlf.com

# EXHIBIT A

**From:** Hough, James E. [mailto:JHough@mofo.com]
**Sent:** Wednesday, March 07, 2007 3:53 PM
**To:** Fleming, Porter
**Cc:** Haug, Ed; Radding, Rory J.
**Subject:** Protective order

<<proposed order re protective order issues_v3 DOC>>
Porter:

I see you called   I have a call at 4 pm, and I will call you following that call.

In the interim, please consider the attached draft order.  Also, in addition to making clear that Mario Ceste should be able to see information designated with the lower level of confidentiality (you were going to get back to me on that point), we would like the following added to paragraph 27 at the end ",unless otherwise agreed to by the non-party with the entry of a separate Protective Order."

Jim

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230.html

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

# EXHIBIT B



**FLH** FROMMER LAWRENCE & HAUG LLP

New York
745 Fifth Avenue
New York, NY 10151
Telephone: (212) 588-0800
Fax: (212) 588-0500

www.flhlaw.com

Washington, DC

Tokyo

Porter F. Fleming
PFleming@FLHlaw.com

March 8, 2007

**VIA FACSIMILE**

James E. Hough, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10101-0050

Re:    Technology Licensing Corp. v. Rational Cooking Systems, Inc.
       Civil Action No.: 1:06-cv-00515-JJF

Dear Jim:

I was disappointed to receive your letter of today as you continue to feel compelled to make accusatory and unnecessary allegations.

We did discuss the Protective Order yesterday. I did incorporate your changes. You had no further revisions. Instead, it appears that you do not like the fact that the Court has ruled that Mario Ceste cannot see Confidential or Highly Confidential materials/information in this case.

We did disagree yesterday as to whether the Protective Order and your Proposed Order needed to be filed together. I told you our position was that they did not need to be coupled, that we intended to discuss the matter with our local counsel and proceed accordingly. I also encouraged you to discuss the matter with your local counsel, Jack Blumenfeld. Our efforts today to move forward with the Protective Order are totally consistent with what you and I discussed yesterday.

Although I still believe that we can proceed immediately with the Protective Order on its own, I have attached a revised version of your Order regarding the subpoenas and the April to August 18, 2006 time period. If you are willing to agree to this Order, we can submit it and the Protective Order to the Court tomorrow.

Very truly yours,

Porter F. Fleming
PFF:ap

Enc.

00435329

James E. Hough, Esq.
Morrison & Foerster LLP
March 8, 2007
Page 2

cc:    Jack B. Blumenfeld, Esq.
       Rory J. Radding, Esq.
       Mario G. Ceste, Esq.
       Frederick L. Cottrell, III, Esq.
       Gregory E. Stuhlman, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TECHNOLOGY LICENSING CORPORATION, )
a Florida corporation,                         )
                                               )
                     Plaintiff,                )      C.A. No. 06-515 (JJF)
                                               )
          v.                                   )
                                               )
RATIONAL COOKING SYSTEMS, INC., a              )
Delaware corporation,                          )
                                               )
                     Defendant.                )

## ORDER

The Court having considered plaintiff's Motion For Entry Of Protective Order,

and having held a hearing on plaintiff's Motion for Entry of Protective Order on March 2, 2007,

IT IS HEREBY ORDERED this _____ day of _____, 2007 that:

      1.     The Protective Order in the form of Exhibit A hereto is hereby entered;

      2.     Mario G. Ceste will not be permitted to see or have access to any

documents or information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL in

this matter;

      3.     The Subpoenas directed to Rory J. Radding, Morrison & Foerster LLP and

Mario G. Ceste are hereby limited in scope to documents created or received on or before August

18, 2006. Responsive documents to these subpoenas that are withheld from production based on

claims of privilege will be logged on respective privilege logs. For the time period of April 2006

to August 18, 2006, it will not be necessary to log responsive internal law firm correspondence at

Morrison & Foerster LLP. Responsive documents to or from third parties will be produced, if

not, they will be logged. Responsive documents to or from TLC and/or FAST from April 2006

to August 18, 2006, if not produced, will be included on TLC's and/or FAST's respective privilege logs; and

      4.    Rory J. Radding, Morrison & Foerster LLP, and Mario G. Ceste are under no obligation to maintain a "litigation hold" on documents created after August 18, 2006.

 

                           _____

                               J. Farnan

# EXHIBIT C

-----Original Message-----
From: Stuhlman, Gregory E. [mailto:Stuhlman@RLF.com]
Sent: Thursday, March 08, 2007 11:17 AM
To: jblumenfeld@mnat.com
Cc: rradding@mofo.com; Cottrell, Frederick; Fleming, Porter; Haug, Ed
Subject: TLC v. Rational Cooking -- Protective Order

<<Protective Order.pdf>>
Jack:

Attached please find an updated version of the Protective Order.  It has been updated to
reflect agreements reached by the parties, as well as Judge Farnan's rulings during the
hearing on Friday, March 2.  I also understand that the changes requested by Mr. Hough to
paragraphs 21 and
28 have been incorporated.  Please let me know if I am authorized to sign the Protective
Order on your behalf and get it filed with the Court.

Regards,
Greg

Gregory E. Stuhlman
Richards, Layton & Finger
One Rodney Square
Wilmington, Delaware  19801
Tel: 302.651.7578
Fax: 302.498.7578


----------------------------------------------------------
Richards, Layton and Finger, P.A. is not providing any advice with respect to any federal
tax issue in connection with this matter.

The information contained in this e-mail message is intended only for the use of the
individual or entity named above and may be privileged and/or confidential. If the reader
of this message is not the intended recipient, you are hereby notified that any
unauthorized dissemination, distribution or copying of this communication is strictly
prohibited by law. If you have received this communication in error, please immediately
notify us by return e-mail or telephone (302-651-7700) and destroy the original message.

# EXHIBIT D

03/08/2007 17:21 FAX 212 468 7900    MORRISON & FOERSTER    @002

MORRISON | FOERSTER

1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D C

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING.
SHANGHAI, HONG KONG.
SINGAPORE, BRUSSELS

March 8, 2007

Writer's Direct Contact
212.468.8158
JHough@mofo com

VIA FACSIMILE

Porter F. Fleming, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151

Re:    Technology Licensing Corp. v. Rational Cooking Systems, Inc.
       Civil Action No.: 1:06-cv-00515-JJF

Dear Porter:

I have received your letter dated March 7, 2007 and its enclosure. I have also received a
copy of Gregory Stuhlman's March 8, 2007 e-mail to Jack Blumenfeld, although I was not
copied on that e-mail.

As you know, TLC does not agree to entry of your draft Protective Order in its current form
for the reasons we extensively discussed in our telephone conversations. Mr. Stuhlman's e-
mail to Mr. Blumenfeld seems designed to mask the fact that we have not agreed to the draft
order you propose. That is improper conduct.

As you also know, we also do not believe a Protective Order should be presented to the Court
while other matters addressed in the same motion remain under discussion. Judge Farnan
instructed the parties to attempt to work out the remaining issues, and to write him letters if
we failed to reach agreement within two weeks. There is no point to piecemeal submissions.

ny-740960

03/08/2007 17:22 FAX 212 468 7900        MORRISON & FOERSTER                    ☑003

MORRISON | FOERSTER

Porter F. Fleming, Esq.
March 8, 2007
Page Two

The draft order I sent to you merely re-states the positions Ed Haug took on the record before Judge Farnan, and in our follow up call on March 5, 2007. Please provide us with a written response to that proposed order at your earliest convenience.

Sincerely,

James E. Hough

cc:    Rory J. Radding, Esq.
       Jack B. Blumenfeld, Esq.
       Mario G. Ceste, Esq.
       Frederick L. Cottrell, III, Esq.
       Gregory E. Stuhlman, Esq.

ny-740960

# EXHIBIT E

-----Original Message-----
**From:** Fleming, Porter [mailto:PFleming@flhlaw.com]
**Sent:** Monday, March 12, 2007 2:22 PM
**To:** Hough, James E.; Radding, Rory J.; jblumenfeld@mnat.com
**Cc:** Haug, Ed; Wise, Jonathan; Cottrell, Frederick; Stuhlman, Gregory E.
**Subject:** Protective Order to the Court
**Sensitivity:** Private

Jim, Rory and Jack  --  I have not heard back from the TLC team as to the protective order and accompanying order to be submitted to Judge Farnan which I sent to you all last Thursday. To hopefully expedite the matter, please redline any proposed changes you have to the two documents.  Fred will be contacting Jack tomorrow regarding filing.  Regards,  Porter

Porter F. Fleming, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151

Tel:  (212) 588-0800
Fax: (212) 588-0500

'21/2007

# EXHIBIT F

| From: | Hough, James E. [JHough@mofo.com] |
|---|---|
| Sent: | Monday, March 12, 2007 3:26 PM |
| To: | Fleming, Porter; Radding, Rory J.; jblumenfeld@mnat.com |
| Cc: | Haug, Ed; Wise, Jonathan; Cottrell, Frederick; Stuhlman, Gregory E.; Mario Ceste |
| Subject: | RE: Protective Order to the Court |
| Sensitivity: | Private |
| Attachments: | Order for Protective Order (00435328).DOC; 00435009.DOC |

Porter:

Attached are our comments in "track changes" to the drafts attached to your e-mail.

