## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TECHNOLOGY LICENSING CORPORATION,<br>a Florida corporation, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 06-515-JJF |
| | : | |
| v. | : | |
| | : | **PUBLIC VERSION** |
| RATIONAL COOKING SYSTEMS, INC.,<br>a Delaware corporation, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT RATIONAL COOKING SYSTEMS, INC.'S
## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
## DISCOVERY AND FOR A PROTECTIVE ORDER

Of Counsel:
Edgar H. Haug
Porter F. Fleming
Jonathan R. Wise
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Tel: (212) 588-0800

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Gregory E. Stuhlman (# 4765)
Stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney
P.O. Box 551
Wilmington, DE 19899
Tel: (302) 651-7509

*Attorneys for Defendant*
*Rational Cooking Systems, Inc.*

Dated: April 25, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

I.    STATEMENT OF THE NATURE AND STAGE OF THE
      PROCEEDINGS ..................................................................................................1

      A.    Introduction ...........................................................................................1

      B.    Proceedings to Date ..............................................................................2

II.   SUMMARY OF THE ARGUMENT ...................................................................3

      A.    Discovery Regarding RCSI's Parent Company Rational AG...................3

      B.    TLC's Complaints Regarding RCSI's Responses to TLC
            Interrogatory Nos. 3 and 4......................................................................5

      C.    TLC's Complaints Regarding the Legibility of Certain Produced
            Documents .............................................................................................5

      D.    TLC's Complaints About RCSI's Confidentiality Designations of
            Interrogatory Nos. 3 and 4 Responses Under the Protective Order.............5

      E.    TLC's Efforts to Improperly Limit the Third-Party Subpoenas ...............6

III.  CONCISE STATEMENT OF THE FACTS ...........................................................7

      A.    RCSI's Document Productions................................................................7

      B.    Party RCSI and Non-Party, Parent Rational AG ....................................8

      C.    RCSI's Responses to TLC's Interrogatory Nos. 3 and 4 .........................9

      D.    Counsels' Efforts to Agree on the Scope of the Document
            Production And Privilege Logs for Third-Party Subpoenas...................10

IV.   ARGUMENT ......................................................................................................11

      A.    This Court's Precedent Is Clear That RCSI Should Not Be Ordered
            to Produce Rational AG's Documents...................................................11

            1.    The Relationship Between RCSI And Rational AG Does
                  Not Give Rise to RCSI's Control Over Rational AG
                  Documents .................................................................................13

            2.    TLC's Case Law Is Inapplicable And TLC's Second
                  Circuit Authority Has Been Expressly Rejected By This
                  Court ..........................................................................................14

i

3.  The Cases Relied On By TLC Are Distinguishable ....................................15

4.  There Have Been Discussions Between Counsel as to
    Whether Rational AG Would Voluntarily Produce
    Documents ...........................................................................................16

5.  TLC's Motion to Compel Production of Rational AG's
    Source Code Is Premature...................................................................17

B.  RCSI Provided Detailed and Extensive Responses to TLC's
    Interrogatory Nos. 3 and 4 ...........................................................................18

C.  RCSI's Responses to Interrogatories Nos. 3 and 4 Are Confidential .................19

D.  TLC's Request for Legible Copies Is Premature/Moot ........................................20

E.  The Third-Party Subpoenas to Radding, Ceste and Morrison &
    Foerster Should Not Be Limited ...................................................................20

1.  Withheld Documents Based on Privilege Should Be
    Logged ..................................................................................................20

2.  TLC's Issue Regarding a "Litigation Hold" Is Just Another
    Example of TLC's Improper Motion — There Is No Issue.....................23

V.  CONCLUSION.................................................................................................24

## TABLE OF AUTHORITIES

### Cases

*Adobe Sys. v. Macromedia, Inc.*,
No. 00-743, 2001 U.S. Dist. LEXIS 18630 (D. Del. Nov. 5, 2001) ................................... 17

*Afros S.P.A. v. Krauss-Maffei Corp.*,
113 F.R.D. 127 (D. Del. 1986) .......................................................................... 16

*Camden Iron & Metal, Inc. v. Marubeni America Corp.*,
138 F.R.D. 438 (D.N.J. 1991) .......................................................................... 15

*First National City Bank v. Internal Revenue Service*,
271 F.2d 616 (2d Cir. 1959) ............................................................................ 14

*Gerling International Ins. Co. v. Commissioner of Internal Revenue*,
839 F.2d 131 (3d Cir. 1988) ...................................................................... 12, 14

*Glaxo v. Geneva*,
Nos. 94-1921 & 94-4589, 1995 U.S. Dist. LEXIS 21894 (D.N.J. May 10,
1995) .......................................................................................................... 15

*Novartis Pharms. Corp. v. Eon Labs Mfg.*,
206 F.R.D. 392 (D. Del. 2002) .................................................................... 12, 14

*Playboy Entertainment Group v. United States*,
No. 96-94, 1997 U.S. Dist. LEXIS 22297 (D. Del. Dec. 11, 1997) ..................... *passim*

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
233 F.R.D. 143 (D. Del. 2005) ......................................................... 11, 12, 13, 14

### Statutes

35 U.S.C. §102 .......................................................................................... 9, 19

35 U.S.C. §103 .......................................................................................... 9, 19

35 U.S.C. §112 ............................................................................................... 19

### Other Authorities

The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial
Matters, Oct. 7, 1972, 23 U.S.T. 2555 ......................................................... 4, 7, 16

## Rules

Dist. Del. L.R. 7.1.1 ............................................................................................... 1, 3, 6, 23

Fed. R. Civ. P. 26 ...................................................................................................... 8

Fed. R. Civ. P. 34 .......................................................................................... 3, 4, 7, 12

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

### A.    Introduction

Defendant Rational Cooking Systems, Inc. ("RCSI") respectfully submits this brief in

opposition to Plaintiff Technology Licensing Corporation's ("TLC") Motion to Compel

Discovery and for Entry of Protective Order. (D.I. 61). TLC's motion is premature as many of

the issues that TLC complains of were still under discussion and the meet and confer obligations

of Dist. Del. L.R. 7.1.1 had not been met. Specifically, counsel for RCSI had represented to

TLC's counsel that many of the requested documents would be forthcoming and they have now

been produced as of April 20, 2007.