We will agree to a two tier Protective Order that permits Ceste to view "Confidential" materials (as noted on the attached revision to your draft), and we will also agree to a single tier Protective Order that excludes Mario and all party employees and designees. We understand that the parties will not be able to agree on Ceste's access to material designated as "Confidential" under the proposed two tier Protective Order. Because we are the moving party, we think it is appropriate for us to make the first submission to the Court explaining the difference of opinion on this point to the Court. Of course, you may follow that submission with your own letter if you believe our submission does not fairly present the issue. We expect to make our submission within this week.

On the Order for Entry of Protective order, our changes are intended to track the statements Ed made at the hearing, and in our follow-up phone call on March 5. We have used March 14 instead of April 2006 because we have learned that Mario Ceste was retained on that date for this litigation. Please let us know promptly whether our changes are acceptable.

Regards,

Jim

# EXHIBIT G

**FLH** FROMMER LAWRENCE & HAUG LLP

New York                    www.flhlaw.com
745 Fifth Avenue
New York, NY 10151          Washington, DC
Telephone: (212) 588-0800   Tokyo
Fax: (212) 588-0500

Porter F. Fleming
PFleming@FLHlaw.com

March 13, 2007

**VIA FACSIMILE**

James E. Hough, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10101-0050

Re:   Technology Licensing Corp. v. Rational Cooking Systems, Inc.
      Civil Action No.: 1:06-cv-00515-JJF

Dear Jim:

I have received your email and proposed changes to the Protective Order and Order for Entry of Protective Order. We do not agree.

Your correspondence ignores the following two facts: At the March 2nd Hearing, your co-counsel, Jack Blumenfeld stated that the parties "did agree this morning to a two-tier protective order with each side having one designee on the lower level of confidentiality." (Hearing Tr. 4). And, following oral argument on the Ceste issue, the Court ruled:

> Mr. Ceste, this is nothing reflecting on your integrity or anything else.
> But I think in the circumstances of this case, it's clear that he shouldn't
> have access to and there's enough lawyers, as Rational said, to view
> that material and deal with it.
>
> So I'm going to grant the motion and exclude him. So it will be - - the
> motion [RCSI's objection to Mr. Ceste] is granted. You can put it in your
> order.

(Hearing Tr. 14).

The parties agreed to a two-tier protective. It is on the record. Likewise, the Court ruled that Mr. Ceste will not have access to confidential information. RCSI's positions and arguments to exclude him were granted. Your attempts to change the Court's rulings and ignore your own co-counsel's statements to the Court are inappropriate, and unnecessarily delay the submission of a protective order in this case.

We are not interested in rearguing the motion with you. As a courtesy, we asked whether you had any changes to the protective order before we were to submit it to the Court. We did input

00436046 DOC

James E. Hough, Esq.
Morrison & Foerster LLP
March 13, 2007
Page 2

all of your typographical and wordsmith edits to paragraphs 21 and 27. We will not "edit" and incorporate revisions that seek to now allow Mr. Ceste to have access to confidential information. Likewise, we will not revise the protective order from a two tier to a single tier level of protection.

Enough is enough. Fred Cottrell will be contacting Jack Blumenfeld to coordinate submission of our Protective Order to the Court.

As for the Entry Order, you deleted paragraph 2. The Court excluded Mr. Ceste from having access to confidential information designated under the protective order. The paragraph is appropriate. With respect to the subpoenas, we have tried to find common ground regarding the April to August 2006 privilege log date issues. Your changes seek to move the date forward to March 14 - - this was not part of your motion - - and further limit the documents to be produced. The subpoenas are appropriate. In an attempt to work this out, we have agreed to limit any requirement to log internal communications between Morrison & Foerster attorneys between April and August 18, 2006. However, communications before the Complaint was filed from attorneys to third parties, if not privileged, should be produced. Alternatively, if privileged, the withheld documents need to be logged. We are willing to discuss this point further with you at your convenience if you believe it will be beneficial. Further attempts to resolve this language, should not delay the filing and entry of the protective order in this case. They are separate issues.

Your email goes on to state that because you are the moving party, you should make the first submission to the Court setting forth the parties' differences regarding the protective order. We disagree. If you so proceed, please attach this letter and our version of the two orders to any communication to the Court.

Finally, we have been attempting since last week to submit our protective order to the Court. For all intensive purposes, the Court granted RCSI's motion for a protective order excluding Mr. Ceste. We plan to proceed accordingly through local counsel.

Very truly yours,

Porter F. Fleming
PFF:ap

cc:    Rory J. Radding, Esq.
       Mario G. Ceste, Esq.
       Jack B. Blumenfeld, Esq.
       Frederick L. Cottrell, III, Esq.

# EXHIBIT H

RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL III

DIRECT DIAL NUMBER
302-651-7509
COTTRELL@RLF.COM

March 13, 2007

**VIA E-FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
Federal Building
844 King Street
Wilmington, Delaware 19801

Re:  **Technology Licensing Corp. v. Rational Cooking Systems, Inc., C.A. No. 06-515-JJF**

Dear Judge Farnan:

On March 2, 2007, the Court held a hearing in the above referenced matter on Plaintiff's Motion for Entry of a Protective Order. D. I. 40. As a result of Your Honor's rulings at that hearing, Defendant thought that all issues relating to submission of a Protective Order had been resolved. Specifically, Your Honor ruled that Mario Ceste shall not have access to confidential or highly confidential materials produced during the litigation.

Plaintiff has declined to incorporate Your Honor's ruling into a final Protective Order. Inexplicably, Plaintiff continues to argue the issue, insisting that Mr. Ceste have access to confidential information or, in the alternative, that the very structure of the Protective Order be changed from a two tier to a one tier arrangement. A change to the structure of the Protective Order is contrary to the parties' agreement before the March 2 hearing and to Mr. Blumenfeld's confirmation of that agreement during the hearing.

Defendant apologizes for burdening the Court with an issue Your Honor has already decided, yet Plaintiff leaves us with little choice. Accordingly, attached please find a form of Protective Order Defendant wishes the Court to enter.

Should the Court have any questions or concerns, undersigned counsel remains available at the Court's convenience.

Respectfully,

Frederick L. Cottrell, III (#2555)

RLF1-3125994-1

The Honorable Joseph J. Farnan, Jr.
March 13, 2007
Page 2


Attachment

cc:    Jack B. Blumenfeld, Esquire (via E-Filing notification and hand delivery)
       James E. Hough, Esquire (via e-mail)
       Rory J. Radding, Esquire (via e-mail)
       Porter Fleming, Esquire (via e-mail)

# EXHIBIT I

MORRISON | FOERSTER

1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

NORTHERN VIRGINIA,
ORANGE COUNTY, DENVER
SACRAMENTO, WALNUT CREEK

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

March 13, 2007

Writer's Direct Contact

212.468.8146
RRadding@mofo.com

By E-mail and First Class Mail

Edgar H. Haug, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151

Re:    Technology Licensing Corp. v. Rational Cooking Systems, Inc.
       Civil Action No.: 1:06-cv-00515-JJF

Dear Ed:

I write in response to Porter Fleming's March 13, 2007 letter to Jim Hough.

Porter was not involved in our conversation of March 5, during which we discussed appropriate limitations on the subpoenas Rational served on TLC's counsel. In that conversation, we discussed what you meant by your on-the-record statement that Rational is interested only production or log entries for counsel's communications with "third parties" during the period from April 2006 to August 18, 2006.

In our phone conversation you agreed that pre-litigation communications by counsel of record, internal law firm communications and communications among co-counsel need not be produced or logged, and that communications between counsel and experts or potential experts need not be produced or logged. We agreed that any communications with other potential infringers would be produced or logged.

In subsequent communications with my partner, Jim Hough, Porter suggested that counsel's communications with "third parties" should also include communications with potential litigation funding sources. We agreed to produce or log such communications, if they exist.

Porter has proposed an Order that does not reflect the agreements we reached during our March 5 discussion. I have attached a revised draft of our proposed Order that includes the matters you agreed to on March 5, and the additional agreement Jim reached with Porter regarding communications with potential funding sources. If you will not agree to entry of this proposed Order, please give me a call to explain your position.

ny-741887

MORRISON | FOERSTER

Edgar H. Haug, Esq.
March 13, 2007
Page Two

With respect to the Ceste issue, we have decided not to pursue the matter further at this time. We will advise local counsel to execute the Protective Order.

Sincerely,

Rory J. Radding

Enclosure

cc:    Frederick L. Cottrell III, Esq.
       Porter F. Fleming, Esq.
       Jack B. Blumenfeld, Esq.
       James E. Hough, Esq.
       Mario G. Ceste, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TECHNOLOGY LICENSING CORPORATION, )
a Florida corporation,                                    )
                                                                   )
                              Plaintiff,                    )          C.A. No. 06-515 (JJF)
                                                                   )
                    v.                                           )
                                                                   )
RATIONAL COOKING SYSTEMS, INC., a      )
Delaware corporation,                               )
                                                                   )
                              Defendant.                 )

## ORDER

    The Court having considered plaintiff's Motion For Entry Of Protective Order,

and having held a hearing on plaintiff's Motion for Entry of Protective Order on March 2, 2007,

IT IS HEREBY ORDERED this _____ day of _____, 2007 that:

    1.  The Protective Order in the form of Exhibit A hereto is hereby entered;

    2.  The Subpoenas directed to Rory J. Radding, Morrison & Foerster LLP and

Mario G. Ceste are hereby limited in scope to documents created or received on or before August

18, 2006. Responsive documents to these subpoenas that are withheld from production based on

claims of privilege will be logged on respective privilege logs. For the time period of April,

2006 to August 18, 2006, it will not be necessary to produce or log responsive documents

evidencing communications among counsel of record, between counsel of record and potential

co-counsel or expert consultants, or other pre-litigation communications by counsel of record.