Other issues on which the parties were still trying to reach agreement, but are now the

subject of TLC's premature motion, include:

1.    Is RCSI required to produce documents from its parent company Rational AG? — The answer is no. RCSI does not have the requisite control. This Court's precedent is clear. TLC's motion on this point should be denied.

2.    Are RCSI's responses to TLC's Interrogatory Nos. 3 and 4 adequate and properly designated pursuant to the Protective Order? — The answer is that they are on both counts. RCSI's responses are detailed and provide present contentions regarding noninfringement and invalidity. The responses do contain confidential information and are properly designated under the Protective Order.

3.    Can third-parties Mario Ceste, Morrison & Foerster, and Rory Radding avoid properly responding to subpoenas directed to relevant, discoverable documents? — The answer is no. Non-privileged, responsive documents should be produced. To the extent any documents are withheld from production based on privilege, these documents should be listed on a privilege log. TLC's proposed order is so broad that many documents would not have to be produced or logged. RCSI merely seeks to ensure that (i) to the extent responsive, non-privileged documents exist, they should be produced and (ii) to the extent a claim of privilege is asserted, withheld documents should be logged enabling RCSI to challenge such claims, if necessary.

TLC's motion should be denied in its entirety for the reasons set forth throughout this

opposition.

1

**B.    Proceedings to Date**

A summary of the initial proceedings in this matter was set forth by RCSI in D.I. 46 and by TLC in D.I. 61. These facts will not be repeated.

To the extent we take issue with certain of TLC's characterizations, we provide the following facts. The Court conducted a hearing on March 2, 2007 regarding competing protective orders proposed by TLC and RCSI. The Court ruled and adopted RCSI's proposed order which provided that Mario Ceste shall not have access to Confidential or Highly Confidential material in this case due to, among other reasons, his equity interest in Food Automation Service Techniques, Inc. ("FAST"). The Court ordered the parties to "put it in your order." (D.I. 53, Tr. 14:23). For nearly two weeks, RCSI attempted to submit this protective order to the Court, but TLC continued to try and undo the Court's explicit ruling and reinstate Mr. Ceste's ability to have access to confidential information. (Fleming Decl. ¶¶ 3-9, Ex. A-G).[1] For example, in an email dated March 12th, TLC counsel states "[w]e will agree to a two tier Protective Order that permits Ceste to view 'Confidential' materials...." (Fleming Decl. ¶ 8, Ex. F). This further attempt to undo this Court's ruling was rejected by RCSI. (Fleming Decl. ¶ 9, Ex. G). As TLC refused to sign the order or jointly submit it to the Court, RCSI submitted the Protective Order to the Court with a cover letter explaining TLC's refusals. (Fleming Decl. ¶ 10, Ex. H). Later that day, and after receiving RCSI's submission to the Court, TLC's counsel sent confirmation that they would not pursue this matter further. (Fleming Decl. ¶ 11, Ex. I). The next day, TLC's counsel wrote to the Court stating that they agreed to the order. (Fleming Decl. ¶ 12, Ex. J). The Protective Order was entered on March 28, 2007. (D.I. 58).

---

[1] Exhibits not previously submitted to the Court are attached to the Declaration of Porter F. Fleming, Esq., filed herewith.

2

At the same March 2, 2007 hearing described above, TLC raised an issue concerning the RCSI subpoenas issued from the Southern District of New York to Mario Ceste, Rory Radding and Morrison & Foerster. The Court instructed the parties to try and work out their differences. The Court stated "[i]f you can't work it out, you can write a follow-up letter to me with exactly what it is that is disputed." (D.I. 53, Tr. 17:19-21). TLC did not submit a letter, did not meet its Dist. Del. L.R. 7.1.1 meet and confer obligations, and, unilaterally, chose to file the present motion. Oral argument on TLC's motion has been scheduled for May 4, 2007.

## II.    SUMMARY OF THE ARGUMENT

### A.    Discovery Regarding RCSI's Parent Company Rational AG

Defendant RCSI has and continues to comply with its discovery obligations in this action. RCSI has now produced over 7000 pages of responsive documents. Prior to TLC's filing of this premature motion, counsel for RCSI had repeatedly told TLC's counsel that it was continuing to look for and would produce further materials. An example of such production was made by RCSI on April 20, 2007.[2]

Despite RCSI's productions, TLC has attempted through Rule 34 document requests to require RCSI to produce documents from non-party Rational AG. TLC's attempt to avoid recognized and required third-party discovery procedures should be denied.

RCSI does not have the legal right to obtain documents on demand from its foreign parent Rational AG. The legal precedent in Delaware and from this Court is quite clear that

---

[2] Upon receiving TLC's motion and latest demands, counsel again confirmed in correspondence dated April 17, 2007 that there would be production by RCSI, which there was on April 20th, and informed TLC that its motion was premature and should be withdrawn. (Fleming Decl. ¶ 13, Ex. K). Counsel for TLC's response was that they would not withdraw the present motion unless RCSI agreed to each and every one of their demands by May 1, 2007. (Fleming Decl. ¶ 14, Ex. L). These demands go well beyond the Federal Rules and the precedent of this Court.