Responsive documents evidencing communications to or from third parties, including potential

infringers of the patent-in-suit, and potential litigation funding sources, if any, will be produced

or logged. Responsive documents evidencing communications to or from TLC and/or FAST

from April, 2006 to August 18, 2006, if not produced, will be included on TLC's and/or FAST's

respective privilege logs; and

        4.     Rory J. Radding, Morrison & Foerster LLP, and Mario G. Ceste are under

no obligation to maintain a "litigation hold" on documents created after August 18, 2006.


_____
J. Farnan

# EXHIBIT J

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. Box 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 FAX
jblumenfeld@mnat.com

March 14, 2007

The Honorable Joseph J. Farnan, Jr.                              *VIA E-FILING*
United States District Court
   for the District of Delaware
844 North King Street
Wilmington, DE  19801

           Re:     *Technology Licensing Corporation v. Rational Cooking Systems, Inc.*,
                   C.A. No. 06-515 (JJF)

Dear Judge Farnan:

          I write on behalf of plaintiff Technology Licensing Corporation ("TLC") in
response to the March 13, 2007 letter to Your Honor from Rational Cooking Systems, Inc.
("Rational"). Rational's letter was premature because the parties were continuing discussions on
the issues raised in TLC's motion for protective order, including the issue of appropriate
limitations on the subpoenas Rational served on TLC's counsel of record. Nevertheless, this is
to advise the Court that TLC agrees to the entry of the Protective Order submitted with
Rational's letter.

          TLC had objected to Rational's proposed Protective Order because of what it
perceived to be a logical flaw. The Court denied Mario Ceste any access whatsoever under the
Protective Order, apparently on the basis of his minor stock interest would result in competitive
decision-making. Yet, Rational's proposed draft would permit a representative of each party to
have access to the lower tier materials designated as CONFIDENTIAL, regardless of his or her
interest in that party. TLC believes it would be more appropriate either to permit Mr. Ceste
access to the same lower tier information available to the party representatives, or to have a
single tier protective order prohibiting party representatives from having access to all
confidential materials. Rational does not dispute the logical flaw in the Protective Order it has
proposed, but it has declined to modify it. Before it received Rational's letter to the Court,
however, TLC had decided to agree to the Protective Order proposed by Rational.

          TLC will submit another proposed Order, which it provided to Rational's counsel
yesterday, that further addresses the issue of appropriate limitations on the subpoenas served on

The Honorable Joseph J. Farnan, Jr.
March 14, 2007
Page 2

TLC's counsel, a subject also discussed at the March 2 conference.    We are continuing discussions of this Order with Rational's counsel.

Respectfully,

Jack Blumenfeld (I.D. No. 1014)

JBB/dlb

cc:    Clerk of Court (Via Hand Delivery)
       Frederick L. Cottrell, III, Esquire (Via Hand Delivery)
       Edgar H. Haug, Esquire (Via E-Mail)
       Rory J. Radding, Esquire (Via E-Mail)

# EXHIBIT K

**FLH** FROMMER LAWRENCE & HAUG LLP

New York                         www.flhlaw.com
745 Fifth Avenue
New York, NY 10151              Washington, DC
Telephone: (212) 588-0800      Tokyo
Fax: (212) 588-0500

Porter F. Fleming
PFleming@FLHlaw.com

April 17, 2007

**VIA FACSIMILE**

Rory J. Radding, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10101-0050

Re:    Technology Licensing Corp. v. Rational Cooking Systems, Inc.
       Civil Action No.: 1:06-cv-00515-JJF

Dear Rory:

We have received and reviewed TLC's April 11th motion to compel and for entry of a protective order. Despite Karen Louden's "meet and confer" statement to the Court, which was not filed at the time of the motion, we do not believe that Delaware Local Rule 7.1.1 has been satisfied. RCSI had agreed to provide you with many of the documents you now seek to compel. Further, there were ongoing discussions as to the other points regarding our attempts to resolve these open issues. Accordingly, your motion is premature and should be withdrawn.

It is clear from not only the letters you attached to your paper, but in the text of the brief as well, that we have agreed on behalf of RCSI to do many of the things you seek to compel. For example, we have told you that we are in the process of reviewing and will shortly be producing additional RCSI documents regarding the SCC machine. We have also told you that we will be voluntarily producing Rational AG documents, following a necessary document inspection in Germany. We also agreed to produce better copies of certain prior art publications. As for the other points, we were still in the process of discussing them with you in an attempt to reach common ground.

Despite these representations and our ongoing discussions, you filed a motion to compel without informing us of your intentions. Irrespective of this unilateral act, we still intend to produce additional RCSI documents, hopefully by the end of this week. We will also be voluntarily producing Rational AG documents, following my visit to Germany next week. In view of these facts, our continuing discovery efforts and that Local Rule 7.1.1 has not been satisfied, we

00444390 DOC

Rory J. Radding, Esq.
Morrison & Foerster LLP
April 17, 2007
Page 2

believe TLC's motion should be withdrawn to avoid an unnecessary expenditure of time and effort by both the Court and all attorneys involved  We look forward to your prompt response.

Very truly yours,

Porter F. Fleming
PFF:ap

cc:    Karen Jacobs Louden, Esq.
       Mario G  Ceste, Esq.
       Jack B. Blumenfeld, Esq.
       Frederick L. Cottrell, III, Esq.

# EXHIBIT L



MORRISON | FOERSTER

1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SAN DIEGO, WASHINGTON, D.C.

DENVER, NORTHERN VIRGINIA,
ORANGE COUNTY, SACRAMENTO,
WALNUT CREEK, CENTURY CITY

TOKYO, LONDON, BEIJING,
SHANGHAI, HONG KONG,
SINGAPORE, BRUSSELS

April 17, 2007

Writer's Direct Contact
212.468.8146
RRadding@mofo.com

Via E-Mail & U.S. Mail

Porter F. Fleming, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151

Re:    *Technology Licensing Corp. v. Rational Cooking Systems, Inc.*,
       Civ. No.1:06-cv-00515-JJF

Dear Porter:

We welcome the opportunity to further confer with Rational on discovery matters, but we believe that Rule 7.1.1 has been satisfied, as the parties have conferred multiple times on each of the issues raised by the motion over weeks or months, without resolution. Your letter focuses on document discovery, and we are happy to hear that a further production is planned. However, we are dismayed to hear that the trip to Germany has not yet happened. Rational has had TLC's document requests for nearly 8 months, and you told us of your plan to visit Germany in January. It is hard to imagine why arranging a trip has taken so long.

Moreover, your letter ignores (1) the improper "confidential" and "highly confidential" designations of the supplemental interrogatory response; (2) the failure to provide specific invalidity contentions regarding a laundry list of asserted prior art references; (3) your reliance on conclusory assertions of non-infringement; and (4) the Order we requested regarding the Counsel Subpoenas.

We will withdraw the motion if you will agree, in writing, to do the following by May 1:

1.  De-designate the supplemental responses to Interrogatories 3 and 4.

2.  Produce the requested documents from Rational AG's files, including source code and documents relating to the operation of the accused device.

3.  Provide specific contentions regarding all asserted prior art references.

ny-747979

MORRISON | FOERSTER

Porter F. Fleming, Esq.
April 17, 2007
Page Two

    4.  Provide supplemental non-infringement contentions.

    5.  Entry of the Order regarding Counsel Subpoenas in the form we have proposed.

If we do not have agreement on these points, then we believe the motion is appropriate and should go forward.  We look forward to hearing from you.

Yours truly,

Rory J. Radding

cc:   James E. Hough, Esq.
      Jack Blumenfeld, Esq.
      Edward H. Haug, Esq.
      Jonathan R. Wise, Esq.
      Frederick Cottrell, III, Esq.
      Mario Ceste, Esq.

# EXHIBIT M

**From:**    Fleming, Porter
**Sent:**    Tuesday, February 20, 2007 3:02 PM
**To:**    'Radding, Rory J.'
**Cc:**    Hough, James E ; McFarland, Sally A ; Haug, Ed
**Subject:**    RE: Today's conference call
**Sensitivity:** Private

Dear Rory,

Thank you for your summary.

We have a different view as to the telephone conference. Despite our efforts to propose reasonable compromises on certain of the issues raised in your motion, you refused to except any of our proposals, added further conditions (e.g. FAST as a party under the protective order) and insisted that we brief all the issues. You stated that when TLC filed its reply, you would decide/respond to our offers.

With that said, we do not agree with certain of your points below. We do not understand your point with respect to paragraph 4. We were willing to limit the Radding and Morrison & Foerster subpoenas to August 2006, the date the original complaint was filed. There was further discussion that you would get back to us regarding attorney client and/or privilege communications that may have existed and would be have to be logged between April and August 2006.

Further in paragraph 5, you state that Rational AG will be producing documents next week. We stated that RCSI will be producing documents next week. The issues regarding Rational AG have not been resolved. We do not yet have your agreement as to further/continuing TLC requests directed to Rational AG. Despite this fact, we did discuss producing certain responsive documents outlined in your January 26th letter. Obviously to do so, will require a trip to Germany, etc. That can not be accomplished by next week.