"control" requires the legal right to obtain the documents requested upon demand. TLC's attempts to circumvent and ignore this Court's precedent concerning "control" should be rejected. RCSI simply does not have the requisite control. Accordingly, TLC's motion should be denied.

RCSI continues to produce responsive non-privileged documents on a rolling basis, as previously agreed upon by the parties. TLC seems to try and make some point regarding the number of documents produced by the parties. TLC's production, which they claim is now complete, was only 85 documents. More than half of those documents included the patent in suit, its file history and pleadings filed in this case. With respect to Rational AG documents, even though TLC has sought those documents through inappropriate means – Rule 34 versus The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Oct. 7, 1972, 23 U.S.T. 2555 ("Hague Convention") – counsel has and continues to discuss a possible voluntary production from Rational AG. Despite the ongoing nature of those discussions, TLC filed its motion.

The discussions to date have involved the scope of a voluntary production. Instead of attempting to resolve the matter, TLC now moves for RCSI and/or non-party Rational AG to produce all documents demanded in Rule 34 requests to RCSI. TLC's position is clearly unreasonable and unsupportable by case law. Counsel remain willing to try and reach an agreement with TLC and Rational AG on an appropriate voluntary scope of production. To date, no documents of Rational AG have been produced.

**B.    TLC's Complaints Regarding RCSI's Responses to TLC Interrogatory Nos. 3 and 4**

TLC argues that RCSI's Supplemental Responses to TLC Interrogatory Nos. 3 and 4 are deficient. They are anything but that. RCSI has provided its contentions at this early stage of the litigation regarding noninfringement including the specific claim limitations that are not present in the accused SCC Machines. (D.I. 62, Exhibit N, pp. 1-3). As for RCSI's invalidity response, it is over 12 pages and contains a detailed analysis of prior art and responsive invalidating disclosures. (D.I. 62, Exhibit N, pp. 4-15). RCSI's responses were subject to certain proper objections including that the requests were premature, sought expert opinions before this Court's scheduled date for the exchange of expert reports (December 7, 2007 and January 25, 2008) and a reservation of rights to supplement.

**C.    TLC's Complaints Regarding the Legibility of Certain Produced Documents**

TLC has also prematurely moved this Court that a few pages of the over 2000 pages initially produced by RCSI are illegible. Before TLC filed this motion, RCSI informed TLC that it was attempting to obtain better quality copies. (D.I. 62, Exhibit Q). Better quality copies of the identified prior art pages have been obtained and were produced on April 20, 2007. The issue is moot.

**D.    TLC's Complaints About RCSI's Confidentiality Designations of Interrogatory Nos. 3 and 4 Responses Under the Protective Order**

The Highly Confidential designation of RCSI's supplemental responses to TLC Interrogatory No. 3 is appropriate and in accordance with the Protective Order entered in this case. RCSI's response contains "extremely sensitive, non-public, technical information" concerning the accused SCC Machine. This is specifically the type of information that the Protective Order was written to protect.

Likewise, RCSI's response to TLC Interrogatory No. 4 regarding invalidity of the '948

patent, is properly designated Confidential. There has been no claim that the prior art documents themselves are confidential. To that extent, RCSI has produced all of the references identified in the response, including prior art patents, brochures, and other materials without any confidential designation. Accordingly, there is no attempt to prevent any TLC individual from reviewing these materials. The difference is that RCSI's invalidity interrogatory response goes farther than just listing references, it provides RCSI's positions, theories, analysis and interpretation of the prior art, as well as how these references invalidate the patent in suit. This RCSI information is non-public, sensitive and confidential. It is properly designated Confidential.

### E.    TLC's Efforts to Improperly Limit the Third-Party Subpoenas

At the March 2, 2007 hearing, the Court instructed the parties to try and agree to appropriate limitations to the third-party subpoenas. The parties could not reach agreement. TLC's motion now seeks an order that would limit what non-privileged documents would be produced and what privileged withheld documents have to be listed on privilege logs. If TLC's proposed order is implemented, these third parties will be able to not produce or log relevant, responsive documents. RCSI will have no way of knowing, let alone challenging, any potentially improper designation or withheld document. Conversely, RCSI has proposed that all communications that are withheld based on privilege be logged, except, and in response to a request from Mr. Radding and Morrison & Foerster, internal communications at Morrison & Foerster need not be logged. Non-privileged, responsive documents before the commencement of this suit (August 18, 2006) should be produced.

With respect to TLC's "litigation hold" complaints, RCSI had already agreed that Rory Radding, Morrison & Foerster and Mario Ceste should not be required to maintain a "litigation hold" on documents created after August 18, 2006. This is not an issue. TLC did not need to raise it. Had TLC had a proper Dist. Del. L.R. 7.1.1 meet and confer, we assume that they would

6

not have raised it. RCSI's proposed order submitted to TLC on March 8, 2007 clearly states in paragraph 4:

> Rory J. Radding, Morrison & Foerster LLP, and Mario G. Ceste are under no obligation to maintain a "litigation hold" on documents created after August 18, 2006.

(D.I. 62, Exhibit U). There is no issue here. This matter has been agreed to and is moot.