Regards,

Porter

Porter F. Fleming, Esq.
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151

Tel: (212) 588-0800
Fax: (212) 588-0500

pfleming@FLHlaw.com

# EXHIBIT N



ALLSTATE*LEGAL 430.22.0190  EDRH  RECYCLED

**FLH** FROMMER LAWRENCE & HAUG LLP

New York
745 Fifth Avenue
New York, NY 10151
Telephone: (212) 588-0800
Fax: (212) 588-0500

www.flhlaw.com

Washington, DC

Tokyo

Porter F. Fleming
PFleming@FLHlaw.com

April 5, 2007

<u>VIA FACSIMILE</u>

James E. Hough, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10101-0050

Re:    Technology Licensing Corp. v. Rational Cooking Systems, Inc.
       Civil Action No.: 1:06-cv-00515-JJF

Dear Jim:

This letter follows my April 4, 2007 correspondence and addresses many of the issues you and
Rory Radding have raised recently.

With respect to your inquiry regarding the form of our proposed order addressing the scope of
the third-party subpoenas to Radding, Ceste and Morrison & Foerster, we continue to maintain
that all responsive, non-privileged documents including those from April to August 18, 2006
(filing of the complaint date) be produced. Further, to the extent documents are withheld based
on privilege, they must be logged. We have also agreed, as an accommodation to you and your
clients, that responsive internal communications at Morrison & Foerster need not be logged.

Despite our efforts to reach a compromise on this issue, you have proposed an order that is much
broader than we are willing to accept. Your proposed order would permit your clients to not
produce relevant and non-privileged documents. Your order would also relieve your clients of
any obligations of logging documents which are withheld from production based on a claim of
privileged. We discussed this previously. You and Rory have attempted to justify the breadth of
your order based on discussions with Ed Haug. I have confirmed with him that he did not
propose nor did he agree to the terms you have set forth. Your continued efforts to
mischaracterize telephone discussions with RCSI counsel are unnecessary and unproductive.
Please end this practice. We are unwilling to accept your attempts to prevent discovery on these
matters.

You have also prematurely objected to our supplemental interrogatory responses. Interrogatory
Response No. 4 is detailed and provides extensive analysis of the §102 and §103 prior art. To
the extent we uncover additional §102 and §103 prior art, we will supplement our responses as
appropriate. As I pointed out in my April 4th letter, you have not provided your claim
construction in response to RCSI Interrogatory No. 2. Surely, you can appreciate that TLC's
claim construction(s) could affect our invalidity analysis. In view of this, we again encourage

00441672.DOC

James E. Hough, Esq.
Morrison & Foerster LLP
April 5, 2007
Page 2

you to respond to RCSI Interrogatory No. 2 immediately.  We assume that you must have had a claim construction in mind when you brought this case and you must have a claim construction today to maintain the case.  We are entitled to your contentions.

You also questioned whether there are additional documents we may rely upon regarding our supplemental response to TLC Interrogatory No. 3.  We believe that there may be additional documents and if so, they will be produced.  Accordingly, we will also supplement our responses at that time, if necessary.

You also raised the issue of identifying responsive documents by bates numbers.  We are willing to discuss such an exchange assuming you will provide reciprocal disclosures for TLC, FAST, Ceste, Radding, G. Koether, B. Koether and Morrison & Foerster.

You have also questioned whether certain documents produced by RCSI should have been marked Confidential.  We are considering and investigating your request and will respond in due course.  As for further productions, which we discussed this week, we are continuing to review documents and anticipate further productions.  We are also waiting for FAST's subsequent production(s) which you indicated is also in the works.

We look forward to resolving these matters.  And, on a personal note, we wish you and your family a Happy Easter.

Very truly yours,

Porter F. Fleming
PFF:ap

cc:     Rory J. Radding, Esq.
        Mario G. Ceste, Esq.
        Jack B. Blumenfeld, Esq.
        Frederick L. Cottrell, III, Esq.

00441672.DOC

# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TECHNOLOGY LICENSING CORPORATION, a Florida corporation, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 06-515 (JJF) |
| v. | ) ) ) | |
| RATIONAL COOKING SYSTEMS, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

## TLC'S OBJECTIONS AND RESPONSES TO
## DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Civil Rules of the District of Delaware, Technology Licensing Corporation ("TLC") hereby responds to Rational Cooking Systems, Inc.'s ("Rational's") First Set of Interrogatories  As discovery is ongoing, TLC's responses may be modified and/or supplemented as additional information becomes known to TLC.

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

TLC asserts the following general objections to Rational's First Set of Interrogatories and First Set of Document Requests and incorporates these general objections into each response set forth below.

1.    TLC objects to each instruction, definition, and interrogatory or request to the extent that the instruction, definition, interrogatory, or request purports to impose any requirement or discovery obligation on TLC greater than or inconsistent with those imposed by law, the Federal Rules of Civil Procedure, the Local Rules of this Court, or any other applicable rules.

2.    TLC objects to each interrogatory and/or request to the extent that it calls for the disclosure of information protected by attorney-client privilege, joint-defense privilege, work-product immunity, and any other applicable rule of privilege or confidentiality afforded under the applicable laws of the United States, including any applicable right of privacy.

3.    TLC objects to terms and phrases defined or used by Rational to the extent that those terms and/or phrases are vague and/or ambiguous or beyond their customary meaning. To the extent TLC adopts any terms or phrases defined or used by Rational, they are adopted solely for the sake of convenience in responding to these interrogatories and/or requests, and TLC does not accept or concede that any of the terms, phrases, or definitions are appropriate, descriptive, or accurate.

4.    TLC objects to the definitions of "you," "your," and "TLC" on the ground that they are overly broad and inconsistent with the applicable discovery rules by purporting to require TLC to search for and provide information not in its own possession, custody, or control, but rather in the possession, custody, or control of other companies or former employees. TLC's response to these interrogatories and/or requests is limited to knowledge and information within TLC's possession, custody, or control and is intended to be the response of TLC only.

5.    TLC objects to the definitions of "possession," "custody," and "control" on the ground that they are overly broad and inconsistent with the applicable discovery rules by purporting to require TLC to search for and provide information not in its own possession, custody, or control, but rather in the possession, custody, or control of other companies or former employees. TLC's response to these interrogatories and/or requests is limited to knowledge and information within TLC's possession, custody, or control and is intended to be the response of TLC only.

2

6.    TLC objects to the definitions of "Food Automation-Service Techniques, Inc." and "FAST" on the ground that they are overly broad and to the extent that they purport to impose discovery obligations in excess of those required under the Federal and Local Rules. FAST is not a party to this litigation. In the event that FAST and Rational reach an agreement regarding the production of any FAST documents, that agreement will be based on Rational's subpoena to FAST and not Rational's discovery requests to TLC.

7.    TLC objects to each interrogatory and/or request on the ground that they are overly broad and to the extent that they purport to impose discovery obligations in excess of those required under the Federal and Local Rules. Bernard Koether is not a party to this litigation as an individual. In the event that Bernard Koether and Rational reach an agreement regarding the production of any of his personal documents, that agreement will be based on Rational's subpoena to Bernard Koether and not Rational's discovery requests to TLC

8.    TLC objects to the definition of "concerning" on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. TLC objects to this term to the extent that it suggests that TLC must search for all information that somehow relates to some subject matter identified by Rational. This term does not describe identifiable categories of information that TLC can search for and produce without suffering undue burden. TLC will interpret this term to have its customary meaning, broadly or narrowly construed as is reasonable under the circumstances.

9    TLC objects to each interrogatory and/or request to the extent that it is not specifically limited to any time period relevant to this litigation and thereby seeks information that is irrelevant to the subject matter of this lawsuit and not reasonably likely to lead to the discovery of admissible evidence.

3

10.   TLC objects to each interrogatory and/or request to the extent that it seeks disclosure of information that is equally or more readily available to Rational as to TLC.

11.   TLC objects to each interrogatory and/or request to the extent that it is duplicative or cumulative of another interrogatory and/or request.

12.   TLC objects to each interrogatory and/or request to the extent that it requires TLC to draw legal conclusions.

13.   TLC objects to each interrogatory and/or request to the extent that it purports to require a search of information not within the possession, custody, or control of TLC.

14.   TLC objects to disclosing information containing or reflecting proprietary information, trade secrets, or other confidential information belonging to TLC.

15.   TLC objects to disclosing information containing or reflecting proprietary information, trade secrets, or other confidential information entrusted to it by non-parties. Much of such material is irrelevant to any issue that may arise in this litigation, and any possible marginal relevance would be outweighed by the potential harm to TLC's current and future business relationships and opportunities if such information were produced. TLC further objects on the ground that disclosing such information could be in violation of TLC's obligations under confidentiality arrangements with third parties and would be unduly burdensome, oppressive, and anti-competitive.

16.   TLC objects to the total number of interrogatories served by Rational in this litigation to the extent that number exceeds the 50 interrogatories agreed between the parties, including discrete subparts. TLC further objects to these interrogatories to the extent that they include subparts which are not numbered as such. TLC shall treat each discrete subpart as a separate interrogatory.

4

17.    By responding and disclosing information, TLC does not concede the relevancy or materiality of the interrogatory and/or request or of the subject to which such interrogatory and/or request refers. TLC's responses are made expressly subject to, and without in any way waiving or intending to waive, any questions or objections as to the competence, relevance, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents referred to or produced or of the responses given herein, or of the subject matter thereof, in any proceeding (including the trial of this action or in any subsequent proceeding). The responses and production are made subject to TLC's right to object to any discovery proceeding involving or relating to the subject matter of the interrogatory responded to herein.

18.    In the interest of expediting discovery, TLC has been making prompt and diligent reviews of its potentially responsive information, accompanied by what TLC feels to be reasonable safeguards against the production of privileged or otherwise protected or non-responsive documents. If, despite such efforts, TLC does in fact produce one or more such documents, such production will have been inadvertent and shall not be deemed to waive any legal protection that attaches to such document(s). TLC objects to any reading, copying, summarizing or other use by Rational of such document(s), and requests that Rational immediately notify TLC of any instance where it knows, or reasonably suspects, that such an inadvertent production has occurred, and immediately return such document(s) to TLC.