## III.    CONCISE STATEMENT OF THE FACTS

### A.    RCSI's Document Productions

RCSI has repeatedly told TLC that it was continuing to produce documents regarding the SCC Machine. RCSI's initial production included SCC manuals, SCC specification sheets, SCC installation options, SCC parts lists, SCC operating instructions, SCC brochures, SCC cookbooks, prior art, advertisements and SCC sales. A further and promised RCSI production occurred on April 20th.

# REDACTED

Counsel for RCSI has also discussed with TLC's counsel voluntarily attempting to obtain documents from Rational AG, if the parties could agree to reasonable limitations. Counsel for TLC has been unwilling to agree. Therefore, as set forth in TLC's present motion, TLC seeks to compel RCSI/non-party Rational AG to produce all the documents requested in the Rule 34 requests served on RCSI. This position is unsupportable by case law and this Court's precedent. If no agreement is reached, TLC can proceed through the appropriate procedures set forth under the Hague Convention.

One of the reasons it has been difficult for the attorneys to reach an agreement is that on numerous occasions, counsel for TLC has, following telephone discussions, written self-serving correspondence alleging that RCSI has agreed to certain points sought by TLC. (D.I. 62, Exhibits I, R, S and V). This was usually not the case. TLC argues this again in its brief and attached declaration. However, and more to the point, the correspondence between the parties does set forth the respective positions. (Fleming Decl. ¶¶ 15 and 18, Exs. M and P). It is disappointing that TLC did not attach these letters to provide the complete story regarding the back and forth between counsel. For example, following a February 19, 2007 teleconference regarding a possible voluntary Rational AG production, Rory Radding on behalf of TLC followed the conference call with a self-serving email to RCSI's counsel "confirming" that RCSI had agreed to produce Rational AG documents. (D.I. 62, Exhibit I). RCSI counsel Porter Fleming immediately responded to Mr. Radding's "confirmation" to set the record straight that no such agreement had been reached. (Fleming Decl. ¶ 15, Ex. M). Despite these open and ongoing issues, and with a continuing spirit of cooperation, RCSI's counsel has planned to travel to Germany to meet with Rational AG to discuss voluntarily producing documents in this litigation.

In another example of RCSI's efforts to comply with its discovery obligations, RCSI's initial disclosures did identify three individuals at Rational AG in accordance with Rule 26 as persons that may have discoverable information.

B.    **Party RCSI and Non-Party, Parent Rational AG**

RCSI is a wholly-owned subsidiary of Rational AG. (Lundh Decl. ¶ 8). Among other things, RCSI imports and sells the SCC Machine in the United States. (Lundh Decl. ¶ 11).

# REDACTED

REDACTED

## C.    RCSI's Responses to TLC's Interrogatory Nos. 3 and 4

On March 23, 2007, RCSI served supplemental responses to Interrogatory Nos. 3 and 4. RCSI's responses set forth its non-infringement and invalidity contentions. In response to Interrogatory No. 3, RCSI specifically identified and disclosed which limitations of the asserted claims were not found in the accused SCC Machine. RCSI reserved its rights to supplement its response. REDACTED

This RCSI production also contained numerous additional technical documents regarding the SCC Machine and its operation. TLC's complaints regarding how the SCC Machine works and when RCSI will produce such documents are moot.

REDACTED

RCSI has also repeatedly informed TLC that it intends to further supplement this response when TLC provides a response to <u>RCSI</u> Interrogatory No. 2. (D.I. 62, Exhibits K, M, and J; Fleming Decl. ¶¶ 16 and 17, Exs. N and O). This request sought TLC's contentions as to its claim construction of the patent in suit. Clearly, TLC must have had a claim construction in mind when it filed its complaint. Likewise, TLC must have a construction today to maintain the case. RCSI has requested these constructions and TLC has refused. (D.I. 62, Exhibits K, M and J; Fleming Decl. ¶ 16, Ex. N). TLC argues that it does not have to reveal its claim construction positions(s) until the briefing leading up to the September 14, 2007 Markman Hearing. (D.I. 62, Exhibits J and L). TLC should be required to answer RCSI's interrogatory and its motion should be denied.

Furthermore, RCSI explained to TLC that it designated its response to Interrogatory No. 3 as Highly Confidential because the information contains extremely sensitive technical information that is not publicly available about the SCC Machine. (D.I. 62, Exhibit M). RCSI also explained that it designated its response to Interrogatory No. 4 as Confidential to the extent it sets forth non-public information concerning RCSI's contentions regarding invalidity, assessments of the prior art and related analysis. *Id.* RCSI responses are properly designated under the Protective Order.

### D.    Counsels' Efforts to Agree on the Scope of the Document Production And Privilege Logs for Third-Party Subpoenas

At the March 2, 2007 Hearing, the Court ordered the parties to attempt to reach an agreement regarding the scope of the third-party, Southern District of New York subpoenas issued to Radding, Ceste and Morrison & Foerster. If the parties were unable to reach agreement, this Court directed counsel to submit a letter. TLC has not satisfied its meet and

confer obligations on this issue, did not submit a letter as directed by the Court and instead unilaterally chose to file this motion.

TLC's proposed order would improperly permit Radding, Ceste, and Morrison & Foerster to (i) hide and not produce non-privileged responsive documents, and (ii) to the extent privilege was claimed, these parties would not have to log any documents withheld from production.  TLC's proposed order is too broad.  It would improperly permit these parties to withhold relevant and non-privileged documents.  On the other hand, RCSI's proposed order simply requires that responsive non-privileged documents be produced, and, to the extent documents are withheld on the basis of privilege, they be logged.  As an accommodation, RCSI has agreed that internal communications (arguably privileged and potentially voluminous) between and among Morrison & Foerster attorneys need not be logged.  However, responsive, non-privileged documents to third parties before August 18, 2006 need to be produced.  Likewise, to the extent documents are withheld based on privilege, they should be logged so RCSI can evaluate the appropriateness of any privilege claim.