19.    TLC objects to these interrogatories and/or requests as unreasonably burdensome to the extent that Rational seeks production of electronic documents in native format. TLC will produce such documents in accordance with the Federal Rules of Civil Procedure

5

20.    These responses are based on information presently known to TLC and are given without prejudice to TLC's right to produce evidence of any subsequently discovered documents or facts, and to present evidence of subsequently discovered documents or facts in depositions, at trial, and in support of, or opposition to, any motion.

21.    Notwithstanding its specific responses to any particular interrogatory, TLC does not waive any of the general objections made herein, each of which is incorporated into each and every specific response as if set forth in full therein.

### RESPONSE TO INTERROGATORIES

#### Interrogatory No. 1.

Describe (by way of a claim chart) the basis for TLC's infringement assertions as follows: Identify each claim of the '948 patent that TLC contends a Rational product has infringed or is infringing either directly or indirectly, state whether such alleged infringement is literal or under the doctrine of equivalents, and describe the complete factual basis and evidentiary support for the presence of each element of each asserted claim either literally or by way of a substantial equivalent and identify three individuals most knowledgeable about the information requested in this interrogatory.

#### Response to Interrogatory No. 1

TLC objects to this interrogatory insofar as the Court has not yet construed the claims of the '948 Patent. TLC objects to this interrogatory on the grounds that it is premature because discovery in this matter is just beginning, and Rational has not yet produced any documents to TLC. TLC reserves the right to modify or supplement its responses as TLC locates additional information, or based on a ruling from the Court.

Subject to the foregoing, and the General Objections, Exhibit A presents a preliminary claim chart showing that each of the elements of claims 1, 2, 3, 4, 5, 6, 9, 10, and 11 of the '948 Patent is found in Rational's SCC based on publicly available information taken from one or more sections (alone or in combination) of Rational's SCC manual, parts list, and website. TLC will supplement Exhibit A after fact and expert discovery.

6

<u>Interrogatory No. 2.</u>

Describe (by way of claim chart) TLC's construction of the claims of the patent in suit, as follows: For each claim of the '948 patent that TLC contends any Rational product has infringed or is infringing either literally or under the doctrine of equivalents, state TLC's interpretation of each claim limitation, identify all evidence intrinsic to the '948 patent that supports TLC's interpretation, and identify all evidence extrinsic to the '948 patent that either supports or refutes TLC's interpretation. For each claim term, phrase, and element that TLC asserts should be assigned its ordinary meaning, state that meaning, specify all bases for TLC's assertion, identify all supporting evidence, and identify three individuals most knowledgeable about the information requested in this interrogatory.

<u>Response to Interrogatory No. 2</u>

TLC objects to this interrogatory as vague and ambiguous, including but not limited to the phrase "refutes" as used in the context of this interrogatory. Furthermore, TLC objects to this interrogatory insofar as the Court has not yet construed the claims of the '948 Patent. TLC objects to this interrogatory on the grounds that it is premature because discovery in this matter is just beginning, and Rational has not yet produced any documents to TLC. TLC reserves the right to modify or supplement its responses as TLC locates additional information, or based on a ruling from the Court.

Subject to the foregoing, and the General Objections, TLC responds as follows:

Claim construction is a question of law for the Court to decide. As discovery is in its nascent stages, this interrogatory is premature. Additionally, TLC refers Rational to its response to Interrogatory number 1.

<u>Interrogatory No. 3.</u>

For each claim in the patent in suit, specify the dates on which the claimed subject matter was (i) conceived, (ii) reduced to practice, (iii) first described in a document, and (iv) first disclosed to a person other than the inventors. Identify all supporting documents, samples, investigations, tests, measurements, analyses, opinions, testimony for each date, and three individuals most knowledgeable about the information requested in this interrogatory.

7

**Response to Interrogatory No. 3**

TLC objects to this interrogatory on the grounds that it calls for a legal conclusion. TLC further objects to this interrogatory as premature in that TLC has not yet identified the complete set of claims to be asserted in this matter. TLC objects to this interrogatory as seeking information regarding claims of the '948 Patent that are not asserted in this matter, as such information is not relevant to any claim or defense in this matter. Furthermore, TLC objects to this interrogatory insofar as the Court has not yet construed the claims of the '948 Patent. TLC objects to this interrogatory on the grounds that it is premature because discovery in this matter is just beginning, and Rational has not yet produced any documents to TLC. TLC reserves the right to modify or supplement its responses as TLC locates additional information or based on a ruling by the Court.

Subject to the foregoing, and the General Objections, TLC responds as follows:

The inventions described and claimed in the '948 Patent were conceived at least as early as March 16, 1987, and reduced to practice at least as early as September 1, 1987. The inventions were reduced to practice in the course of developing an advanced digital programmable oven controller. By about September 1, 1987, FAST had constructed and successfully tested a digital programmable oven controller embodying one or more claims of the '948 Patent in the context of providing a confidential disclosure to Kentucky Fried Chicken to allow them to evaluate and assess the device. The two people most knowledgeable concerning the content of this response are Bernard G. Koether and Mario Pasquini.

**Interrogatory No. 4.**

Describe the technical area(s) to which the patent in suit pertains including, but not limited to, a description of the level of schooling, experience, expertise, and relevant technical skill that a person having ordinary skill in the art would have had at the time the claimed invention was made. Identify three individuals most knowledgeable about the information requested in this interrogatory.

8

**Response to Interrogatory No. 4**

TLC objects to this interrogatory to the extent it calls for a legal conclusion. Furthermore, TLC objects to this interrogatory insofar as the Court has not yet construed the claims of the '948 Patent. TLC objects to this interrogatory on the grounds that it is premature because discovery in this matter is just beginning, and Rational has not yet produced any documents to TLC. TLC reserves the right to modify or supplement its responses as TLC locates additional information, or based on a ruling from the Court.

Subject to the foregoing, and the General Objections, TLC responds as follows:

The inventors of the '948 Patent were persons of ordinary skill in the art at the time the invention was made. As this litigation progresses, Rational will have the opportunity to depose one or both of the inventors to determine his level of skill.

**Interrogatory No. 5.**

Describe the actions that TLC and FAST took, before filing the Complaint dated August 31, 2006, to analyze Rational's products or investigate whether any Rational products infringe the '948 patent including, but not limited to, identifying what machines were analyzed, the model numbers of the analyzed machines, where, when and how long the machines were analyzed, any documents, reports, photographs, summaries or notes concerning the analysis, each person who participated in or assisted with any such analysis or investigation, and all facts supporting TLC and FAST's allegations in paragraphs 8, 13, 14 and 15 of the Complaint dated August 31, 2006. Identify three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 5**

In addition to the General Objections, which are incorporated fully by reference herein, TLC objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

**Interrogatory No. 6.**

Describe any communication between TLC and any third party concerning this lawsuit or Rational's alleged infringing activity including, but not limited to, communications with FAST, TurboChef Technologies, Inc., United Electric Controls Co., Henny Penny Corporation, The Middleby Corporation, Barbecue King Industries, or any other. Identify three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 6**

TLC reserves the right to modify or supplement its responses as TLC locates additional information, or based on a ruling from the Court.

Subject to the foregoing, and the General Objections, TLC responds as follows:

TLC will produce non-privileged documents sufficient to respond to this interrogatory pursuant to Fed. R. Civ. P. 33 (d).

**Interrogatory No. 7.**

Describe any rights granted by TLC to any third party including, but not limited to, FAST, TurboChef Technologies, Inc. or United Electric Controls Co., concerning the '948 patent. Describe the rights granted by or through any license, settlement agreement, or any other agreement including, but not limited to, all terms, geographic limitations, price restrictions, duration, implementation, parties, consideration, and consideration actually paid or exchanged. Identify all documents reflecting rights granted and three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 7**

TLC objects to this interrogatory to the extent it requests information protected by confidentiality agreements with third parties, under which agreements TLC is prohibited from disclosing terms regarding the '948 Patent. TLC reserves the right to modify or supplement its responses as TLC locates additional information, or based on a ruling from the Court.

Subject to the foregoing, and the General Objections, TLC responds as follows:

TLC will produce non-privileged documents sufficient to respond to this interrogatory pursuant to Fed. R. Civ. P. 33 (d). The person most knowledgeable concerning the content of this response is Bernard G. Koether

10

**Interrogatory No. 8.**

Identify all validity, infringement, freedom-to-operate, or prior art searches or investigations that have ever been conducted by or on behalf of TLC relating to the '948 patent including, but not limited to, who conducted the search or investigation, when it occurred, an identification of what was discovered in such search(es) or investigation(s), who received that information, when the search(es) were done, and any documents memorializing the search or investigation, conclusion, findings or documents relating thereto. Identify three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 8**

In addition to the General Objections, which are incorporated fully by reference herein, TLC objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. Additionally, TLC objects to this interrogatory as vague and ambiguous, including but not limited to the phrase "freedom-to-operate" as used in the context of this interrogatory. TLC reserves the right to modify or supplement its responses as TLC locates additional information, or based on a ruling from the Court.

**Interrogatory No. 9.**

Describe what TLC contends is the proper measure of damages for Rational's alleged infringement of the patent in suit. To the extent TLC contends it is entitled to a royalty, state whether TLC contends it is entitled to a reasonable royalty or an established royalty. State the basis for determining the royalty including, but not limited to, all factors (positive and negative) and calculations used to arrive at the royalty. Identify three individuals most knowledgeable about the information requested in this interrogatory.