IV.  **ARGUMENT**

A.  **This Court's Precedent Is Clear That RCSI Should Not Be Ordered to Produce Rational AG's Documents**

RCSI is the party to this action.  Rational AG is a German parent.  Rational AG is not a party to this action.  REDACTED

Under well-established precedent in Delaware and from this Court, to compel production from a parent, the subsidiary must have the "legal right to obtain the documents required on demand."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) (Farnan, J.); *see also Playboy Entertainment Group v. United States*, No. 96-94, 1997 U.S. Dist. LEXIS 22297 (D. Del. Dec. 11, 1997) (Farnan, J.).

RCSI does not have that control, i.e., the legal right to obtain documents on demand. TLC's motion should be denied.

TLC appears to appreciate that this Court's precedent does _not_ support its present position and has attempted to distinguish the numerous decisions. TLC's arguments fail. The cases are not distinguishable. They are on point and provide the present and appropriate standard for this Court. RCSI simply does not have the requisite control.

In a footnote, TLC argues that this Court's application of the word "control" does not apply to this case. TLC is wrong. This Court has repeatedly held that "[c]ontrol is defined as the *legal right to obtain the documents required on demand*." *Power Integrations, Inc.*, 233 F.R.D. 143, 145 (Farnan, J.) (emphasis added) (citing *Gerling International Ins. Co. v. Commissioner of Internal Revenue*, 839 F.2d 131, 140 (3d Cir. 1988)); *see also Playboy Entertainment*, 1997 U.S. Dist. LEXIS 22297 (Farnan, J.) (holding that, in the Rule 34 context, "control" is defined as a "legal right to obtain the documents requested upon demand").

The fact that RCSI is a wholly-owned subsidiary does _not_ give it control over its parent company's documents. Indeed, "[a]lthough parent corporations have been required to produce documents held by their subsidiaries, *see Novartis Pharms. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 392, 395 (D. Del. 2002), [(Farnan, J.)] the converse is not true. A subsidiary, by definition, does not control its parent corporation." *Power Integrations*, 233 F.R.D. at 145. This Court further held that the corporate entity shall not be readily disregarded except in rare circumstances:

> the separate and distinct corporate identities of a parent and its subsidiary are not readily disregarded, except in rare circumstances justifying the application of the alter ego doctrine to pierce the corporate veil of the subsidiary. *Gerling*, 839 F.2d at 140.

*Power Integrations*, 233 F.R.D. at 145.

TLC's attempts to ignore the separate and distinct corporate entities of RCSI and Rational AG should be rejected. RCSI does not have the requisite control of Rational AG's documents. TLC can not meet its burden. The motion should be denied.

Further, as in *Playboy Entertainment Group v. United States*, where the party seeking production alleged that:

1.    Plaintiff is the wholly-owned subsidiary of Playboy Enterprises,

2.    Plaintiff's president is an executive vice president of Playboy Enterprises, and

3.    Playboy Enterprises' Chief Executive Officer approves significant decisions regarding the operation of Plaintiff's business,

this Court still held that the subsidiary did not control the parent company's documents because the moving party failed to demonstrate that the subsidiary can access its parent company's documents in the ordinary course of business upon demand. 1997 U.S. Dist. LEXIS 22297, at *11. Even with these allegations, the moving party could also not show a sufficiently close connection between the subsidiary and the non-party parent to require compliance with the document request. *Id.* at *12. This Court denied that motion to compel and should to the same here with TLC's motion.

1.    **The Relationship Between RCSI And Rational AG Does Not Give Rise to RCSI's Control Over Rational AG Documents**

RCSI, the wholly-owned subsidiary of non-party Rational AG, does not have the ability to obtain on demand Rational AG documents in the ordinary course of business. RCSI and Rational AG are separate corporate entities.     REDACTED

In spite of the overwhelming case law on point regarding discovery obligations from this Court: (i) *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143 (D.

Del. 2005) (Farnan, J.); (ii) *Novartis Pharms. Corp. v. Eon Labs Mfg.*, 206 F.R.D. 392 (D. Del. 2002), (Farnan, J.); and (iii) *Playboy Entertainment Group v. United States*, No. 96-94, 1997 U.S. Dist. LEXIS 22297 (D. Del. Dec. 11, 1997) (Farnan, J.), counsel for RCSI has still attempted to work with TLC's counsel to reach an agreement regarding a possible voluntary production from Rational AG. Despite TLC's motion, these discussions will continue.

### 2.   TLC's Case Law Is Inapplicable And TLC's Second Circuit Authority Has Been Expressly Rejected By This Court

The cases TLC cites to support its arguments follow Second Circuit precedent — a precedent that has been rejected by this Court. Specifically, TLC argues for a very broad definition of the word "control" for discovery purposes. This Court has <u>not</u> adopted the practical ability test relied on by the Second Circuit. *Power Integrations*, 233 F.R.D. at 146.

The *Gerling* case quoted by TLC cites to a Second Circuit case for the proposition: "[w]here the relationship is thus such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." 839 F.2d at 141 (citing *First National City Bank v. Internal Revenue Service*, 271 F.2d 616, 618 (2d Cir. 1959)). Again, in *Power Integrations*, this Court held that the Third Circuit has not adopted the Second Circuit definition of "control." 233 F.R.D. at 146. "Cases in the Second Circuit go beyond defining 'control' as the *legal right* of the subpoenaed party to obtain the documents and include an inquiry into the *practical ability* of the subpoenaed party to obtain those documents." *Id.* (emphasis supplied).