**Response to Interrogatory No. 9**

TLC objects to this interrogatory to the extent it calls for a legal conclusion. Additionally, TLC objects to this interrogatory as vague and ambiguous, including but not limited to the phrase "established royalty" as used in the context of this interrogatory. Furthermore, TLC objects to this interrogatory insofar as the Court has not yet construed the claims of the '948 Patent. TLC objects to this interrogatory on the grounds that it is premature

because discovery in this matter is just beginning, and Rational has not yet produced any documents to TLC. TLC reserves the right to modify or supplement its responses as TLC locates additional information, or based on a ruling from the Court.

Subject to the foregoing, and the General Objections, TLC responds as follows:

As discovery is in its nascent stages, this interrogatory is premature. TLC will supplement it response to this interrogatory as discovery progresses.

**Interrogatory No. 10.**

Identify each person that TLC may call as a fact or expert witness at trial. For each such person, specify the subject matter about which the witness will offer testimony and identify all documents they will rely upon.

**Response to Interrogatory No. 10**

Subject to the General Objections, TLC responds as follows:

As discovery is in its nascent stages, this interrogatory is premature. TLC refers Rational to its 26(a) disclosures served in this case on December 22, 2006.

**Interrogatory No. 11.**

Identify each person who prepared or aided in preparing answers to the interrogatories for TLC, state that person's role in answering the interrogatories, and include for each such person an identification of which interrogatories that person prepared or aided in preparing for TLC, as well as, all documents reviewed or relied upon to support TLC's responses

**Response to Interrogatory No. 11**

In addition to the General Objections, TLC objects to this interrogatory as vague and ambiguous, including but not limited to the phrase "aided in preparing" in the context of this interrogatory.

AS to objections:

12

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*Karen Jacobs Louden*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
klouden@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
  Attorneys for plaintiff

OF COUNSEL:

Rory J. Radding
Colette A. Reiner
MORRISON& FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104-0050
(212) 468-8000

Mario G. Ceste
The Law Offices Of Mario G. Ceste, LLC
P.O. Box 82
Wallingford, CT 06492
(203) 678-6418

January 16, 2007
676612

13

# EXHIBIT A

<u>Exhibit A</u>

U.S. Patent No. 4,920,948
Koether et al.

| Claim Elements | Element found in Rational Literature |
|---|---|
| **1.** A parameter control system for controlling temperature and volumetric flow rate for an oven for heating a food product comprising: | |
| means for heating a heating medium in the oven; | *SCC Manual Page 29[1]*: "Powerful heating elements heat the dry air. Cooking cabinet temperature can be set to between 30°C and 300°C." |
| first digitally programmed means, | *SCC Manual Page 36 and 38*: Pictures of controls on these pages depict numerous buttons to program the oven. <br><br> *SCC Manual Page 62* Provides information about locating the software identification, therefore, there must be software. |
| having temperature sensing means and | *SCC Manual Page 27*: Instructs that to "Request cooking data...Hold down temperature button (2 sec.)...The following values are displayed: ...current cooking cabinet temperature...current core temperature" <br><br> *SCC Manual Page 20*: The pictures show the "core temperature probe" inserted into a muffin. <br><br> *SCC Parts List – Page 70[2]*: "Thermocouple interior cabinet SCC line 61-202" |
| having product keys and, | *SCC Manual Page 18*: The pictures show the process for using the "SelfCooking Control Mode" using the example of "Veal roast." The process involves pressing keys corresponding to the desired preparation, and "that's it! The unit right away works with preset, factory-tested settings." Product keys include fish, meat, chicken, and |

---

[1] "SCC Manual" refers to the Rational Manual for the SelfCooking Center®.

[2] "SCC Parts List" refers to the Rational Spare Part –Price List, Valid from 1.1.2006

| | |
|---|---|
| | bread. Preparation keys include "Soft roasting", "Overnight Roasting", "Overnight Cooking." |
| | *SCC Manual Page 39:* Shows the "Test" button being pressed in step 4, therefore the cooking program that is programmed on page 38 is stored to a "soft key", and is activated by pressing the key. |
| having a predetermined temperature control algorithm communicating with said temperature sensing means | *SCC Manual Page 20:* "If the core temperature probe is not inserted or incorrectly inserted. . .the buzzer sounds and you see an appropriate message on the display. . .The cooking process continues once the probe position has been corrected." |
| | *See also SCC Manual Page 29:* depicting the use of the core temperature probe to control desired heat. *Id.:* "Note: During continuous operation the cooking cabinet temperature is automatically reduced from 300°C to 270°C after 60 minutes." |
| | *SCC Manual Page 16:* "The 7 SelfCooking Control modes (large joints, pan fries, poultry, fish, bakery products, side dishes, Finishing) automatically detect product-specific requirements, the size of the food to be cooked and the load size. Cooking time temperature and the ideal cooking cabinet climate are continuously adjusted to achieve the result that you want." |
| | *SCC Manual Page 33:* "The cooking process is regulated by a 6-point core temperature measurement in the food." |
| | *SCC Parts List Page 79:* "Control pcb SCC line SCC 61-202, etc." |
| | *SCC Manual Pages 18, 20, 22, 24:* After preheat temperature is reached, "Load" indication appears, cooking cycle can begin once the controller senses door open and close, indicating food has been loaded. |

2

| | |
|---|---|
| | *SCC Manual Page 38*: depicts that the cooking cycle does not begin until the oven has been pre-heated.<br><br>*SCC Manual Pages 18, 20, 22, 24*<br>After preheat temperature is reached, "Load" indication appears, cooking cycle can begin once the controller senses door open and close, indicating food has been loaded.<br><br>*SCC Manual Page 38* depicts that the cooking cycle does not begin until the oven has been pre-heated. |
| and having program parameter variables per product key programmable for temperature values $T_1$, $T_2$, ... $T_n$ at time intervals $t_1$, $t_2$, ... $t_n$, respectively, where n equals 1, 2 ... n to the number of intervals, | *SCC Manual Page 38 & 39*: The diagrams on page 38 and 39 of the SCC Manual indicate that the temperature may be programmed for each step, specifically:<br>  Pg. 38: Steps 6 and 7 correspond to the programming of "T" temperature; Steps 8 and 9 correspond to the programming of "t" time, and "n" the last interval is determined when the end button is pushed as shown in the first step 11. Furthermore, intervals may be programmed, which is shown in the second step 11: "For extra program steps see Section 6-9." (note: we assume that this is poorly translated, and should read: "for extra program steps repeat steps 6-9.")<br>  Pg. 39: Shows the "Test" button being pressed in step 4, therefore the cooking program that is programmed on page 38 is stored to a "soft key", and is activated by pressing the key.<br><br>*SCC Product Features:*[3] "At least 350 programs with up to 12 steps freely selectable." |
| and said digitally programmed means including closed loop heat control means controlled by said algorithm, | *SCC Manual Page 16*: "The 7 SelfCooking Control modes (large joints, pan fries, poultry, fish, bakery products, side dishes, Finishing) automatically detect product-specific |

---

[3]   "SCC Product Features" refers to the Features Section for the SelfCooking Center as found on the Rational Website under the "Technical data" section for the SelfCooking Center.

3

| | |
|---|---|
| for controlling as a first parameter the temperature of the heating medium; | requirements, the size of the food to be cooked and the load size. Cooking time temperature and the ideal cooking cabinet climate are continuously adjusted to achieve the result that you want." |
| | *SCC Manual Page 33*: "The cooking process is regulated by a 6-point core temperature measurement in the food." |
| | *SCC Manual Page 29*: "Powerful heating elements heat the dry air. Cooking cabinet temperature can be set to between 30°C and 300°C." |
| | *SCC Manual Page 51* Functions—Delta-T-cooking "By gradually raising the temperature in the cabinet until the cooking process ends and maintaining a constant differential to the current core temperature, the meat is cooked more slowly." |
| second digitally programmed means, having a predetermined volumetric control algorithm | *SCC Page 34*: Depicts the control of air speed through the use of buttons. *SCC Parts List Page 79*: "Control pcb SCC line SCC 61-202, etc.". *SCC Manual Page 38 & 39*: The diagrams on these pages show product keys with parameters for each mode. The parameters include temperature, time, fan, and humidity. Specifically: Pg. 38: "All option functions, e.g. fan wheel (excepting CleanJet, Descale and Cool Down), may be incorporated.) |
| having program parameter variables per product key programmable for volumetric flow rate values V.sub.1, V.sub.2 . . V.sub.n at time intervals t.sub.1, t.sub.2 . . . t.sub.n, respectively, where n equals 1, 2 . . . n to the number of intervals, | *SCC Product Features*: "At least 350 programs with up to 12 steps freely selectable." The diagrams on page 34, 38 & 39 of the SCC Manual indicate that the air speed may be programmed for each step, specifically: Pg. 38: "All option functions, e.g. fan wheel (excepting CleanJet, Descale and Cool Down), may be incorporated.)" Steps 8 and 9 correspond to the programming of "t" time, |