Furthermore, the *Gerling* case relied on by TLC is factually off point. It concerned a litigating corporation's ability to obtain documents from its president who was a majority shareholder:

> As pointed out by the United States District Court for the District of New Jersey in Camden Iron and Metal, "Gerling examined control in the context of a relationship between a litigating corporation and its president, rather than the relationship between a litigating subsidiary and its parent." *Camden Iron and Metal*, 138 F.R.D. at 442. Under the circumstances presented here, the Court views Gerling as fact-specific and unpersuasive as precedent in this matter.

*Playboy Entertainment Group*, 1997 U.S. Dist. LEXIS 22297, at *12-13 (Farnan, J.). This quote is another example of this Court rejecting TLC's authority and arguments.

### 3.    The Cases Relied On By TLC Are Distinguishable

TLC relies on cases that are either (1) legally distinguishable as they do not apply this Court's precedent, or (2) factually distinguishable. For example, *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991) is distinguishable because (1) it relies on Second Circuit case law that this Court has expressly declined to adopt; and (2) it is factually off point. The documents sought in *Camden* were "considered records which [the subsidiary] is apt to request and obtain in its normal course of business." 138 F.R.D. at 14-16 (stating that the subsidiary had "easy and customary access" to parent company's documents involved in the transaction at issue). This is not the case here.

REDACTED

In *Camden*, the subsidiary and parent were both involved in a transaction such that both parties had access to the documents in question. *Id.* at 16.

Likewise, in *Glaxo v. Geneva*, Nos. 94-1921 & 94-4589, 1995 U.S. Dist. LEXIS 21894, at *4 (D.N.J. May 10, 1995), the parent company had provided the subsidiary with the requested documents in the past and senior employees at the parent company exercise substantial oversight responsibility over the subsidiary    REDACTED

Thus, *Glaxo* is factually distinguishable.

Finally, *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127 (D. Del. 1986), also cited by TLC, is distinguishable. *Afros* did not apply the standard used by this Court today, i.e., control requires *the legal right to obtain documents on demand.*

# REDACTED

4.  **There Have Been Discussions Between Counsel as to Whether Rational AG Would Voluntarily Produce Documents**

From the outset of this case counsel for both parties have appreciated that there was going to be an issue regarding Rational AG's documents. There have been ongoing discussions regarding a possible voluntary production by Rational AG. For example, on February 19, 2007, the parties discussed during a telephone conference nine categories proposed by TLC. However, an agreement regarding Rational AG documents was never reached as TLC insisted that the scope of production be open ended so that TLC could continue to request additional documents. TLC was unwilling to agree to any limitations.

RCSI's counsel appreciates and understands that there may be German documents that may relate to issues in the case. As such, initial disclosures did identify Rational AG persons who may have information regarding the development of the SCC Machine. RCSI's counsel has been willing from the outset to discuss with TLC's counsel a time, cost-efficient and voluntary means regarding these discovery issues. TLC has been unwilling to reach an agreement and by this motion seeks to improperly compel international discovery of documents from a foreign non-party.

Despite these events, counsel remains willing to discuss with Rational AG a voluntary production. TLC has available to it the applicable procedures under the Hague Convention. TLC has chosen not to follow that path. Moreover, TLC's accusations that RCSI is "cherry

picking" Rational AG documents are unnecessary and unfounded. Besides being unsupported and speculative, these accusations are certainly premature. To date, Rational AG has not produced any documents to TLC.

     **5.    TLC's Motion to Compel Production of Rational AG's Source Code Is Premature**

TLC's motion to compel production of Rational AG's source code is also premature. At one point, TLC took the position that it <u>did</u> <u>not</u> <u>seek</u> the source code at all but sought only summaries of the operation of the SCC Machine. Without explanation, TLC changed its position and by its motion seeks RCSI's production of the source code. REDACTED

The source code issue is premature. At this stage of the proceedings, it is still undetermined whether the source code is necessary to prove infringement/noninfringement or is relevant to any other issue in the case. Specifically, RCSI's April 20th production involved numerous manuals regarding the operation of the SCC Machine.

REDACTED At some later point, and if necessary at all, further discussions among counsel may be appropriate to determine which portions of the source code may be at issue and what appropriate safeguards need to be implemented. As this Court is well-aware and can certainly appreciate, a company's source code, especially a non-party's, is highly confidential/trade secret information that needs to be protected. Unless necessary, there is no reason for its production. This Court has recognized some of these important issues in the past. *See Adobe Sys. v. Macromedia, Inc*, No. 00-743, 2001 U.S. Dist. LEXIS 18630, at *3 (D. Del. Nov. 5, 2001) (Farnan, J.) (recognizing that source codes are of "critical importance" to a

business and "must be provided the highest form of protection a court can provide in the context of a particular case."). The source code issue is premature at this time. TLC's motion should be denied.

**B.    RCSI Provided Detailed and Extensive Responses to TLC's Interrogatory Nos. 3 and 4**

RCSI has provided detailed responses to Interrogatory Nos. 3 and 4 regarding its contentions as to noninfringement and invalidity. With respect to Interrogatory No. 3 (noninfringement), in addition to raising appropriate objections including that the interrogatory is premature and seeks expert discovery at this early stage in discovery, RCSI has provided a detailed response indicating the specific claim limitations that are not met by the SCC Machine. TLC has moved to compel a further response and additional information. TLC's objections and motion ring hollow as TLC has refused to provide RCSI with TLC's claim construction contention(s) regarding infringement. As the Court is well-aware, TLC bears the burden of proof on infringement. RCSI has offered to supplement its response on receipt of TLC's claim construction. This construction was specifically requested in RCSI's First Set of Interrogatories dated December 1, 2006. TLC objected to providing its claim construction. (Fleming Decl. ¶ 17, Ex. O, p. 7). TLC has continued to refuse to provide its construction. (D.I. 62, Exhibits J and L; Fleming Decl. ¶ 16, Ex. N). Again, TLC's motion is premature as RCSI has produced, as promised, additional documents regarding its noninfringement of the '948 patent.