| | |
|---|---|
| | and "n" the last interval is determined when the end button is pushed as shown in the first step 11. Furthermore, intervals may be programmed, which is shown in the second step 11: "For extra program steps see Section 6-9." (note: we assume that this is poorly translated, and should read: "for extra program steps repeat steps 6-9.")<br><br>Pg. 39: Shows the "Test" button being pressed in step 4, therefore the cooking program that is programmed on page 38 is stored to a "soft key", and is activated by pressing the key. |
| for controlling as a second parameter the volumetric flow rate of the heating medium; and | *SCC Manual Page 34*: "5 air speeds are available. The appliance operates at a standard air speed factory setting." The picture shows that the fan can operate at any one of the following air speeds: "turbo air speed", "standard air speed", "½ air speed", "1/4 air speed", and "fan wheel cycles at ¼ air speed". |
| said first digitally programmed means including digitally programmed means for controlling a plurality of time intervals for predetermined values of the temperature and for predetermined values of the volumetric flow rate, per product key, of the heating medium in the oven. | *SCC Manual Page 38*:<br>The pictures show that temperature and Air Speed can be programmed for different pre-set values during each step of the cooking cycle. Specifically, intervals may be programmed, which is shown in the second step 11: "For extra program steps see Section 6-9." (note: we assume that this is poorly translated, and should read: "for extra program steps repeat steps 6-9.")<br><br>*SCC Product Features*: "At least 350 programs with up to 12 steps freely selectable." |

| 2. A system in accordance with claim 1 which | |
|---|---|
| includes programmed means for controlling as a third parameter the humidity of the heating medium | Programming humidity can be best understood by reference to *SCC Pages 38 and 29-30* Specifically, Page 38 shows the steps for setting temperature if "moist" is selected in step 5 (which sets the humidity to default 100%). However, if dry air is selected in step 5, the displays switch to those shown on page 29 for the succeeding steps. Likewise, if both dry heat and moist heat are selected in step 5, the display switches to those shown on page 30 for the succeeding program steps. *SCC Manual Page 62* Provides information about locating the software identification, therefore, there must be software. |

6

| | |
|---|---|
| and in which said means for controlling one or more time intervals<br>includes programmed means for controlling one or more time intervals<br><br>for a predetermined value of the humidity of the heating medium in the oven. | *SCC Manual Page 38:*<br>The pictures show that temperature, humidity, and air Speed can be programmed for different pre-set values during each step of the cooking cycle.<br><br>Programming humidity can be best understood by reference to *SCC Pages 38 and 29-30.* Specifically,<br>   Page 38 shows the steps for setting temperature if "moist" is selected in step 5 (which sets the humidity to default 100%). However, if dry air is selected in step 5, the displays switch to those shown on page 29 for the succeeding steps. Likewise, if both dry heat and moist heat are selected in step 5, the display switches to those shown on page 30 for the succeeding program steps.<br><br>*SCC Manual Page 31:* "ClimaPlus Control measures and regulates the humidity in the cooking cabinet to within one percent. You can set the exact product-specific climate for each food in the clima window."<br><br>*SCC Manual Page 27:* "The following values are displayed: current cooking cabinet humidity."<br><br>*SCC Product Features:* "At least 350 programs with up to 12 steps freely selectable." |

7

| | |
|---|---|
| 3. A system in accordance with claim 1 in which a product key selects the programmed values of each of said parameters at predetermined time intervals. | *SCC Manual Page 38 & 39*: The diagrams on page 38 and 39 of the SCC Manual indicate that the temperature and air speed may be programmed for each step, specifically:<br><br>Pg. 38: Steps 6 and 7 correspond to the programming of "T" temperature; Steps 8 and 9 correspond to the programming of "t" time, and "n" the last interval is determined when the end button is pushed as shown in the first step 11. Furthermore, intervals may be programmed, which is shown in the second step 11: "For extra program steps see Section 6-9." (note: we assume that this is poorly translated, and should read: "for extra program steps repeat steps 6-9.")<br><br>Pg. 38: "All option functions, e.g. fan wheel (excepting CleanJet, Descale and Cool Down), may be incorporated.)" Steps 8 and 9 correspond to the programming of "t" time, and "n" the last interval is determined when the end button is pushed as shown in the first step 11. Furthermore, intervals may be programmed, which is shown in the second step 11: "For extra program steps see Section 6-9." (note: we assume that this is poorly translated, and should read: "for extra program steps repeat steps 6-9.")<br><br>Pg. 39: Shows the "Test" button being pressed in step 4, therefore the cooking program that is programmed on page 38 is stored to a "soft key", and is activated by pressing the key<br><br>*SCC Product Features*: "At least 350 programs with up to 12 steps freely selectable." |
| 4. A system in accordance with claim 2 in which a product key selects the programmed values of each of said parameters at predetermined time intervals. | In addition to the air speed and temperature, humidity can be programmed. Programming humidity can be best understood by reference to *SCC Pages 38 and 29-30* Specifically,<br><br>Page 38 shows the steps for setting temperature if "moist" is selected in step 5 (which sets the humidity to default 100%) However, if dry air is selected in step 5, the |

8

| | displays switch to those shown on page 29 for the succeeding steps. Likewise, if both dry heat and moist heat are selected in step 5, the display switches to those shown on page 30 for the succeeding program steps.<br><br>*SCC Product Features*: "At least 350 programs with up to 12 steps freely selectable." |
|---|---|
| 5. A system in accordance with claim 3 in which any of said time intervals is dependent on the measured value of at least one of said parameters. | *SCC Manual Page 16*: "The 7 SelfCooking Control modes (large joints, pan fries, poultry, fish, bakery products, side dishes, Finishing) automatically detect product-specific requirements, the size of the food to be cooked and the load size. Cooking time temperature and the ideal cooking cabinet climate are continuously adjusted to achieve the result that you want."<br><br>*SCC Manual Page 33*: "The cooking process is regulated by a 6-point core temperature measurement in the food."<br><br>*SCC Manual Page 51*<br>Functions---Delta-T-cooking<br>"By gradually raising the temperature in the cabinet until the cooking process ends and maintaining a constant differential to the current core temperature, the meat is cooked more slowly." |
| 6. A system in accordance with claim 4 in which any of said time intervals is dependent on the measured value of at least one of said parameters. | *SCC Manual Page 16*: "The 7 SelfCooking Control modes (large joints, pan fries, poultry, fish, bakery products, side dishes, Finishing) automatically detect product-specific requirements, the size of the food to be cooked and the load size. Cooking time temperature and the ideal cooking cabinet climate are continuously adjusted to achieve the result that you want."<br><br>*SCC Manual Page 33*: "The cooking process is regulated by a 6-point core temperature measurement in the food."<br><br>*SCC Manual Page 51.* |

| | Functions—Delta-T-cooking<br>"By gradually raising the temperature in the cabinet until the cooking process ends and maintaining a constant differential to the current core temperature, the meat is cooked more slowly." |
|---|---|
| 9. A system in accordance with claim 1 in which said means for controlling said volumetric flow rate comprises a fan and at least one of means for adjusting the rotary speed of said fan, means for adjusting the location of the fan and means for adjusting an aperture for the flow of the heating medium. | *SCC Manual Page 34:* "5 air speeds are available   The appliance operates at a standard air speed factory setting " The picture shows that the fan can operate at any one of the following air speeds: "turbo air speed", "standard air speed", "½ air speed", "1/4 air speed", and "fan wheel cycles at ¼ air speed". |
| 10. A system in accordance with claim 2 in which said means for controlling said volumetric flow rate comprises a fan and at least one of means for adjusting the rotary speed of the fan and means for adjusting an aperture for the flow of the heating medium. | *SCC Manual Page 34:* "5 air speeds are available. The appliance operates at a standard air speed factory setting." The picture shows that the fan can operate at any one of the following air speeds: "turbo air speed", "standard air speed", "½ air speed", "1/4 air speed", and "fan wheel cycles at ¼ air speed". |

| 11. A parameter control system for controlling temperature and humidity for an oven for heating a food product comprising: | |
|---|---|
| means for heating a heating medium in the oven; | *SCC Manual Page 29:* "Powerful heating elements heat the dry air. Cooking cabinet temperature can be set to between 30°C and 300°C." |
| first digitally programmed means, | *SCC Manual Page 36:* Picture of controls on this page depicts numerous buttons to program the oven.<br><br>*SCC Manual Page 62* Provides information about locating the software identification, therefore, there must be software. |
| having temperature sensing means | *SCC Manual Page 27:* Instructs that to "Request cooking data…Hold down temperature button (2 sec.)…The following values are displayed: …current cooking cabinet temperature…current core temperature"<br><br>*SCC Manual Page 20:* The pictures show the "core temperature probe" inserted into a muffin.<br><br>*SCC Parts List – Page 70:* "Thermocouple interior cabinet SCC line 61-202" |
| and having product keys and, | *SCC Manual Page 18:* The pictures show the process for using the "SelfCooking Control Mode" using the example of "Veal roast." The process involves pressing keys corresponding to the desired preparation, and "that's it! The unit right away works with preset, factory-tested settings." Product keys include fish, meat, chicken, and bread. Preparation keys include "Soft roasting", "Overnight Roasting", "Overnight Cooking." |
| having a predetermined temperature control algorithm communicating with said temperature sensing means | *SCC Manual Page 20:* "If the core temperature probe is not inserted or incorrectly inserted…the buzzer sounds and you see an appropriate message on the display  The cooking process continues once the probe position has been corrected." |

11

|  | *See also SCC Page 29*: depicting the use of the core temperature probe to control desired heat. *Id* : "Note: During continuous operation the cooking cabinet temperature is automatically reduced from 300°C to 270°C after 60 minutes."

*SCC Manual Page 16*: "The 7 SelfCooking Control modes (large joints, pan fries, poultry, fish, bakery products, side dishes, Finishing) automatically detect product-specific requirements, the size of the food to be cooked and the load size. Cooking time temperature and the ideal cooking cabinet climate are continuously adjusted to achieve the result that you want."