# REDACTED

With respect to TLC Interrogatory No. 4 (invalidity), RCSI's supplemental response is over 12-pages of detailed analysis of numerous prior art references and their respective

disclosures as they pertain to the patent in suit. (D.I. 62, Exhibit N).

# REDACTED

Numerous prior art references are discussed and analyzed in detail. TLC ignores 11 plus pages of RCSI response and focuses on a single paragraph. Again, TLC's complaints are premature as RCSI objected to the interrogatory as calling for expert testimony and reserved the right to supplement its response as discovery proceeded. As discussed above, and relevant again here, TLC's refusal to answer RCSI Interrogatory No. 2 regarding TLC's claim construction impacts RCSI's ability to respond further to this request. A complete invalidity response may need to incorporate TLC's claim construction to correlate the construed claim terms to the asserted prior art. Without TLC's claim construction, RCSI cannot definitively state whether any of the additional (but already identified and produced to TLC) prior art and combinations of prior art will further invalidate the claims. Despite TLC's deliberate actions to create uncertainty on an issue that it bears the burden, RCSI's response does identify additional prior art references that RCSI may rely upon in the future depending on TLC's yet unknown (but repeatedly requested) positions. The Court should appreciate that all of the references cited and identified to date by RCSI in its responses have been produced to TLC. These references have not been marked confidential.

## C.    RCSI's Responses to Interrogatories Nos. 3 and 4 Are Confidential

TLC's motion requests the Court to change the confidential designations made on RCSI's interrogatory responses. RCSI's responses do contain Confidential and Highly Confidential information to RCSI and are properly designated pursuant to the Protective Order.

TLC's discussion of this issue is incomplete and ignores correspondence exchanged prior to the filing of the motion. Counsel for RCSI clearly explained that the response to TLC Interrogatory No. 3 concerning non-infringement and operation of the SCC Machine was Highly

19

Confidential pursuant to the terms of the protective order. (Fleming Decl. ¶ 18, Ex. P). The nonpublic information regarding how the SCC operates and which specific claim limitations are not used in the control system is "extremely sensitive technical information" — the definition of Highly Confidential under the Protective Order. To the extent Interrogatory No. 3 contains such non-public and extremely sensitive technical information, it is properly designated as Highly Confidential.

As for Interrogatory No. 4, it has also already been communicated to TLC's counsel that RCSI views this response to be Confidential. RCSI's nonpublic theories regarding invalidity, analysis and interpretations of the prior art is "sensitive technical information" — the definition of Confidential Information under the Protective Order. It should be noted that RCSI does not maintain that the prior art itself is confidential. Accordingly, the prior art identified in response to TLC Interrogatory No. 4 has been produced without any confidential designation.

**D.    TLC's Request for Legible Copies Is Premature/Moot**

On March 19, 2007, TLC requested legible copies of a limited number of prior art documents produced by RCSI. (D.I. 62, Exhibit P). Prior to filing this motion and two days after TLC's request, counsel for RCSI informed TLC that the quality of the copies produced were the same quality as those in RCSI's counsel's possession. (D.I. 62, Exhibit Q). RCSI further informed TLC that to the extent better copies could be obtained, they would be provided. *Id.* Better copies have been obtained and were produced on April 20, 2007 as promised.

**E.    The Third-Party Subpoenas to Radding, Ceste and Morrison & Foerster Should Not Be Limited**

**1.    Withheld Documents Based on Privilege Should Be Logged**

The parties have attempted to resolve the issue regarding the scope of the third-party subpoenas. The present litigation was commenced on August 18, 2006 with the filing of the first

complaint. RCSI has sought discovery of documents from certain parties created before the filing of the complaint including Rory Radding, Mario Ceste, and Morrison & Foerster. These parties were all believed to be involved in previous litigations involving the patent in suit, threats of patent infringement to third parties, possible claim construction positions, receipt of and knowledge of prior art and invalidity assertions raised by third parties, possible inequitable conduct activities by past and present FAST employees, as well as, settlements, royalty payments and the destruction of documents all relating to the '948 patent.

The following chart highlights the difference between the two parties on this subject:

| TLC's Proposed Order | RCSI's Response |
| --- | --- |
| 7. The Subpoenas directed to Rory J. Radding, Morrison & Foerster LLP and Mario G. Ceste are limited in scope to documents created or received on or before August 18, 2006. | RCSI will agree to this limitation. |
| Responsive documents to these subpoenas that are withheld from production based on claims of privilege will be logged on respective privilege logs. | RCSI will agree to this limitation. |
| For the time period of April, 2006 to August 18, 2006, the subpoenaed parties need **not produce or log responsive documents**: (1) evidencing communications among counsel of record; (2) evidencing communications between counsel of record and potential co-counsel, expert consultants, TLC, or FAST; and (3) other pre-litigation communications among counsel of record. | RCSI <u>cannot</u> agree to this limitation. All responsive, non-privileged documents <u>should</u> be produced. As for logging privileged documents during this period, RCSI will agree that internal communications between Morrison & Foerster attorneys (including Radding) need not be logged. TLC's language improperly adds Mario Ceste. There are on-going issues as to the multiple roles in which Mr. Ceste may have been involved. To the extent he was acting as a lawyer and the communication is privileged, we only request that it be logged. TLC's language is too broad. Likewise, communications with other third parties such as FAST need to be produced or logged. |

| TLC's Proposed Order | RCSI's Response |
|---|---|
| Responsive documents evidencing communications to or from other third parties, including potential infringers of the patent-in-suit and potential litigation funding sources, if any, will be produced or logged; and | RCSI will agree to this limitation. |