*SCC Manual Page 33*: "The cooking process is regulated by a 6-point core temperature measurement in the food."

*SCC Parts List Page 79*: "Control pcb SCC line SCC 61-202, etc."

*SCC Manual Pages* 18, 20, 22, 24: After preheat temperature is reached, "Load" indication appears, cooking cycle can begin once the controller senses door open and close, indicating food has been loaded.

*SCC Manual Page 38*: depicts that the cooking cycle does not begin until the oven has been pre-heated.

*SCC Manual Pages 18, 20, 22, 24* After preheat temperature is reached, "Load" indication appears, cooking cycle can begin once the controller senses door open and close, indicating food has been loaded.

*SCC Manual Page 38* depicts that the cooking cycle does not begin until the oven has been pre-heated. |
| and having program parameter variables per product key programmable for temperature | *SCC Manual Page 38 & 39*: The diagrams on page 38 and 39 of the SCC Manual indicate |

| | |
|---|---|
| values T.sub.1, T.sub.2, . . . T.sub.n at time intervals t.sub.1, t.sub.2, . . .t.sub.n, respectively, where n equals 1, 2 . . . n to the number of intervals, | that the temperature may be programmed for each step, specifically:<br><br>Pg. 38: Steps 6 and 7 correspond to the programming of "T" temperature; Steps 8 and 9 correspond to the programming of "t" time, and "n" the last interval is determined when the end button is pushed as shown in the first step 11. Furthermore, intervals may be programmed, which is shown in the second step 11: "For extra program steps see Section 6-9." (note: we assume that this is poorly translated, and should read: "for extra program steps repeat steps 6-9.")<br><br>Pg. 39: Shows the "Test" button being pressed in step 4, therefore the cooking program that is programmed on page 38 is stored to a "soft key", and is activated by pressing the key.<br><br>*SCC Product Features:* "At least 350 programs with up to 12 steps freely selectable." |
| and said digitally programmed means including closed loop heat control means<br><br>responsive to said algorithm, for controlling as a first parameter the temperature of the heating medium; | *SCC Manual Page 16:* "The 7 SelfCooking Control modes (large joints, pan fries, poultry, fish, bakery products, side dishes, Finishing) automatically detect product-specific requirements, the size of the food to be cooked and the load size. Cooking time temperature and the ideal cooking cabinet climate are continuously adjusted to achieve the result that you want."<br><br>*SCC Manual Page 33:* "The cooking process is regulated by a 6-point core temperature measurement in the food."<br><br>*SCC Manual Page 29:*<br>"Powerful heating elements heat the dry air. Cooking cabinet temperature can be set to between 30°C and 300°C."<br><br>*SCC Manual Page 51*<br>Functions—Delta-T-cooking<br>"By gradually raising the temperature in the cabinet until the cooking process ends and maintaining a constant differential to the current core temperature, the meat is cooked |

| | more slowly." |
|---|---|
| second digitally programmed means,<br><br>having a predetermined humidity algorithm | Programming humidity can be best understood by reference to *SCC Pages 38 and 29-30*. Specifically,<br>  Page 38 shows the steps for setting temperature if "moist" is selected in step 5 (which sets the humidity to default 100%). However, if dry air is selected in step 5, the displays switch to those shown on page 29 for the succeeding steps. Likewise, if both dry heat and moist heat are selected in step 5, the display switches to those shown on page 30 for the succeeding program steps.<br><br>*SCC Manual Page 62*. Provides information about locating the software identification, therefore, there must be software. |
| having program parameter variables per product key programmable for humidity values H.sub.1, H.sub.2 . . . H.sub.n at time intervals t.sub.1, t.sub.2 . . . t.sub.n, respectively, where n equals 1, 2 . . n to the number of intervals, | *SCC Manual Page 38*:<br>The pictures show that temperature, humidity, and air Speed can be programmed for different pre-set values during each step of the cooking cycle.<br><br>Programming humidity can be best understood by reference to *SCC Pages 38 and 29-30*. Specifically,<br>  Page 38 shows the steps for setting temperature if "moist" is selected in step 5 (which sets the humidity to default 100%). However, if dry air is selected in step 5, the displays switch to those shown on page 29 for the succeeding steps. Likewise, if both dry heat and moist heat are selected in step 5, the display switches to those shown on page 30 for the succeeding program steps.<br><br>*SCC Manual Page 31*: "ClimaPlus Control measures and regulates the humidity in the cooking cabinet to within one percent. You can set the exact product-specific climate for each food in the clima window."<br><br>*SCC Manual Page 27* "The following values are displayed: current cooking cabinet humidity." |

| | |
|---|---|
| | *SCC Product Features*: "At least 350 programs with up to 12 steps freely selectable." |
| including closed loop humidity control means and humidity monitoring means,<br><br>for controlling as a second parameter the humidity of the heating medium; and | *SCC Manual Page 31*: "ClimaPlus Control measures and regulates the humidity in the cooking cabinet to within one percent. You can set the exact product-specific climate for each food in the clima window."<br><br>*SCC Manual Page 27*: "The following values are displayed: current cooking cabinet humidity." |
| said first digitally programmed means including digitally programmed means for controlling a plurality of time intervals for predetermined values of the temperature and predetermined values of the humidity, per product key, of the heating medium in the oven. | Temperature and Humidity are controlled at the programmed values during each step of the cooking cycle. (SCC Manual Page 31 & 39)<br><br>*SCC Manual Page 38 & 39*: The diagrams on page 38 and 39 of the SCC Manual indicate that the temperature may be programmed for each step, specifically:<br>  Pg. 38: Steps 6 and 7 correspond to the programming of "T" temperature; Steps 8 and 9 correspond to the programming of "t" time, and "n" the last interval is determined when the end button is pushed as shown in the first step 11. Furthermore, intervals may be programmed, which is shown in the second step 11: "For extra program steps see Section 6-9." (note: we assume that this is poorly translated, and should read: "for extra program steps repeat steps 6-9.")<br><br>Programming humidity can be best understood by reference to *SCC Pages 38 and 29-30* Specifically:<br>  Page 38 shows the steps for setting temperature if "moist" is selected in step 5 (which sets the humidity to default 100%). However, if dry air is selected in step 5, the displays switch to those shown on page 29 for the succeeding steps. Likewise, if both dry heat and moist heat are selected in step 5, the display switches to those shown on page 30 for the succeeding program steps.<br><br>  Pg. 39: Shows the "Test" button being |

15

|  | pressed in step 4, therefore the cooking program that is programmed on page 38 is stored to a "soft key", and is activated by pressing the key. |
| --- | --- |

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that copies were caused to be served on January 16, 2007 upon the following in the manner indicated:

**By Hand**

Frederick L. Cottrell, III
Gregory E. Stuhlman
**Richards, Layton & Finger, P.A.**
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

**By Federal Express**

Edgar H. Haug
Porter F. Fleming
**Frommer Lawrence & Haug LLP**
745 Fifth Avenue
New York, NY 10151

Karen Jacobs Louden
klouden@mnat.com

# EXHIBIT P



**FROMMER LAWRENCE & HAUG** LLP

New York
745 Fifth Avenue
New York, NY 10151
Telephone: (212) 588-0800
Fax: (212) 588-0500

www.flhlaw.com

Washington, DC
Tokyo

**Porter F. Fleming**
PFleming@FLHlaw.com

April 4, 2007

<u>VIA FACSIMILE</u>

James E. Hough, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10101-0050

Re:    Technology Licensing Corp. v. Rational Cooking Systems, Inc.
         Civil Action No.: 1:06-cv-00515-JJF

Dear Jim:

This letter follows our April 2, 2007 phone conversation and your March 27, 2007 letter.

We are willing to discuss a schedule for the Markman briefing. However, an agreed upon briefing schedule does not absolve TLC of its obligations to respond to RCSI's contention interrogatories. In particular, we expect to receive a supplemental response to RCSI Interrogatory No. 2, which requested among other things, that TLC set forth its contentions regarding the meaning of each claim limitation in the form of a claim chart. You failed to provide TLC's contentions in your January 16th response. You again refused to supplement TLC's response following my March 13th letter to Rory Radding. We again request that you reconsider your position or you will leave us with no choice but to proceed accordingly.

During our call we also discussed our designation of RCSI's supplemental interrogatory responses as Highly Confidential. RCSI's supplemental response to Interrogatory No. 3 does contain extremely sensitive technical information that is not publicly available and is properly designated "Highly Confidential." I did agree during the call that prior art such as publicly available patents, articles and brochures are generally not confidential. To this point, many of the references cited in response to Interrogatory No. 4 have been produced to you and were not marked confidential. Likewise, we will be producing additional references cited and they too will not be marked confidential. However, it is our position that the response itself, to the extent it sets forth non-public information concerning RCSI's contentions regarding invalidity, assessments of the prior art and related analysis, is confidential and properly designated as "Confidential" under the Protective Order. We trust you will maintain RCSI's responses accordingly.

00441452 DOC

James E. Hough, Esq.
Morrison & Foerster LLP
April 4, 2007
Page 2


I know you have raised a number of other issues in your recent correspondence which I intend to respond to. However, in view of your email of earlier today, I wanted to address the above points immediately. I will address your other requests shortly.

Very truly yours,

Porter F Fleming
PFF:ap

cc:    Rory J. Radding, Esq.
       Mario G. Ceste, Esq.
       Jack B. Blumenfeld, Esq.
       Frederick L. Cottrell, III, Esq.