TLC's position is that they are unwilling to produce any documents between April 2006 and August 18, 2006. It is RCSI's position that all responsive non-privileged documents before August 18, 2006 need to be produced. It is also RCSI's position that if any of these documents are withheld from production they need to be logged on a privilege log. TLC refuses. Without a privilege log, RCSI will be prevented from any opportunity to know whether documents exist and are legitimately being withheld. TLC seeks to prevent RCSI's ability to evaluate the appropriateness of any production withholding claim. In the spirit of compromise, counsel for RCSI has agreed that with respect to the Radding and Morrison & Foerster subpoenas, internal communications between counsel at Morrison & Foerster do not need to be logged.

Despite incorrect and inappropriate statements such as "Rational Failed To Abide By Its Representations To The Court" and "Rational's counsel confirmed" certain alleged positions, RCSI's counsel has not agreed to limit the production as set forth in TLC's proposed order. (D.I. 61, pp. 12-13). This is yet another example of TLC counsel's attempt to stretch statements in order to claim that an agreement has been reached. In another example of this, TLC's brief states that "Rational agreed that the Counsel Subpoenas ... should be limited in scope as for documents created on and after April 2006." (D.I. 61, p. 23). There was no such agreement. TLC cites to the March 2, 2007 Hearing Transcript and actually quotes the language by RCSI's counsel. This quote, which was directed to Radding's and Morrison & Foerster's obligations to log withheld documents, states:

> All I'm looking for are documents that they say are being withheld
> on privilege that are between the law firm, and Mr. Radding, and
> third parties. If we get it through TLC and Fast, well, that's fine.
> Then they don't have to do anything.

(D.I. 53, Tr. 17:2-7). TLC failed to quote and raise with the Court the very next paragraph of the

transcript which states:

> But I believe there are other third parties that they've been
> communicating with. It's all we are looking for. I'm not looking
> for any memos that they did internally or any such thing.

(D.I. 53, Tr. 17:8-12). When read together, these two paragraphs confirm that RCSI's position

was, and remains, that relevant, non-privileged communications between the subpoenaed parties

and third parties need to be produced. As for privileged documents between the subpoenaed

parties and third parties, they need to be logged. RCSI did not agree that documents withheld on

the basis of privilege did not have to be logged. TLC's counsel's continuing attempts to refuse

production and/or necessary logging of privileged documents must end. The Court should adopt

RCSI's proposed language in D.I. 62, Exhibit U, Proposed Order para. 3.

### 2.    TLC's Issue Regarding a "Litigation Hold" Is Just Another Example of TLC's Improper Motion — There Is No Issue

Again, TLC provides yet another example of its questionable desires to bring this motion.

RCSI had already agreed that "Rory J. Radding, Morrison & Foerster LLP, and Mario G. Ceste

are under no obligation to maintain a 'litigation hold' on documents created after August 18,

2006." See D.I. 62, Hough Decl. ¶ 28 (stating "[t]he parties agreed that the Counsel Subpoenas

do not impose an obligation to maintain a 'litigation hold' on documents created after August 18,

2006."). Had TLC's counsel had a proper meet and confer pursuant to Delaware Local Rule

7.1.1, this issue would not even be before the Court. The parties have agreed. The issue is moot.

## V.    CONCLUSION

RCSI respectfully requests that the Court deny TLC's Motion to Compel and Motion for Entry of a Protective Order in its entirety for the reasons set forth herein: (i) RCSI does not control Rational AG's documents or source code; (ii) RCSI's Interrogatory Responses are appropriate and properly designated under the Protective Order; and (iii) for documents prior to August 18, 2006, Radding, Ceste, and Morrison & Foerster must produce non-privileged relevant documents pursuant to the subpoenas and log documents withheld from production based on privilege claims, except for privileged internal Morrison & Foerster communications.

Of Counsel

Edgar H. Haug
Porter F. Fleming
Jonathan R. Wise
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Dated: April 25, 2007

Frederick L. Cottrell, III (# 2555)
Cottrell@rlf.com
Gregory E. Stuhlman (# 4765)
Stuhlman@rlf.com
Richards, Layton & Finger P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Tel: (302) 651-7509
Fax: (302) 651-7701

Attorneys for Rational Cooking Systems, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2007, I electronically filed the foregoing with the Clerk

of Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### HAND DELIVERY

Jack B. Blumenfeld
Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

I further certify that on April 25, 2007, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### FEDERAL EXPRESS

Rory J. Radding
Colette A. Reiner
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY   10101-0050

_____
Gregory E. Stuhlman (#4765)
Stuhlman@rlf.com

RLF1-3067316-1

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2007, I electronically filed the foregoing with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### HAND DELIVERY

Jack B. Blumenfeld
Karen Jacobs Louden
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19801

I further certify that on May 2, 2007, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### FEDERAL EXPRESS

Rory J. Radding
Colette A. Reiner
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10101-0050

Gregory E. Stuhlman (#4765)
Stuhlman@rlf.com

RLF1-3067316-1